**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Attorneys for Tarragon Corporation, *et al.,*
Debtors-in-Possession

| | |
|---|---|
| In re:<br><br>TARRAGON CORP., *et al.,*<br><br>                  Debtors-in-Possession. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HONORABLE DONALD H. STECKROTH<br>CASE NO. 09-10555 (DHS)<br><br>Chapter 11<br><br>**(Jointly Administered)** |

## JOINT PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE BANKRUPTCY CODE

Dated:  August  3, 2009

## TABLE OF CONTENTS

**Page**

**ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS** ................................................................................................ **2**
1.1.    Computation of Time ........................................................................ 3
1.2.    Defined Terms .................................................................................. 3
1.3.    "Additional Investment Preferred Interests" .................................. 4
1.4.    "Additional Preferred Stock" .......................................................... 4
1.5.    "Administrative Expense Claim" .................................................... 4
1.6.    "Administrative Expense Claim Bar Date" ..................................... 4
1.7.    "Affiliate" ........................................................................................ 5
1.8.    "Affiliated Debt Holders" ................................................................ 5
1.9.    "Allowed" ........................................................................................ 5
1.10.   "Assets" ............................................................................................ 6
1.11.   "Avoidance Actions" ....................................................................... 6
1.12.   "Ballot" ............................................................................................ 6
1.13.   "Bank of America Financing Loans" .............................................. 6
1.14.   "Bankruptcy Code" .......................................................................... 6
1.15.   "Bankruptcy Court" ......................................................................... 6
1.16.   "Bankruptcy Rules" ......................................................................... 7
1.17.   "Bar Date" ........................................................................................ 7
1.18.   "Borrowers" ...................................................................................... 7
1.19.   "Business Day" ................................................................................. 7
1.20.   "Cash" ............................................................................................... 7
1.21.   "Causes of Action" ........................................................................... 7
1.22.   "Chapter 11 Cases" .......................................................................... 7
1.23.   "Claim" ............................................................................................. 8
1.24.   "Class" .............................................................................................. 8
1.25.   "Class B Interests" ........................................................................... 8
1.26.   "Class B Preferred Stock" ............................................................... 8
1.27.   "Clerk" .............................................................................................. 8
1.28.   "Collateral" ...................................................................................... 8
1.29.   "Commencement Date" .................................................................... 8
1.30.   "Confirmation Date" ........................................................................ 8
1.31.   "Confirmation Hearing" ................................................................... 8
1.32.   "Confirmation Order" ...................................................................... 9
1.33.   "Creditor" ......................................................................................... 9
1.34.   "Creditors' Committee" .................................................................... 9
1.35.   "Creditor Note" ................................................................................ 9
1.36.   "Creditor  Proceeds" ........................................................................ 9
1.37.   "Cure" ............................................................................................. 10
1.38.   "Debtors" ........................................................................................ 10
1.39.   "Debtors-in-Possession" ................................................................ 10
1.40.   "DIP Facility" ................................................................................ 10
1.41.   "DIP Facility Claim" ..................................................................... 10

| | | |
|---|---|---|
| 1.42. | "DIP Financing Order" | 11 |
| 1.43. | "DIP Lender" | 11 |
| 1.44. | "DIP Lender Confirmation Expenses" | 11 |
| 1.45. | "DIP Lender Expense Contribution" | 11 |
| 1.46. | "DIP Loan Balance" | 11 |
| 1.47. | "Disbursing Agent" | 11 |
| 1.48. | "Disclosure Statement" | 12 |
| 1.49. | "Disputed" | 12 |
| 1.50. | "Disputed Claim" | 12 |
| 1.51. | "Disputed Claim Amount" | 12 |
| 1.52. | "Distribution" | 13 |
| 1.53. | "Docket" | 13 |
| 1.54. | "Downstreamed Entities" | 13 |
| 1.55. | "Downstreamed Equity Interests" | 13 |
| 1.56. | "Effective Date" | 13 |
| 1.57. | "Entity" | 13 |
| 1.58. | "Equity Interests" | 13 |
| 1.59. | "Estate" | 13 |
| 1.60. | "Executory Contract" | 13 |
| 1.61. | "Fee Application" | 14 |
| 1.62. | "Final Order" | 14 |
| 1.63. | "Former Tarragon" | 14 |
| 1.64. | "Former Tarragon Proceeds" | 14 |
| 1.65. | "Funded Confirmation Expenses" | 14 |
| 1.66. | "General Unsecured Claim" | 14 |
| 1.67. | "Governmental Unit" | 14 |
| 1.68. | "HFZ" | 15 |
| 1.69. | "HFZ M/F Company" | 15 |
| 1.70. | "HFZ M/F Company Portfolio Proceeds" | 15 |
| 1.71. | "HFZ Confirmation Expenses" | 15 |
| 1.72. | "HFZ Expense Distribution" | 15 |
| 1.73. | "Holder" | 15 |
| 1.74. | "Homebuilding Assets" | 15 |
| 1.75. | "Homebuilding Portfolio" | 15 |
| 1.76. | "Homebuilding Portfolio Proceeds" | 15 |
| 1.77. | "Intercompany Claim" | 15 |
| 1.78. | "Investment Assets" | 15 |
| 1.79. | "Investment Assets Board" | 16 |
| 1.80. | "Investment Preferred Interest" | 16 |
| 1.81. | "Investment Portfolio" | 16 |
| 1.82. | "Investment Portfolio Proceeds" | 16 |
| 1.83. | "Lien" | 16 |
| 1.84. | "Liquidation Assets" | 16 |
| 1.85. | "Liquidation Portfolio" | 16 |
| 1.86. | "Liquidation Portfolio Proceeds" | 16 |
| 1.87. | "Liquidation Trust" | 16 |

38590/0031-5177189v22

1.88.    "Liquidation Trust Agreement" ................................................................. 16
1.89.    "Liquidation Trust Estate" ....................................................................... 16
1.90.    "Liquidation Trustee" .............................................................................. 16
1.91.    "Net Tax Savings" ................................................................................... 16
1.92.    "New Business" ....................................................................................... 17
1.93.    "New Business Portfolio" ........................................................................ 17
1.94.    "One Month Libor Rate" ......................................................................... 17
1.95.    "Order" .................................................................................................... 17
1.96.    "Other Priority Claim" ............................................................................ 18
1.97.    "Other Secured Claim" ............................................................................ 18
1.98.    "Person" ................................................................................................... 18
1.99.    "Plan" ....................................................................................................... 18
1.100.   "Plan Documents" .................................................................................... 18
1.101.   "Plan Supplement" ................................................................................... 18
1.102.   "Portfolio Entities" .................................................................................. 18
1.103.   "Post-Petition Administrative Trade Claims" ......................................... 18
1.104.   "Preferred Interests" ................................................................................ 19
1.105.   "Preferred Stock Purchase" ..................................................................... 19
1.106.   "Priority Claim" ....................................................................................... 19
1.107.   "Priority Return" ...................................................................................... 19
1.108.   "Priority Tax Claim" ................................................................................ 19
1.109.   "Professional" ........................................................................................... 19
1.110.   "Professional Compensation and Reimbursement Claim" ...................... 19
1.111.   "Pro Rata, Ratable or Ratable Share" ..................................................... 19
1.112.   "Reinstated" .............................................................................................. 19
1.113.   "Reorganized Tarragon" .......................................................................... 20
1.114.   "Reorganized Tarragon Board" ............................................................... 20
1.115.   "Reorganized Tarragon Transferors" ...................................................... 20
1.116.   "Retained Actions" ................................................................................... 20
1.117.   "Ridgefield Claim" ................................................................................... 21
1.118.   "Schedules" .............................................................................................. 21
1.119.   "Section 503(b)(9) Administrative Claim" .............................................. 21
1.120.   "Secured Claim" ....................................................................................... 21
1.121.   "Special Tax Receipts" ............................................................................ 22
1.122.   "Tarragon Preferred Stock" ..................................................................... 22
1.123.   "Tarragon Preferred Stock (Investment)" ............................................... 22
1.124.   "Unsecured Claim" ................................................................................... 22
1.125.   "Unsecured Convenience Class" ............................................................. 22
1.126.   "Voting Deadline" .................................................................................... 23

ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
INTERESTS ........................................................................................................... 23
         2.1.    Overview .................................................................................. 23
         2.2.    Unclassified Claims ................................................................ 30
         2.3.    Administrative Expense Claims .............................................. 30
         2.4.    Professional Compensation and Reimbursement Claims ....... 31
         2.5.    Payment of Statutory Fees ...................................................... 32

2.6.    Priority Tax Claims .................................................................... 32

**ARTICLE III. Classification of Claims And Equity Interests** ............................. 33

**ARTICLE IV. Treatment of Classified Claims and Equity Interests** ....................... 34
    4.1.    Class 1: DIP Facility Claims ................................................... 34
    4.2.    Tarragon Corp. ................................................................ 34
        (A)    Class 2A: Secured Claims  There are no Class 2A Claims ............ 35
        (B)    Class 2B(i): Unsecured Priority Claims ........................... 35
        (C)    Class 2B(ii): Unsecured Non-Priority Claims ...................... 35
        (F)    Class 2B(v):  Intercompany Claims ................................ 36
        (G)    Class 2B(vi): Unsecured Affiliated Debt Holders Claims ........... 37
        (H)    Class 2C: Equity Interests ....................................... 37
        (I)    Class 2D: Unsecured Convenience Class Claims ..................... 38
    4.3.    Tarragon Dev. Corp. .......................................................... 38
        (A)    Class 3A: Secured Claims There are no Class 3A Claims ............ 38
        (B)    Class 3B(i): Unsecured Priority Claims ........................... 38
        (C)    Class 3B(ii): Unsecured Non-Priority Claims ...................... 39
        (D)    Class 3B(iii):  Intercompany Claims .............................. 39
        (E)    Class 3C: Equity Interests ....................................... 39
    4.4.    Tarragon South ............................................................... 40
        (A)    Class 4A: Secured Claims   There are no Class 4A Claims .......... 40
        (B)    Class 4B(i): Unsecured Priority Claims ........................... 40
        (C)    Class 4B(ii): Unsecured Non-Priority Claims ...................... 40
        (D)    Class 4B(iii):  Intercompany Claims .............................. 41
        (E)    Class 4C: Equity Interests ....................................... 41
    4.5.    Tarragon Dev. LLC ............................................................ 41
        (A)    Class 5A: Secured Claims   There are no Class 5A Claims .......... 41
        (B)    Class 5B(i): Unsecured Priority Claims ........................... 42
        (C)    Class 5B(ii): Unsecured Non-Priority Claims ...................... 42
        (D)    Class 5B(iii):  Intercompany Claims .............................. 42
        (E)    Class 5C: Equity Interests ....................................... 43
    4.6.    TMI .......................................................................... 43
        (A)    Class 6A: Secured Claims   There are no Class 6A Claims .......... 43
        (B)    Class 6B(i): Unsecured Priority Claims ........................... 43
        (C)    Class 6B(ii): Unsecured Non-Priority Claims ...................... 44
        (D)    Class 6B(iii):  Intercompany Claims .............................. 44
        (E)    Class 6C: Equity Interests ....................................... 44
    4.7.    Bermuda Island ............................................................... 45
        (A)    Class 7A: Secured Claims ......................................... 45
        (B)    Class 7B(i): Unsecured Priority Claims ........................... 45
        (C)    Class 7B(ii): Unsecured Non-Priority Claims ...................... 46
        (D)    Class 7B(iii):  Intercompany Claims .............................. 46
        (E)    Class 7C: Equity Interests ....................................... 46
    4.8.    Orion ........................................................................ 47
        (A)    Class 8A: Secured Claims ......................................... 47
        (B)    Class 8B(i): Unsecured Priority Claims ........................... 47

38590/0031-5177189v22

|        | (C) | Class 8B(ii): Unsecured Non-Priority Claims | 48 |
|        | (D) | Class 8B(iii): Intercompany Claims | 48 |
|        | (E) | Class 8C: Equity Interests | 48 |
| 4.9. | | Orlando Central | 49 |
|        | (A) | Class 9A: Secured Claims.   There are no Class 9A Claims | 49 |
|        | (B) | Class 9B(i): Unsecured Priority Claims | 49 |
|        | (C) | Class 9B(ii): Unsecured Non-Priority Claims | 49 |
|        | (D) | Class 9B(iii): Intercompany Claims | 50 |
|        | (E) | Class 9C: Equity Interests | 50 |
| 4.10. | | Fenwick | 50 |
|        | (A) | Class 10A: Secured Claims.  There are no Class 10A Claims | 50 |
|        | (B) | Class 10B(i): Unsecured Priority Claims | 50 |
|        | (C) | Class 10B(ii): Unsecured Non-Priority Claims | 51 |
|        | (D) | Class 10B(iii): Intercompany Claims | 51 |
|        | (E) | Class 10C: Equity Interests | 52 |
| 4.11. | | Las Olas | 52 |
|        | (A) | Class 11A(i): Secured Claims  (Bank Atlantic) | 52 |
|        | (B) | Class 11A(ii): Secured Claims (Regions Bank) | 53 |
|        | (C) | Class 11B(i): Unsecured Priority Claims | 53 |
|        | (D) | Class 11B(ii): Unsecured Non-Priority Claims | 54 |
|        | (E) | Class 11B(iii): Intercompany Claims | 54 |
|        | (F) | Class 11C: Equity Interests | 54 |
| 4.12. | | Trio West | 55 |
|        | (A) | Class 12A: Secured Claims   There are no Class 12A Claims | 55 |
|        | (B) | Class 12B(i): Unsecured Priority Claims | 55 |
|        | (C) | Class 12B(ii): Unsecured Non-Priority Claims | 55 |
|        | (D) | Class 12B(iii): Intercompany Claims | 56 |
|        | (E) | Class 12C: Equity Interests | 56 |
| 4.13. | | 800 Madison | 57 |
|        | (A) | Class 13A: Secured Claims | 57 |
|        | (B) | Class 13B(i): Unsecured Priority Claims | 57 |
|        | (C) | Class 13B(ii): Unsecured Non-Priority Claims | 58 |
|        | (D) | Class 13B(iii): Intercompany Claims | 58 |
|        | (E) | Class 13C: Equity Interests | 59 |
| 4.14. | | 900 Monroe | 59 |
|        | (A) | Class 14A: Secured Claims | 59 |
|        | (B) | Class 14B(i): Unsecured Priority Claims | 59 |
|        | (C) | Class 14B(ii): Unsecured Non-Priority Claims | 60 |
|        | (D) | Class 14B(iii): Intercompany Claims | 60 |
|        | (E) | Class 14C: Equity Interests | 61 |
| 4.15. | | Block 88 | 61 |
|        | (A) | Class 15A: Secured Claims  There are no Class 15A Claims | 61 |
|        | (B) | Class 15B(i): Unsecured Priority Claims | 61 |
|        | (C) | Class 15B(ii): Unsecured Non-Priority Claims | 61 |
|        | (D) | Class 15B(iii): Intercompany Claims | 62 |
|        | (E) | Class 15C: Equity Interests | 62 |

ii

4.16.    Central Square ........................................................................................ 63
    (A)    Class 16A: Secured Claims ........................................................ 63
    (B)    Class 16B(i): Unsecured Priority Claims .................................... 63
    (C)    Class 16B(ii): Unsecured Non-Priority Claims ........................... 63
    (D)    Class 16B(iii):  Intercompany Claims ......................................... 64
    (E)    Class 16C: Equity Interests ........................................................ 64
4.17.    Charleston ............................................................................................. 65
    (A)    Class 17A: Secured Claims  There are no Class 17A Claims.................. 65
    (B)    Class 17B(i): Unsecured Priority Claims .................................... 65
    (C)    Class 17B(ii): Unsecured Non-Priority Claims ........................... 65
    (D)    Class 17B(iii):  Intercompany Claims ......................................... 65
    (E)    Class 17C: Equity Interests ........................................................ 66
4.18.    Omni ...................................................................................................... 66
    (A)    Class 18A: Secured Claims  There are no Class 18A Claims.................. 66
    (B)    Class 18B(i): Unsecured Priority Claims .................................... 66
    (C)    Class 18B(ii): Unsecured Non-Priority Claims ........................... 67
    (D)    Class 18B(iii):  Intercompany Claims ......................................... 67
    (E)    Class 18C: Equity Interests ........................................................ 68
4.19.    Tarragon Edgewater ............................................................................. 68
    (A)    Class 19A: Secured Claims  There are no Class 19A Claims.................. 68
    (B)    Class 19B(i): Unsecured Priority Claims .................................... 68
    (C)    Class 19B(ii): Unsecured Non-Priority Claims ........................... 68
    (D)    Class 19B(iii):  Intercompany Claims ......................................... 69
    (E)    Class 19C: Equity Interests ........................................................ 69
4.20.    Trio East ............................................................................................... 70
    (A)    Class 20A: Secured Claims ........................................................ 70
    (B)    Class 20B(i): Unsecured Priority Claims .................................... 70
    (C)    Class 20B(ii): Unsecured Non-Priority Claims ........................... 70
    (D)    Class 20B(iii):  Intercompany Claims ......................................... 71
    (E)    Class 20C: Equity Interests ........................................................ 71
4.21.    Vista....................................................................................................... 72
    (A)    Class 21A: Secured Claims  There are no Class 21A Claims.................. 72
    (B)    Class 21B(i): Unsecured Priority Claims .................................... 72
    (C)    Class 21B(ii): Unsecured Non-Priority Claims ........................... 72
    (D)    Class 21B(iii):  Intercompany Claims ......................................... 72
    (E)    Class 21C: Equity Interests ........................................................ 73
4.22.    Murfreesboro ........................................................................................ 73
    (A)    Class 22A: Secured Claims.  There are no Class 22A Claims.................. 73
    (B)    Class 22B(i): Unsecured Priority Claims .................................... 73
    (C)    Class 22B(ii): Unsecured Non-Priority Claims ........................... 74
    (D)    Class 22B(iii):  Intercompany Claims ......................................... 74
    (E)    Class 22C: Equity Interests ........................................................ 74
4.23.    Stonecrest ............................................................................................. 75
    (A)    Class 23A: Secured Claims.   There are no Class 23A Claims.................. 75
    (B)    Class 23B(i): Unsecured Priority Claims .................................... 75
    (C)    Class 23B(ii): Unsecured Non-Priority Claims ........................... 75

38590/0031-5177189v22

|     |     | (D) | Class 23B(iii): Intercompany Claims | 76 |
|     |     | (E) | Class 23C: Equity Interests | 76 |
| 4.24. |  | Stratford |  | 77 |
|     |     | (A) | Class 24A: Secured Claims  There are no Class 24A Claims | 77 |
|     |     | (B) | Class 24B(i): Unsecured Priority Claims | 77 |
|     |     | (C) | Class 24B(ii): Unsecured Non-Priority Claims | 77 |
|     |     | (D) | Class 24B(iii): Intercompany Claims | 78 |
|     |     | (E) | Class 24C: Equity Interests | 78 |
| 4.25. |  | MSCP |  | 78 |
|     |     | (A) | Class 25A: Secured Claims  There are no Class 25A Claims | 78 |
|     |     | (B) | Class 25B(i): Unsecured Priority Claims | 78 |
|     |     | (C) | Class 25B(ii): Unsecured Non-Priority Claims | 79 |
|     |     | (D) | Class 25B(iii): Intercompany Claims | 79 |
|     |     | (E) | Class 25C: Equity Interests | 80 |
| 4.26. |  | Hanover |  | 80 |
|     |     | (A) | Class 26A: Secured Claims  There are no Class 26A Claims | 80 |
|     |     | (B) | Class 26B(i): Unsecured Priority Claims | 80 |
|     |     | (C) | Class 26B(ii): Unsecured Non-Priority Claims | 80 |
|     |     | (D) | Class 26B(iii): Intercompany Claims | 81 |
|     |     | (E) | Class 26C: Equity Interests | 81 |

**ARTICLE V. EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................ 82**

| 5.1. |  | Assumption or Rejection of Executory Contracts and Unexpired Leases. ........ 82 |
|     | (A) | Executory Contracts and Unexpired Leases ............................................. 82 |
|     | (B) | Schedules of Rejected Executory Contracts and Unexpired Leases; Inclusiveness ...................................................................... 83 |
|     | (C) | Insurance Policies ...................................................................... 83 |
|     | (D) | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases ...................................................................... 84 |
|     | (E) | Cure of Defaults .......................................................................... 84 |
|     | (F) | Cure Procedure ........................................................................... 85 |
|     | (G) | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan .............. 85 |
|     | (H) | Indemnification Obligations ....................................................... 86 |

**ARTICLE VI. ACCEPTANCE OR REJECTION OF THIS PLAN ................................... 86**

| 6.1. | Voting Classes ............................................................................. 86 |
| 6.2. | Acceptance by Impaired Classes ............................................... 86 |
| 6.3. | Non Consensual Confirmation ................................................... 87 |

**ARTICLE VII. IMPLEMENTATION OF THE PLAN ...................................................... 87**

| 7.1. |  | Post Confirmation Tarragon. ....................................................... 87 |
|     | (A) | Reorganized Tarragon ................................................................. 87 |
|     | (B) | HFZ M/F Company ..................................................................... 90 |
|     | (C) | Former Tarragon ........................................................................ 90 |
|     | (D) | New Business .............................................................................. 90 |
|     | (E) | Liquidation Assets ..................................................................... 91 |

ii

|  | (F) | Investment Assets ................................................................ 91 |
|  | (G) | Homebuilding Assets ........................................................... 92 |
|  | (H) | Post Confirmation Officers. ................................................ 92 |
| 7.2. | Flow of proceeds from Assets contained in the Liquidation Portfolio.............. 93 |
| 7.3. | Flow of proceeds from Assets contained in the Investment Portfolio............... 93 |
| 7.4. | Flow of proceeds from Assets contained in the Homebuilding Portfolio. ......... 94 |
| 7.5. | Flow of Funds from Former Tarragon................................................... 95 |
|  | (A) | Creditor Note Non-Recourse Payments.................................... 95 |
| 7.6. | Recovery of Funded Confirmation Expenses from Liquidation Assets Distributions ................................................................................. 96 |
| 7.7. | Flow of Funds from HFZ M/F Company. ............................................. 96 |
| 7.8. | Corporate Action for Reorganized Tarragon...................................... 97 |
| 7.9. | Approval of Agreements ................................................................ 97 |
| 7.10. | Special Procedures for Lost, Stolen, Mutilated or Destroyed Instruments ........ 97 |
| 7.11. | Operation of the Debtors-in-Possession Between the Confirmation Date and the Effective Date ...................................................................... 98 |
| 7.12. | Revesting of Assets. ..................................................................... 98 |
| 7.13. | Discharge of Debtors ................................................................... 98 |
| 7.14. | Term of Bankruptcy Injunction or Stays ........................................ 99 |
| 7.15. | Exculpation ............................................................................... 100 |
| 7.16. | Dissolution of Certain Entities .................................................... 100 |

**ARTICLE VIII. CAUSES OF ACTION ................................................................ 100**
| 8.1. | Preservation of Causes of Action .................................................. 100 |

**ARTICLE IX. CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE ........... 102**
| 9.1. | Conditions to Confirmation .......................................................... 102 |
| 9.2. | Conditions Precedent to the Effective Date...................................... 102 |
| 9.3. | Effect of Failure of Conditions..................................................... 103 |
| 9.4. | Waiver of Conditions to Confirmation and Effective Date.................. 104 |
| 9.5. | Effects of Plan Confirmation........................................................ 104 |
|  | (A) | Limitation of Liability.................................................... 104 |
|  | (B) | Subordination ............................................................... 105 |
|  | (C) | Mutual Releases ........................................................... 105 |

**ARTICLE X. RETENTION OF JURISDICTION ................................................ 106**

**ARTICLE XI. MISCELLANEOUS PROVISIONS ............................................... 109**
| 11.1. | Effectuating Documents and Further Transactions ........................... 109 |
| 11.2. | Exemption from Transfer Taxes.................................................... 109 |
| 11.3. | Post-Confirmation Date Fees and Expenses..................................... 109 |
| 11.4. | Payment of Statutory Fees........................................................... 110 |
| 11.5. | Amendment or Modification of the Plan.......................................... 110 |
| 11.6. | Severability.............................................................................. 110 |
| 11.7. | Revocation or Withdrawal of the Plan ........................................... 111 |
| 11.8. | Binding Effect .......................................................................... 111 |
| 11.9. | Notices.................................................................................... 111 |

ii

| | | |
|---|---|---|
| 11.10. | Governing Law | 112 |
| 11.11. | Withholding and Reporting Requirements | 112 |
| 11.12. | Plan Supplement | 112 |
| 11.13. | Allocation of Plan Distributions Between Principal and Interest | 113 |
| 11.14. | Headings | 113 |
| 11.15. | Exhibits/Schedules | 113 |
| 11.16. | Filing of Additional Documents | 113 |
| 11.17. | No Admissions | 113 |
| 11.18. | Successors and Assigns | 113 |
| 11.19. | Reservation of Rights | 113 |
| 11.20. | Section 1145 Exemption | 114 |
| 11.21. | Implementation | 114 |
| 11.22. | Inconsistency | 114 |
| 11.23. | Compromise of Controversies | 114 |

38590/0031-5177189v22

## <u>INTRODUCTION TO PLAN</u>

Tarragon Corporation ("Tarragon Corp.") and its affiliated debtors, as the debtors and

debtors-in-possession in the above-captioned Chapter 11 Cases, propose the following Plan of

Reorganization pursuant to Chapter 11 of the Bankruptcy Code.

On January 12, 2009, Tarragon Corp. and certain of its affiliates (collectively, the

"January 12, 2009 Debtors") filed petitions for relief under the Bankruptcy Code.  In addition to

Tarragon Corp, the affiliated entities that filed for Chapter 11 protection on January 12, 2009

were: Tarragon Development Corporation ("Tarragon Dev. Corp."), Tarragon South

Development Corp. ("Tarragon South"), Tarragon Development Company LLC ("Tarragon Dev.

LLC"), Tarragon Management, Inc. ("TMI"), Bermuda Island Tarragon LLC ("Bermuda

Island"), Orion Towers Tarragon, LLP ("Orion"), Orlando Central Park Tarragon L.L.C.

("Orlando Central"), Fenwick Plantation Tarragon LLC ("Fenwick"), One Las Olas, Ltd. ("Las

Olas"), The Park Development West LLC ("Trio West"), 800 Madison Street Urban Renewal,

LLC ("800 Madison"), 900 Monroe Development LLC ("900 Monroe"), Block 88 Development,

LLC ("Block 88"), Central Square Tarragon LLC ("Central Square"), Charleston Tarragon

Manager, LLC ("Charleston"), Omni Equities Corporation ("Omni"), Tarragon Edgewater

Associates, LLC ("Tarragon Edgewater"), The Park Development East LLC ("Trio East"), and

Vista Lakes Tarragon, LLC ("Vista").

On January 13, 2009, Murfreesboro Gateway Properties, LLC ("Murfreesboro") and

Tarragon Stonecrest, LLC ("Stonecrest," and together with Murfreesboro, the "January 13, 2009

Debtors") filed petitions for Chapter 11 bankruptcy protection as well.  Finally, on February 5,

2009, Tarragon Stratford, Inc. ("Stratford"), MSCP, Inc. ("MSCP") and TDC Hanover Holdings

LLC ("Hanover" and collectively with Stratford and MSCP, the "February 5, 2009 Debtors", and

together with the January 12, 2009 Debtors and the January 13, 2009 Debtors, the "Debtors ")

filed their petitions for Chapter 11 bankruptcy protection.

This document is the Plan proposed by the Debtors. Filed contemporaneously with this

Plan is the Debtors' Disclosure Statement, which is provided to help you understand this Plan.[1]

The Disclosure Statement contains, among other things, a discussion of the Debtors' history, a

description of the Debtors' business, a summary of the material events that have occurred during

the Chapter 11 proceedings and a summary of the Plan.

THE DEBTORS URGE ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS TO

READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY.  NO

SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND

ANY DOCUMENTS, SCHEDULES, EXHIBITS OR LETTERS ATTACHED THERETO OR

REFERENCED THEREIN HAVE BEEN AUTHORIZED BY THE DEBTORS OR THE

BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF

THIS PLAN.

The Distributions to be made to Holders of Claims, in each of the Classes of Claims and

Equity Interests for the Debtor, are set forth in Article II herein.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME AND DEFINED TERMS

Rules of Interpretation

For purposes of interpreting the Plan: (i) any reference herein to a contract, instrument,

release, indenture or other agreement or document being in a particular form or on particular

---

[1]If you would like a copy of the Disclosure Statement sent to you at the Debtor's expense, please
make such request in writing to Cole, Schotz, Meisel, Forman & Leonard P.A., c/o Frances Pisano, 25
Main Street, Hackensack, New Jersey 07601, or email to fpisano@coleschotz.com.

terms and conditions means that such document shall be substantially in such form or

substantially on such terms and conditions; (ii) any reference herein to an existing document or

exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be

amended, modified or supplemented from time to time; (iii) unless otherwise specified, all

references herein to articles and sections are references to articles and sections of this Plan; (iv)

the words "herein," "hereof," and "hereto" refer to this Plan in its entirety rather than to a

particular portion of this Plan; (v) captions and headings to articles and sections are inserted for

convenience of reference only and are not intended to be a part of or to affect the interpretation

hereof; (vi) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(vii) all exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included

in this Plan, regardless of when filed with the Bankruptcy Court; and (viii) whenever a

distribution of property is required to be made on a particular date, the distribution shall be made

on such date, or as soon as practicable thereafter.

### 1.1.      Computation of Time

omputing any period of time prescribed or allowed hereby, the provisions of Bankruptcy Rule 9006(a) shall

apply.

### 1.2.      Defined Terms

For purposes of this Plan, unless the context otherwise requires, all capitalized terms not

otherwise defined shall have the meanings ascribed to them below.  Any term used in this Plan

that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall

have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules, as

applicable.

1.3.        "Additional Investment Preferred Interests" shall have the meaning set forth in Article 7.1(F).

1.4.        "Additional Preferred Stock" shall have the meaning set forth in Article 7.1(A).

1.5.        "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation, any Claims arising under the DIP Facility, Section 503(b)(9) Administrative Claims, any actual and necessary costs and expenses of preserving the Estate of the Debtor, any actual and necessary costs and expenses of operating the business of the Debtor, any indebtedness or obligations incurred or assumed by the Debtor-in-Possession in connection with the conduct of its business including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under section 1930 of chapter 123 of Title 28 of the United States Code.

1.6.        "Administrative Expense Claim Bar Date" means the date fixed by an Order of the Bankruptcy Court, by which all applications or requests for treatment of an Administrative Expense Claim as an Allowed Administrative Expense Claim, other than (i) Administrative Expense Claims of Professionals retained pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code, (ii) all fees payable and unpaid pursuant to 28 U.S.C. § 1930, (iii) a liability incurred and payable in the ordinary course of business by the Debtor (and not past due); (iv) Administrative Expense Claims of all employees (other than insiders as that term is defined in section 101(31) of the Bankruptcy Code) that are employed by the Debtors as of January 12,

2009, including claims for wages, salaries and commissions and for accrued but unused vacation, sick or personal days of such employees; (v) any Administrative Expense Claims that have already been paid by the Debtors; and (vi) Section 503(b)(9) Administrative Claims, must be filed with the Bankruptcy Court.

1.7.　　　"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1.8.　　　"Affiliated Debt Holders" shall collectively mean Beachwold Partners L.P. and Robert Rothenberg.

1.9.　　　"Allowed" means, with reference to any Claim or Equity Interests, any Claim or Equity Interests, proof of which was timely and properly filed or, if no proof of a Claim or Equity Interest was filed, which has been or hereafter is listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and, in each case, as to which:  (i) no objection to allowance has been interposed within the applicable period fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; provided, however, that any Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an Order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Administrative Expense Claim," or "Allowed Claim," shall not, for purposes of computation of distributions under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Commencement Date.

1.10.    "Assets" means all assets and property of the Estates of the Debtors,

regardless of whether reflected in the financial records of the Debtors or on the Schedules,

including but not limited to: equipment, Cash, deposits, refunds, rebates, abatements, fixtures,

real property interests, contractual interests, intangibles, Claims, Causes of Action, suits, setoffs,

recoupments, equitable or legal rights, interests and remedies.

1.11.    "Avoidance Actions" means any and all Causes of Action that the Debtor

may assert under Chapter 5 of the Bankruptcy Code or any similar applicable law, regardless of

whether or not such Causes of Action are commenced as of the Effective Date

1.12.    "Ballot" means each of the ballot forms distributed by the Debtors to each

member of an impaired Class entitled to vote under Article II hereof in connection with the

solicitation of acceptances or rejections of the Plan.

1.13.    "Bank of America Financing Loans" shall mean certain financing loans made

by Bank of America, N.A. to Tarragon Corp., 800 Madison, 900 Monroe, Bermuda Island,

Orion, Orlando Central and Trio East for projects located in New Jersey, Florida and

Connecticut.

1.14.    "Bankruptcy Code" means Title 11 of the United States Code, as amended

from time to time, as applicable to the Chapter 11 Cases.

1.15.    "Bankruptcy Court" means the United States Bankruptcy Court for the

District of New Jersey, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to

exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises

jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the

District of New Jersey.

1.16.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure as
promulgated by the United States Supreme Court under section 2075 of Title 28 of the United
States Code, and any Local Rules of the Bankruptcy Court, as amended from time to time, and as
applicable to the Chapter 11 Cases.

1.17.    "Bar Date" means May 4, 2009, the last date fixed by an order of the
Bankruptcy Court for Creditors and Governmental Units, respectively, to file proofs of Claim in
the Chapter 11 Cases.

1.18.    "Borrowers" shall having the meaning set forth in the DIP Facility.

1.19.    "Business Day" means any day other than a Saturday, Sunday or any other
day on which commercial banks in New York, New York are required or authorized to close by
law or executive order.

1.20.    "Cash" means legal tender of the United States of America or the equivalent
thereof, including bank deposits, checks and wire transfers.

1.21.    "Causes of Action" means any and all causes of action, grievances,
arbitrations, actions, suits, demands, demand letters, claims, complaints, notices of non-
compliance or violation, enforcement actions, investigations or proceedings of the Debtors
and/or their Estates that are or may be pending on the Effective Date or that could be instituted or
prosecuted by the Debtors.

1.22.    "Chapter 11 Cases" means the cases under Chapter 11 of the Bankruptcy
Code commenced by (i) the following Debtors on January 12, 2009: Tarragon Corp., Tarragon
Dev. Corp., Tarragon South, Tarragon Dev. LLC, TMI, Bermuda Island, Orion, Orlando Central,
Fenwick, Las Olas, Trio West, 800 Madison, 900 Monroe, Block 88, Central Square, Charleston,
Omni, Tarragon Edgewater, Trio East, and Vista; (ii) the following Debtors on January 13, 2009:

Murfreesboro and Stonecrest; and (iii) the following Debtors on February 5, 2009: Stratford,

MSCP and Hanover.

   1.23.  "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy

Code.

   1.24.  "Class" means any group of substantially similar Claims or Equity Interests

classified by this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

   1.25.  "Class B Interests" shall have the meaning set forth in Article 7.1(F).

   1.26.  "Class B Preferred Stock" shall have the meaning set forth in Article 7.1(A).

   1.27.  "Clerk" means the clerk of the Bankruptcy Court.

   1.28.  "Collateral" means any property or interest in property of the Estate of any

Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a

Claim, which lien, charge or other, encumbrance is valid, perfected and enforceable under

applicable law and is not subject to avoidance under the Bankruptcy Code.

   1.29.  "Commencement Date" means January 12, 2009 with respect to the January

12, 2009 Debtors, January 13, 2009 with respect to the January 13, 2009 Debtors and February 5,

2009 with respect to the February 5, 2009 Debtors, the respective dates on which the Debtors

commenced their Chapter 11 Cases.

   1.30.  "Confirmation Date" means the date upon which the Bankruptcy Court enters

the Confirmation Order on its docket.

   1.31.  "Confirmation Hearing" means the duly noticed hearing to be held in

accordance with section 1128(a) of the Bankruptcy Code at which confirmation of this Plan is

considered by the Bankruptcy Court, as such hearing may be adjourned or continued from time

to time.

1.32.       "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

1.33.       "Creditor" means any Person that is the Holder of a Claim against the Debtor.

1.34.       "Creditors' Committee" means the statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code.

1.35.       "Creditor Note" shall mean that certain unsecured non-recourse promissory note of Former Tarragon with a twenty year maturity, issued to the Liquidation Trust and administered by the Liquidation Trustee, with a principal value of $30,000,000 and accruing interest at the rate of 5% per annum, which interest, at the option of Former Tarragon, shall be paid in kind.  Interest and principal on such promissory note shall be paid solely and exclusively from the Creditor Proceeds.

1.36.       "Creditor  Proceeds" means the sum of (i) up to 90% of the Net Proceeds actually received by Former Tarragon upon the sale of assets contained in the Liquidation Portfolio, *plus* (ii) 43% (27% of 62.77%) of the Net Proceeds actually received by Former Tarragon upon the sale of assets contained in the Investment Portfolio, *plus* (iii) 15% of the Net Proceeds actually received by Former Tarragon upon the sale of assets contained in the Homebuilding Portfolio, *plus* (iv) for a period of five years from the Effective Date, 15% of the Net Tax Savings realized by Reorganized Tarragon  by use of the net operating loss to offset income arising from the New Business Portfolio, *plus* (v) 100% of Cash on hand on the Confirmation Date (after all Plan related expenses are paid in full).  For this purpose, "Net Proceeds" means gross sale proceeds *plus* the proceeds received from any refinancing *less* all costs of sale and refinancing (legal fees, transfer taxes, reserves and project allowed secured and

unsecured claims for properties sold) and any income taxes incurred under federal, state or local law.

1.37.    "Cure" means with respect to the assumption of an Executory Contract or unexpired lease pursuant to Section 365(b) of the Bankruptcy Code, (i) the distribution of Cash, or the distribution of such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under an Executory Contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law or (ii) the taking of such other actions as may be agreed upon by the parties or ordered by the Bankruptcy Court.

1.38.    "Debtors" has the meaning set forth in the Introduction to the Plan.

1.39.    "Debtors-in-Possession" means the Debtors in their capacity as debtors-in-possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.40.    "DIP Facility" means that certain Secured, Super-Priority, Debtor-in-Possession Credit Agreement dated as of January 12, 2009, as amended, restated, supplemented or otherwise modified from time to time, and all documents executed in connection therewith, by and among Tarragon Corp. and certain of its subsidiaries, as borrowers, and ARKOMD, LLC, as lender.

1.41.    "DIP Facility Claim" means all Claims of the DIP Lender arising under or pursuant to the DIP Facility, including, without limitation, principal and interest on the DIP Facility, plus all reasonable fees and expenses arising under the DIP Facility.

1.42.        "DIP Financing Order" means the Final Order (i) Authorizing Post-Petition

Secured Super-Priority Financing pursuant to Bankruptcy Code Sections 105(a), 362, 364(c)(1),

364(c)(2), 364(c)(3), and 364(d); (ii) Authorizing the Debtor's Use of Cash Collateral Pursuant

to Bankruptcy Code Section 363(c); (iii) Authorizing Repayment of Indebtedness Owing to the

Pre-Petition Lenders; (iv) Granting Adequate Protection Pursuant to Sections 361, 363 and 364

of the Bankruptcy Code; and (v) Modifying Automatic Stay, entered by the Bankruptcy Court

March 5, 2009.

1.43.        "DIP Lender" means ARKOMD, LLC.

1.44.        "DIP Lender Confirmation Expenses" means (i) $2,500,000 *plus* (ii) any

Administrative Expense Claims (other than ordinary operating expenses paid in the ordinary

course of the Debtors' business) funded by the DIP Lender's purchase of additional Investment

Preferred Interests on the Effective Date.

1.45.        "DIP Lender Expense Contribution" shall have the meaning set forth in

Article 7.6(A).

1.46.        "DIP Loan Balance" shall have the meaning set forth in Article 4.1.

1.47.        "Disbursing Agent" means either (i) Reorganized Tarragon to the extent of

(a) any Cash distributions that are required to be made pursuant to the Plan on the Effective Date,

(b) any distributions of the proceeds of the sale or refinance of any Assets that are required to be

made pursuant to the Plan, or (c) any distributions of any net operating revenue derived from any

Assets that are required to be made pursuant to the Plan, or (ii) the Liquidation Trustee to the

extent all other distributions that are to be made under the Liquidation Trust Agreement pursuant

to the Plan.

1.48.        "Disclosure Statement" means the Debtors' Disclosure Statement pursuant to

Section 1125 of the Bankruptcy Code relating to this Plan including, without limitation, all

exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of

the Bankruptcy Code.

1.49.        "Disputed" means, with reference to any Claim or Equity Interest, any Claim

or Equity Interest proof of which was timely and properly filed and which has been or hereafter

is listed on the Schedules as unliquidated, disputed or contingent and, in either case, or in the

case of an Administrative Expense Claim, any Administrative Expense Claim, Claim or Equity

Interest which is disputed under this Plan or as to which any of the Debtors or, if not prohibited

by this Plan, any other party in interest has interposed a timely objection and/or request for

estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018,

which objection and/or request for estimation has not been withdrawn or determined by a Final

Order, and any Claim or Equity Interest proof of which was required to be filed by Order of the

Bankruptcy Court but as to which a proof of claim or interest was not timely or properly filed.

1.50.        "Disputed Claim" means that portion (including, when appropriate, the

whole) of a Claim to which an objection has been filed by the applicable deadline for bringing

such objection and which objection has not been resolved in accordance with the procedures set

forth in this Plan.

1.51.        "Disputed Claim Amount" means the amount set forth in the proof of Claim

relating to a Disputed Claim or, if an amount is estimated with respect to a Disputed Claim in

accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, the amount

so estimated pursuant to an Order of the Bankruptcy Court.

1.52.	"Distribution" means any distribution by Reorganized Tarragon or the Liquidation Trustee to the holders of Allowed Claims and holders of Allowed Equity Interests as of the Commencement Date.

1.53.	"Docket" means the dockets in the Chapter 11 Cases maintained by the Clerk.

1.54.	"Downstreamed Entities" shall have the meaning set forth in Article 7.1(B).

1.55.	"Downstreamed Equity Interests" shall have the meaning set forth in Article 7.1(B).

1.56.	"Effective Date" means the date which is one day after the Confirmation Order becomes a Final Order, and all conditions to the Effective Date as set forth in Article 9.2 of this Plan have been satisfied or, if waivable, waived.

1.57.	"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

1.58.	"Equity Interests" or "Interests" means all equity interests in the Debtors including, but not limited to, all issued, unissued, authorized or outstanding shares of stock together with any warrants, options or contract rights to purchase or acquire such interests at any time.

1.59.	"Estate" means the estate created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.60.	"Executory Contract" means any executory contract or unexpired lease as of the Commencement Date, subject to section 365 of the Bankruptcy Code, between a Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Plan or subject to section 1113 of the Bankruptcy Code.

1.61.        "Fee Application" means an application by a Professional for a Professional

Compensation and Reimbursement Claim.

1.62.        "Final Order" means an Order of the Bankruptcy Court or a Court of

competent jurisdiction to hear appeals from the Bankruptcy Court, that has not been reversed,

stayed, modified or amended and as to which the time to appeal, to petition for certiorari, or to

move for reargument or rehearing has expired and as to which no appeal, petition for certiorari,

or other proceedings for reargument or rehearing shall then be pending or, if pending, as to

which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in

writing, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the

Federal Rules of Civil Procedure, or any analogous rules under the Bankruptcy Rules or

applicable state court rules of civil procedure, may be filed with respect to such Order shall not

cause such Order to not be a Final Order.

1.63.        "Former Tarragon" shall mean a limited liability company formed by HFZ

M/F Company in which HFZ M/F Company shall own 100% of the equity interests.

1.64.        "Former Tarragon Proceeds" shall have the meaning set forth in Article 7.5.

1.65.        "Funded Confirmation Expenses" is a bookkeeping amount equal to the sum

of the DIP Lender Confirmation Expenses and the HFZ Confirmation Expenses.

1.66.        "General Unsecured Claim" means any Unsecured Claim against a Debtor

that is not a Secured Claim, DIP Facility Claim, Administrative Expense Claim, Priority Tax

Claim, or Other Priority Claim, but including, without limitation, Claims arising from the

rejection of an unexpired lease or Executory Contract pursuant to this Plan or otherwise.

1.67.        "Governmental Unit" shall have the meaning set forth in section 101(27) of

the Bankruptcy Code.

1.68.    "HFZ" shall have the meaning set forth in Article 7.1(A).

1.69.    "HFZ M/F Company" shall mean that certain limited liability company

formed by Reorganized Tarragon and HFZ in which Reorganized Tarragon shall own 83.333%

of the equity interests and HFZ shall own 16.667% of the equity interests.

1.70.    "HFZ M/F Company Portfolio Proceeds" shall have the meaning set forth in

Article 7.7.

1.71.    "HFZ Confirmation Expenses" is an amount equal to the face amount of the

Tarragon Preferred Stock purchased by HFZ to the extent such proceeds are used by

Reorganized Tarragon to pay its obligations under the Plan for pre-confirmation expenses,

including without limitation, all Administrative Expense Claims of the Debtors (other than

ordinary operating expenses paid in the ordinary course of the Debtors' business).

1.72.    "HFZ Expense Distribution" shall have the meaning set forth in Article

7.6(B).

1.73.    "Holder" means the beneficial Holder of any Claim or Equity Interest.

1.74.    "Homebuilding Assets" shall mean a limited liability company formed by

Former Tarragon, in which Former Tarragon shall own 100% of the equity interests.

1.75.    "Homebuilding Portfolio" means those Assets set forth on Exhibit A.

1.76.    "Homebuilding Portfolio Proceeds" shall have the meaning set forth in

Article 7.4.

1.77.    "Intercompany Claim" means a Claim by a Debtor against another Debtor.

1.78.    "Investment Assets" shall mean that certain limited liability company formed

by Former Tarragon, in which the DIP Lender shall own 51% of the equity interests and Former

Tarragon shall own the remaining equity interests.

1.79.    "Investment Assets Board" shall have the meaning set forth in Article 7.1(F).

1.80.    "Investment Preferred Interest" shall have the meaning set forth in Article 7.1(F).

1.81.    "Investment Portfolio" means those Assets set forth on <u>Exhibit B</u>.

1.82.    "Investment Portfolio Proceeds" shall have the meaning set forth in Article 7.3.

1.83.    "Lien" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.84.    "Liquidation Assets" shall mean a limited liability company formed by Former Tarragon in which Former Tarragon shall own 100% of the equity interests.

1.85.    "Liquidation Portfolio" means those Assets set forth on <u>Exhibit C</u>.

1.86.    "Liquidation Portfolio Proceeds" shall have the meaning set forth in Article 7.2.

1.87.    "Liquidation Trust" is the trust created by the Liquidation Trust Agreement.

1.88.    "Liquidation Trust Agreement" shall mean that certain Liquidation Trust Agreement executed by the Liquidation Trustee.

1.89.    "Liquidation Trust Estate" shall have the meaning ascribed to it in the Liquidation Trust Agreement.

1.90.    "Liquidation Trustee" shall have the meaning ascribed to it in the Liquidation Trust Agreement.

1.91.    "Net Tax Savings" means the incremental reduction in federal income taxes determined by recalculating the federal income tax liability without the use of carryover net operating losses relating to the period prior to the Confirmation Date in comparison to the tax

obligation calculated using such losses. The Net Tax Savings shall in no event be determined

with respect to any tax year until Reorganized Tarragon has filed its tax return for such year and

the statute of limitation for the assessment of additional taxes has expired. If events subsequent

to the determination of Net Tax Saving in a given year would result in a reduction in the Net Tax

Saving previously determined (an "Excess Net Tax Savings Payment"), then all subsequent  Net

Tax Savings shall reduced until an aggregate reduction equal to the Excess Net Tax Savings has

occurred. The Net Tax Savings (or Excess Net Tax Savings Payment) shall be determined by

accountants selected by the Reorganized Tarragon Board to prepare its federal tax return for the

year involved.

1.92.      "New Business" shall mean a limited liability company formed by HFZ M/F

Company in which HFZ M/F Company shall own 100% of the equity interests.

1.93.      "New Business Portfolio" means those assets acquired by New Business

following the Confirmation Date.

1.94.      "One Month Libor Rate" shall mean (i) the posted rate for one-month

deposits in United States Dollars appearing on Telerate page 3750, or a successor page, as of

11:00 a.m. (London time) on such day, or (ii) if no such rate appears on Telerate page 3750, or a

successor page, at such time and day, then the One Month Libor Rate shall be determined by

selecting an equivalent publication that published the One Month Libor Rate, and if such One

Month Libor Rate is no longer generally published or is limited, regulated or administered by a

governmental or quasi-governmental body, then a comparable interest rate index shall be

selected.

1.95.      "Order" means an order or judgment of the Bankruptcy Court as entered on

the Docket.

1.96.    "Other Priority Claim" means any Claim, other than an Administrative

Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section

507(a) of the Bankruptcy Code.

1.97.    "Other Secured Claim" means any Secured Claim arising prior to the

Commencement Date against any of the Debtors, other than a Secured Claim of a claimant

separately classified under this Plan and not otherwise paid or satisfied by an other Order

authorizing the payment of such Other Secured Claim before the Effective Date.

1.98.    "Person" shall have the meaning set forth in section 101(41) of the

Bankruptcy Code.

1.99.    "Plan" means this Joint Plan of Reorganization under Chapter 11 of the

Bankruptcy Code, including, without limitation, the Plan Supplement and all exhibits,

supplements, appendices and schedules hereto, either in their present form or as the same may be

altered, amended or modified from time to time.

1.100.    "Plan Documents" mean the agreements, documents and instruments entered

into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan.

1.101.    "Plan Supplement" means the forms of documents specified in Article 11.12

of this Plan.

1.102.    "Portfolio Entities" shall collectively mean the Homebuilding Assets, the

Investment Assets and the Liquidation Assets.

1.103.    "Post-Petition Administrative Trade Claims" means all Liabilities of the

Debtors for post-Commencement Date ordinary course obligations and trade payables of the

Debtors' business as of the Effective Date (excluding any expenses incurred with respect to the

administration of the Case) which would qualify as Allowed Administrative Expense Claims

under Section 503(b) of the Bankruptcy Code.

1.104.    "Preferred Interests" shall have the meaning set forth in Article 7.1(F).

1.105.    "Preferred Stock Purchase" shall have the meaning set forth in Article 7.1(A).

1.106.    "Priority Claim" means a Priority Tax Claim or Other Priority Claim.

1.107.    "Priority Return" shall mean a cumulative preferred return of 8% per year on

the Investment Preferred Interests.

1.108.    "Priority Tax Claim" means any Claim of a governmental unit of the kind

specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.109.    "Professional" means a Person or Entity employed pursuant to a Final Order

in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for

services rendered prior to the Confirmation Date, pursuant to sections 327, 328, 329, 330 and/or

331 of the Bankruptcy Code, or for which compensation and reimbursement has been Allowed

by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.110.    "Professional Compensation and Reimbursement Claim" means a Claim of a

Professional for compensation or reimbursement of costs and expenses relating to services

incurred after the Commencement Date and prior to and including the Effective Date.

1.111.    "Pro Rata, Ratable or Ratable Share" each mean a number (expressed as a

percentage) equal to the proportion that an Allowed Claim in a particular Class bears to the

aggregate amount of or number of: (i) Allowed Claims plus (ii) Disputed Claims (in their

aggregate face or, if applicable, estimated amount) in such Class as of the date of determination.

1.112.    "Reinstated" means (i) leaving unaltered the legal, equitable, and contractual

rights to which a Claim entitles the Holder of such Claim so as to leave such Claim unimpaired

or (ii) notwithstanding any contractual provision or applicable law that entitles the Holder of a

Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

(a) curing any such default that occurred before or after the Commencement Date, other than a

default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section

365(b)(2) expressly does not require to be cured; (b) reinstating the maturity (to the extent such

maturity has not otherwise accrued by the passage of time) of such Claim as such maturity

existed before such default; (c) compensating the Holder of such Claim for any damages incurred

as a result of any reasonable reliance by such Holder on such contractual provision or such

applicable law; (d) if such Claim arises from a failure to perform a nonmonetary obligation other

than a default arising from failure to operate a nonresidential real property lease subject to

section 365(b)(l)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than

a Debtor or an Insider) for any actual pecuniary loss incurred by such Holder as a result of such

failure; and (e) not otherwise altering the legal, equitable, or contractual rights to which such

Claim entitles the Holder.

1.113.    "Reorganized Tarragon" means Tarragon Corp. on and after the Effective

Date and/or another Debtor on and after the Effective Date, as applicable.

1.114.    "Reorganized Tarragon Board" shall have the meaning set forth in Article

7.1(A).

1.115.    "Reorganized Tarragon Transferors" shall have the meaning set forth in

Article 7.1(B).

1.116.    "Retained Actions" means the Ridgefield Claim and any Cause of Action

which any of the Debtors may hold against any Person that is pending before a court of

competent jurisdiction or through arbitration as of the Effective Date, including without

limitation, (i) that certain litigation entitled *Tarragon Development Corp. adv. Brown's Farm et als.* CASE NO. 09-10555 (DHS), ADV. PRO NO. 09-1469 (DHS), (ii) that certain demand for arbitration filed by Soares Da Costa Construction Services, LLC against Alta Mar Development LLC, Balsam Acquisition, LLC and Tarragon Dev. Corp. with the American Arbitration Association, bearing case number 50 110 S 00346 06, (iii) that certain litigation commenced by Central Square against Great Divide Insurance Company in the Circuit Court of the 17th Judicial Circuit, Broward County, Florida, bearing Case No. 07000612, and (iv) that certain litigation filed by Tarragon Stoneybrook Apartments, LLC against Summitt Contractors, Inc. and its bonding company Federal Insurance Company in the Circuit Court for Orange County, Florida.

1.117.    "Ridgefield Claim" means any claim of Tarragon Corp. for the return of a $1,000,000 deposit paid in conjunction with an Agreement of Sale to purchase property located at 1 Bell Drive, Ridgefield Borough, New Jersey.

1.118.    "Schedules" means the schedules of assets and liabilities, the list of Holders of Equity Interests and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.119.    "Section 503(b)(9) Administrative Claim" means a Claim against a Debtor alleged to be entitled to an administrative expense priority under 11 U.S.C. §503(b)(9) for goods sold to such Debtor in the ordinary course of the Debtor's business and received by the Debtor within 20 days before the Commencement Date.

1.120.    "Secured Claim" means a Claim that is secured by a lien on property in which the Estate has an interest, which lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy

Code, to the extent of the value of the Creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, provided, however, that a Secured Claim shall not include any portion of the Claim to the extent that the value of such entity's Collateral is less than the amount of such Claim.

1.121.     "Special Tax Receipts" shall mean an amount, determined annually in good faith by Reorganized Tarragon, equal to the Federal income tax savings realized by Reorganized Tarragon by the use of its pre-Plan confirmation net operating loss carry forwards against income arising from New Business.  The Special Tax Receipt shall be specifically designated as such when contributed but shall be zero after the Creditor Note has been satisfied.

1.122.     "Tarragon Preferred Stock" shall have the meaning set forth in Article 7.1(A).

1.123.     "Tarragon Preferred Stock (Investment)" shall have the meaning set forth in Article 7.1(A).

1.124.     "Unsecured Claim" means any Claim against a Debtor that arose or is deemed by the Bankruptcy Code or Bankruptcy Court, as the case may be, to have arisen before the Commencement Date and that is not a Secured Claim, Other Secured Claim, Administrative Expense Claim, Priority Tax Claim or Other Priority Claim.

1.125.     "Unsecured Convenience Class" means either (i) any Unsecured Claim against Tarragon Corp. that is $10,000 or less, or (ii) any Unsecured Claim against Tarragon Corp. in excess of $10,000 for which the Holder thereof, pursuant to such Holder's ballot or such other election accepted by the Debtors, elects to have such Unsecured Claim reduced to the amount of $10,000 and to be treated as an Unsecured Convenience Class Claim.

1.126.     "Voting Deadline" means the date fixed by the Court pursuant to an Order:
(i) Approving the Disclosure Statement Pursuant to 11 U.S.C. § 1125(b); (ii) Fixing a Petition
Date for Voting and Procedures for Filing Objections to the Plan and Temporary Allowance of
Claims; (iii) Scheduling a Hearing and Approving Notice and Objection Procedures in Respect
of Plan Confirmation; (iv) Approving Solicitation Packages and Procedures for Distribution
Thereof; and (v) Approving the Form of Ballot and Establishment of Procedures for Voting on
the Plan.

## ARTICLE II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

2.1.     <u>Overview</u>

This section classifies Claims and Equity Interests -- except for Administrative Expense
Claims and Priority Tax Claims, which are not classified -- for all purposes, including voting,
confirmation and distribution under this Plan.  This section also provides whether each Class of
Claims or Equity Interests is impaired or unimpaired, and provides the treatment each Class will
receive under this Plan.  References in this Plan to the amount of Claims are based on
information reflected in the Debtor's Schedules or in filed proofs of Claim, and are not intended
to be admissions regarding the Allowed amount of the Claims or waivers of the Debtors or their
respective successors' rights to assert any otherwise available objection, defense, recoupment,
setoff, claim, or counterclaim against any Claim.  The following table ("Claims Treatment
Table") summarizes the Classes of Claims and Equity Interests under this Plan:

| CLASS | DESCRIPTION | IMPAIRED/UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | Administrative Expense Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | DIP Facility Claims | Unimpaired | Not Entitled to Vote |
| **2. Claims Against Tarragon Corp.** | | | |

| Class 2A | Secured Claims | Not Applicable | Not Applicable |
|---|---|---|---|
| Class 2B(i) | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 2B(iii) | Taberna Claims | Impaired | Entitled to Vote |
| Class 2B(iv) | Unsecured Affiliated Debt Holders Claims | Impaired | Deemed to Reject Plan |
| Class 2B(v) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 2B(vi) | GECC Claims | Impaired | Entitled to Vote |
| Class 2C | Equity Interests | Impaired | Deemed to Reject Plan |
| Class 2D | Unsecured Convenience Class Claims | Impaired | Entitled to Vote |
| **3. Claims Against Tarragon Dev. Corp.** | | | |
| Class 3A | Secured Claims | Not Applicable | Not Applicable |
| Class 3B(i) | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 3B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 3B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 3C | Equity Interests | Unimpaired | Not Entitled to Vote |
| **4. Claims Against Tarragon South** | | | |
| Class 4A | Secured Claims | Not Applicable | Not Applicable |
| Class 4B(i) | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 4B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 4B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 4C | Equity Interests | Unimpaired | Not Entitled to Vote |
| **5. Claims Against Tarragon Dev. LLC** | | | |
| Class 5A | Secured Claims | Not Applicable | Not Applicable |
| Class 5B(i) | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 5B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 5B(iii) | Intercompany Claims | Impaired | Deemed to Reject |

|  |  |  | Plan |
|---|---|---|---|
| Class 5C | Equity Interests | Unimpaired | Not Entitled to Vote |
| **6.  Claims Against TMI** | | | |
| Class 6A | Secured Claims | Not Applicable | Not Applicable |
| Class 6B(i) | Unsecured Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 6B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 6B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 6C | Equity Interests | Impaired | Entitled to Vote |
| **7.  Claims Against Bermuda Island** | | | |
| Class 7A | Secured Claims | Impaired | Entitled to Vote |
| Class 7B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 7B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 7B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 7C | Equity Interests | Impaired | Entitled to Vote |
| **8.  Claims Against Orion** | | | |
| Class 8A | Secured Claims | Impaired | Entitled to Vote |
| Class 8B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 8B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 8B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 8C | Equity Interests | Impaired | Entitled to Vote |
| **9.  Claims Against Orlando Central** | | | |
| Class 9A | Secured Claims | Not Applicable | Not Applicable |
| Class 9B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 9B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 9B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 9C | Equity Interests | Impaired | Deemed to Reject Plan |
| **10.  Claims Against Fenwick** | | | |

| Class 10A | Secured Claims | Not Applicable | Not Applicable |
|---|---|---|---|
| Class 10B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 10B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 10B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 10C | Equity Interests | Impaired | Deemed to Reject Plan |
| **11.  Claims Against Las Olas** | | | |
| Class 11A(i) | Secured Claims (Bank Atlantic) | Impaired | Entitled to Vote |
| Class 11A(ii) | Secured Claims (Regions Bank) | Impaired | Entitled to Vote |
| Class 11B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 11B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 11B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 11C | Equity Interests | Impaired | Entitled to Vote |
| **12.  Claims Against Trio West** | | | |
| Class 12A | Secured Claims | Not Applicable | Not Applicable |
| Class 12B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 12B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 12B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 12C | Equity Interests | Impaired | Deemed to Reject Plan |
| **13.  Claims Against 800 Madison** | | | |
| Class 13A | Secured Claims | Impaired | Entitled to Vote |
| Class 13B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 13B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 13B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 13C | Equity Interests | Unimpaired | Not Entitled to Vote |
| **14.  Claims Against 900 Monroe** | | | |

| Class 14A | Secured Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 14B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 14B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 14B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 14C | Equity Interests | Impaired | Entitled to Vote |
| **15. Claims Against Block 88** | | | |
| Class 15A | Secured Claims | Not Applicable | Not Applicable |
| Class 15B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 15B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 15B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 15C | Equity Interests | Impaired | Entitled to Vote |
| **16. Claims Against Central Square** | | | |
| Class 16A | Secured Claims | Impaired | Entitled to Vote |
| Class 16B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 16B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 16B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 16C | Equity Interests | Impaired | Entitled to Vote |
| **17. Claims Against Charleston** | | | |
| Class 17A | Secured Claims | Not Applicable | Not Applicable |
| Class 17B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 17B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 17B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 17C | Equity Interests | Impaired | Deemed to Reject Plan |
| **18. Claims Against Omni** | | | |
| Class 18A | Secured Claims | Not Applicable | Not Applicable |
| Class 18B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 18B(ii) | Unsecured Non-Priority | Impaired | Entitled to Vote |

| | Claims | | |
|---|---|---|---|
| Class 18B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 18C | Equity Interests | Impaired | Entitled to Vote |
| **19.  Claims Against Tarragon Edgewater** | | | |
| Class 19A | Secured Claims | Not Applicable | Not Applicable |
| Class 19B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 19B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 19B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 19C | Equity Interests | Impaired | Entitled to Vote |
| **20.  Claims Against Trio East** | | | |
| Class 20A | Secured Claims | Impaired | Entitled to Vote |
| Class 20B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 20B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 20B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 20C | Equity Interests | Impaired | Entitled to Vote |
| **21.  Claims Against Vista** | | | |
| Class 21A | Secured Claims | Not Applicable | Not Applicable |
| Class 21B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 21B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 21B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 21C | Equity Interests | Impaired | Deemed to Reject Plan |
| **22.  Claims Against Murfreesboro** | | | |
| Class 22A | Secured Claims | Not Applicable | Not Applicable |
| Class 22B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 22B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 22B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 22C | Equity Interests | Impaired | Deemed to Reject |

|  |  |  | Plan |
|---|---|---|---|
| **23. Claims Against Stonecrest** | | | |
| Class 23A | Secured Claims | Not Applicable | Not Applicable |
| Class 23B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 23B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 23B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 23C | Equity Interests | Impaired | Deemed to Reject Plan |
| **24. Claims Against Stratford** | | | |
| Class 24A | Secured Claims | Not Applicable | Not Applicable |
| Class 24B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 24B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 24B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 24C | Equity Interests | Impaired | Deemed to Reject Plan |
| **25. Claims Against MSCP** | | | |
| Class 25A | Secured Claims | Not Applicable | Not Applicable |
| Class 25B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 25B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 25B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 25C | Equity Interests | Impaired | Deemed to Reject Plan |
| **26. Claims Against Hanover** | | | |
| Class 26A | Secured Claims | Not Applicable | Not Applicable |
| Class 26B(i) | Unsecured Priority Claims | Impaired | Entitled to Vote |
| Class 26B(ii) | Unsecured Non-Priority Claims | Impaired | Entitled to Vote |
| Class 26B(iii) | Intercompany Claims | Impaired | Deemed to Reject Plan |
| Class 26C | Equity Interests | Impaired | Deemed to Reject Plan |

2.2.    <u>Unclassified Claims</u>

Certain types of Claims are not placed into voting classes; instead, they are unclassified. Such Claims are not considered impaired, and Holders of such Claims do not vote on this Plan because their claims are automatically entitled to specific treatment provided under the Bankruptcy Code.  As such, the Debtors have not placed such Claims in a Class.  The treatment of these Claims is provided below:

2.3.    <u>Administrative Expense Claims</u>

Administrative Expense Claims are Claims against the Debtors constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including any actual and necessary costs and expenses of operating the Debtors' business, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of its business, any allowance of compensation or reimbursement of expenses for Professionals to the extent allowed by the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code, and fees or charges assessed against the Debtors' Estates under section 1930, chapter 12, title 28, United States Code ("Statutory Fees", which are treated separately below), Allowed 503(b)(9) Administrative Claims, and shall include under the this Plan Allowed Claims asserted in this Chapter 11 Cases pursuant to section 546(c) of the Bankruptcy Code.

Subject to the allowance procedures and the deadlines provided herein, and except to the extent that any entity entitled to payment of any Allowed Administrative Expense Claim agrees to a different treatment, Allowed Administrative Expense Claims (excluding Assumed Liabilities, which include but are not limited to Allowed 503(b)(9) Administrative Claims, Post-Petition Administrative Trade Claims and Employee Related Obligations) shall be paid Cash in

full by the Debtors on the later of: (i) twenty days after the Effective Date; or (ii) thirty days

from the date of entry of a Final Order determining and allowing such Claim as an

Administrative Expense Claim, or as soon thereafter as is practicable.

Allowed Administrative Expense Claims representing Post-Petition Administrative Trade

Claims shall be paid in full and/or performed by the Debtors in the ordinary course of business in

accordance with the terms and subject to the conditions of any agreements or Bankruptcy Court

Orders governing, instruments evidencing or other documents relating to, such transactions.

Allowed 503(b)(9) Administrative Claims shall be paid in full and/or performed by the

Debtors within 120 days from the later of the Closing Date or the date such Allowed 503(b)(9)

Administrative Claims are Allowed by the Bankruptcy Court.

### 2.4.    Professional Compensation and Reimbursement Claims

Any Person seeking an award by the Bankruptcy Court of compensation for services

rendered or reimbursement of expenses incurred through and including the Confirmation Date

under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code: (i) shall file

respective final Fee Applications for services rendered and reimbursement of expenses incurred

through the Confirmation Date no later than sixty days after the Confirmation Date or such other

date as may be fixed by the Bankruptcy Court and, (ii) if granted such an award by the

Bankruptcy Court, shall be paid by the Debtors in full in such amounts as are Allowed by the

Bankruptcy Court (a) seven days after such Professional Compensation and Reimbursement

Claim becomes an Allowed Professional Compensation and Reimbursement Claim, or as soon

thereafter as is practicable, or (b) upon such other terms as may be mutually agreed upon

between such Holder of an Allowed Professional Compensation and Reimbursement Claim and

the Debtor, on and after the Effective Date.  Failure to file a final Fee Application timely shall

result in the Professional Compensation and Reimbursement Claim being forever barred and

discharged.

Notwithstanding anything herein to the contrary, and except as otherwise provided by

prior Order of the Bankruptcy Court:  (i) payment of a Professional Compensation and

Reimbursement Claims that is an Allowed Claim as of the Confirmation Date shall be made on

the Confirmation Date; and (ii) payment of a Professional Compensation and Reimbursement

Claims that becomes an Allowed Claim following the Confirmation Date shall be made on or

before the date that is the earlier of (a) the date such Professional Compensation and

Reimbursement Claim is required to be paid in accordance with the Administrative Order or (b)

seven days after an Order deeming such Professional Compensation and Reimbursement Claims

an Allowed Claim is entered by the Bankruptcy Court.

    2.5.   <u>Payment of Statutory Fees</u>

Notwithstanding anything herein to the contrary, all fees due and payable to the Clerk's

Office pursuant to section 1930 of title 28 of the United States Code, including, without

limitation, any United States Trustee quarterly fees incurred pursuant to section 1930(a)(6) of

title 28 of the United States Code shall be paid on the Effective Date.

    2.6.   <u>Priority Tax Claims</u>

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such

Allowed Priority Tax Claim, payment in Cash equal to the amount of such Claim on the later of

(i) the Effective Date and (ii) seven Business Days after entry of a Final Order Allowing such

Priority Tax Claim, or as soon thereafter as is practicable, but in no event later than thirty days

after entry of such Final Order, unless such Holder shall have agreed to different treatment

of such Allowed Claim; <u>provided</u>, <u>however</u>, that any Claim or demand for payment of a

penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy

Code) shall be disallowed pursuant to this Plan and the Holder of an Allowed Priority Tax Claim

shall not assess or attempt to collect such penalty from the Debtors, their Estates, or any property

of such Entities.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims, Professional Compensation and

Reimbursement Claims and Priority Tax Claims are classified for all purposes, including voting,

confirmation and distribution pursuant to the Plan, as follows:

Except for the Administrative Expense Claims and Priority Tax Claims discussed above,

all Claims against, and Equity Interests in, the Debtors and with respect to all property of the

Debtors and their Estates, are defined and hereinafter designated in respective Classes.  A Claim

or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity

Interest qualifies within the description of that Class, and is classified in another Class or

Classes, to the extent that any remainder of the Claim or Equity Interest qualifies within the

description of such other Class or Classes.  A Claim or Equity Interest is classified in a particular

Class only to the extent that the Claim or Equity Interest is an Allowed Claim[2] or Allowed

Equity Interest in that Class and has not been paid, released or otherwise satisfied or waived

before the Effective Date.  Notwithstanding anything to the contrary contained in this Plan, no

Distribution shall be made on account of any Claim that is not an Allowed Claim.

---

[2] For purposes of this Plan, any general reference to "Allowed Claim" shall include Allowed
Administrative Expense Claims.

This Plan is intended to deal with all Claims against and Equity Interests in the Debtors of whatever character, whether known or unknown, whether or not with recourse, whether or not contingent or unliquidated, and whether or not previously Allowed by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code.  However, only Holders of Allowed Claims will receive any distribution under this Plan.  For purposes of determining Pro Rata distributions under this Plan and in accordance with this Plan, Disputed Claims shall be included in the Class in which such Claims would be included if Allowed, until such Claims are finally disallowed.

## ARTICLE IV.

### TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

4.1.    Class 1: DIP Facility Claims

Classification:

The Claims in Class 1 are the DIP Facility Claims.

Treatment

On the Effective Date, in exchange for the DIP Lender making an investment in Investment Assets of $2,500,000 (the "DIP Lender Investment") and committing to purchase the Additional Investment Preferred Interests, the DIP Lender shall receive (i) the repayment of the outstanding balance of the DIP Facility (the "DIP Loan Balance"), (ii) an amount of non-voting preferred equity interests described in Article 7.1(F), and (iii) 51% of the equity interests of Investment Assets.

Impairment and Voting

Class 1 is unimpaired by this Plan.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.2.    Tarragon Corp.

(A)    <u>Class 2A: Secured Claims</u>  There are no Class 2A Claims.

(B)    <u>Class 2B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 2B(i) shall consist of unsecured Priority Claims.

(ii)    <u>Treatment.</u>  Each Holder of a Class 2B(i) Claim shall, in full, final, and complete satisfaction of such Class 2B(i) Claim, be paid in full in Cash in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 2B(i) is unimpaired by this Plan. Therefore, the Holders of Class 2B(i) Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

(C)    <u>Class 2B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 2B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 2B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds of the Creditor Note as determined by the Liquidation Trust.

(iii)    <u>Impairment and Voting</u>.  Class 2B(ii) is impaired, and the Holders of Allowed Class 2B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 2B(iii):  Taberna Claims</u>

(i)    <u>Classification</u>.  Class 2B(iii) consists of claims owed to Taberna Capital Management LLC and certain of its affiliates.

(ii)    <u>Treatment</u>.  Subject to the terms of (a) that certain Subordinated Indenture by and between Tarragon Corp. and JPMorgan Chase Bank, NA dated as of June 15, 2005, (b) that certain Subordinated Indenture by and between Tarragon Corp. and JPMorgan Chase Bank, NA dated September 12, 2005, and (c) that certain Subordinated Indenture by and between Tarragon Corp. and JPMorgan Chase Bank, NA dated as of March 1, 2006 (collectively, the "Subordinated Indentures"), Holders of Class 2B(iii) Claims, in full, final, and complete satisfaction of such Claims**,** shall receive their Pro Rata share of the proceeds of the Creditor Note as determined by the Liquidation Trust after the Senior Debt (as defined in each Subordinated Indentures) has been paid in full.

(iii)    <u>Impairment and Voting</u>.  Class 2B(iii) is impaired by this Plan. Holders of Allowed Class 2B(iii) Claims are entitled to vote accept or reject this Plan.

(E)    <u>Class 2B(iv):  General Electric Credit Corporation Claims</u>

(i)    <u>Classification</u>.  Class 2B(iv) consists of claims arising under that certain Amended and Restated Guaranty of the Non-Recourse Exceptions dated June 30, 2006 by and among GECC, Tarragon Corp. and William S. Friedman ("Guaranty").

(ii)    <u>Treatment</u>.  Pursuant to a settlement with GECC, the Guaranty will be reaffirmed by Reorganized Tarragon.

(iii)    <u>Impairment and Voting</u>.  Class 2B(iv) is impaired by this Plan. Holders of Allowed Class 2B(iv) Claims are entitled to vote accept or reject this Plan.

(F)    <u>Class 2B(v):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 2B(v) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 2B(v) Claims and such Claims shall be cancelled.

(iii)     <u>Impairment and Voting.</u>  Class 2B(v) is impaired, and the Holders

of Class 2B(v) Claims will be conclusively deemed to have rejected the Plan.  Therefore,

Holders of Class 2B(v) Claims will not be entitled to vote to accept or reject the Plan.

(G)     <u>Class 2B(vi):   Unsecured Affiliated Debt Holders Claims</u>

(i)     <u>Classification</u>.  Class 2B(vi) consists of the Affiliated Debt of

Beachwold Partners L.P. and Robert Rothenberg.

(ii)     <u>Treatment</u>.  Holders of Class 2B(vi) Claims will receive 60% of

the equity in Reorganized Tarragon in exchange for the waiver of approximately $40 million of

affiliated unsecured claims held by the Affiliated Debt Holders.  In addition, William S.

Friedman and Arie Kotler shall each agree to guarantee certain existing obligations of Tarragon

Corp. to General Electric Credit Corporation ("GECC") on terms acceptable to them in their sole

discretion.  Furthermore, William S. Friedman and Robert Rothenberg shall agree to amend their

existing employment contracts to reduce compensation.  Finally, the members of Ansonia, LLC

shall agree to waive any veto rights they control, conditioned on arrangements for Robert

Rothenberg's continued participation in portfolio management and so long as there is no

materially adverse tax  consequences relating to any proposed transaction which is not otherwise

covered from the proceeds of such transaction.  In addition, any Class 2B(vi) Claim against

Tarragon Corp. shall be released by the Holders of such Claims as of the Effective Date.

(iii)     <u>Impairment and Voting</u>.  Class 2B(vi) is impaired by this Plan.

Holders of Allowed Class 2B(vi) Claims are entitled to vote accept or reject this Plan.

(H)     <u>Class 2C: Equity Interests</u>

(i)     <u>Classification</u>.  Class 2C comprises the Equity Interests in

Tarragon Corp.

(ii)    <u>Treatment</u>.  Holders of Class 2C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Tarragon Corp. shall be cancelled on the Effective Date without the payment of any monies or consideration.

(iii)    <u>Impairment and Voting</u>  Class 2C is impaired, and the Holders of Allowed Class 2C Claims are deemed to have rejected the Plan.

(I)    <u>Class 2D: Unsecured Convenience Class Claims</u>

(i)    <u>Classification</u>.  Class 2D consists of Unsecured Convenience Class Claims.

(ii)    <u>Treatment</u>.  On the later of the Effective Date or the date on which an Unsecured Convenience Class Claim becomes an Allowed Unsecured Convenience Class Claim, or, in each such case, as soon as practicable thereafter, each Allowed Unsecured Convenience Class Claim, in full, final, and complete satisfaction of such Claim, shall receive Cash equal to 20% of such Allowed Unsecured Convenience Class Claim.

(iii)    <u>Impairment and Voting.</u>  Class 2D is impaired by this Plan. Holders of Allowed Class 2D Claims are entitled to vote accept or reject this Plan.

4.3.    <u>Tarragon Dev. Corp.</u>

(A)    <u>Class 3A: Secured Claims</u> There are no Class 3A Claims.

(B)    <u>Class 3B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 3B(i) shall consist of unsecured Priority Claims.

(ii)     Treatment.  Each Holder of a Class 3B(i) Claim shall, in full, final, and complete satisfaction of such Class 3B(i) Claim, be paid in full in Cash in accordance with Section 507 of the Bankruptcy Code.

(iii)     Impairment and Voting.  Class 3B(i) is unimpaired by this Plan. Therefore, the Holders of Class 3B(i) Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

(C)     Class 3B(ii): Unsecured Non-Priority Claims

(i)     Classification.  Class 3B(ii) consists of all unsecured non-priority Claims.

(ii)     Treatment.  Holders of Class 3B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds of the Creditor Note as determined by the Liquidation Trust.

(iii)     Impairment and Voting.  Class 3B(ii) is impaired, and the Holders of Allowed Class 2B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)     Class 3B(iii):  Intercompany Claims

(i)     Classification.  Class 3B(iii) comprises of Intercompany Claims.

(ii)     Treatment.  There shall be no Distributions to Holders of Class 3B(iii) Claims and such Claims shall be cancelled.

(iii)     Impairment and Voting.  Class 3B(iii) is impaired, and the Holders of Class 3B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 3B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)     Class 3C: Equity Interests

(i)    <u>Classification</u>.  Class 3C comprises the Equity Interests in Tarragon Dev. Corp.

(ii)    <u>Treatment</u>.  Holders of Class 3C Equity Interests shall retain their interests in Tarragon Dev. Corp.

(iii)    <u>Impairment and Voting</u>.  Class 3C is unimpaired by this Plan. Therefore, the Holders of Class 3C Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.4.    <u>Tarragon South</u>

(A)    <u>Class 4A: Secured Claims</u>   There are no Class 4A Claims.

(B)    <u>Class 4B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 4B(i) shall consist of unsecured Priority Claims.

(ii)    <u>Treatment.</u>  Each Holder of a Class 4B(i) Claim shall, in full, final, and complete satisfaction of such Class 4B(i) Claim, be paid in full in Cash in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 4B(i) is unimpaired by this Plan. Therefore, the Holders of Class 4B(i) Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

(C)    <u>Class 4B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 4B(ii) consists of all unsecured non-priority Claims.

(ii)     <u>Treatment</u>.  Holders of Class 4B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds of the Creditor Note as determined by the Liquidation Trust.

(iii)    <u>Impairment and Voting</u>.  Class 4B(ii) is impaired, and the Holders of Allowed Class 4B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)     <u>Class 4B(iii):  Intercompany Claims</u>

(i)     <u>Classification</u>.  Class 4B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 4B(iii) Claims and such Claims shall be cancelled.

(iii)   <u>Impairment and Voting.</u>  Class 4B(iii) is impaired, and the Holders of Class 4B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 4B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)     <u>Class 4C: Equity Interests</u>

(i)     <u>Classification</u>.  Class 4C comprises the Equity Interests in Tarragon South.

(ii)    <u>Treatment</u>.  Holders of Class 4C Equity Interests shall retain their interests in Tarragon South.

(iii)   <u>Impairment and Voting</u>.  Class 4C is unimpaired by this Plan. Therefore, the Holders of Class 4C Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.5.    <u>Tarragon Dev. LLC</u>

(A)     <u>Class 5A: Secured Claims</u>   There are no Class 5A Claims.

(B)    Class 5B(i): Unsecured Priority Claims

(i)    Classification.  Class 5B(i) shall consist of unsecured Priority

Claims.

(ii)    Treatment.  Each Holder of a Class 5B(i) Claim shall, in full, final,

and complete satisfaction of such Class 5B(i) Claim, be paid in full in Cash in accordance with

Section 507 of the Bankruptcy Code.

(iii)    Impairment and Voting.  Class 5B(i) is unimpaired by this Plan.

Therefore, the Holders of Class 5B(i) Claims are not entitled to vote to accept or reject this Plan

and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the

Bankruptcy Code.

(C)    Class 5B(ii): Unsecured Non-Priority Claims

(i)    Classification.  Class 5B(ii) consists of all unsecured non-priority

Claims.

(ii)    Treatment.  Holders of Class 5B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds of the

Creditor Note as determined by the Liquidation Trust.

(iii)    Impairment and Voting.  Class 5B(ii) is impaired, and the Holders

of Allowed Class 5B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    Class 5B(iii):  Intercompany Claims

(i)    Classification.  Class 5B(iii) comprises of Intercompany Claims.

(ii)    Treatment.  There shall be no Distributions to Holders of Class

5B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 5B(iii) is impaired, and the Holders

of Class 5B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore,

Holders of Class 5B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

  (E)    <u>Class 5C: Equity Interests</u>

   (i)    <u>Classification</u>.  Class 5C comprises the Equity Interests in

Tarragon Dev. LLC.

   (ii)    <u>Treatment</u>.  Holders of Class 5C Equity Interests shall retain their

interests in Tarragon Dev. LLC.

   (iii)    <u>Impairment and Voting</u>.  Class 5C is unimpaired by this Plan.

Therefore, the Holders of Class 5C Claims are not entitled to vote to accept or reject this Plan

and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the

Bankruptcy Code.

  4.6.  <u>TMI</u>

  (A)    <u>Class 6A: Secured Claims</u>   There are no Class 6A Claims.

  (B)    <u>Class 6B(i): Unsecured Priority Claims</u>

   (i)    <u>Classification</u>.  Class 6B(i) shall consist of unsecured Priority

Claims.

   (ii)    <u>Treatment.</u>  Each Holder of a Class 6B(i) Claim shall, in full, final,

and complete satisfaction of such Class 6B(i) Claim, be paid in full in Cash in accordance with

Section 507 of the Bankruptcy Code.

   (iii)    <u>Impairment and Voting</u>.  Class 6B(i) is unimpaired by this Plan.

Therefore, the Holders of Class 6B(i) Claims are not entitled to vote to accept or reject this Plan

and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the

Bankruptcy Code.

     (C)    <u>Class 6B(ii): Unsecured Non-Priority Claims</u>

     (i)    <u>Classification</u>.  Class 6B(ii) consists of all unsecured non-priority

Claims.

     (ii)    <u>Treatment.</u>  Holders of Class 6B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the Creditor Note as

determined by the Liquidation Trust.

     (iii)    <u>Impairment and Voting</u>.  Class 6B(ii) is impaired, and the Holders

of Allowed Class 6B(ii) Claims are entitled to vote to accept or reject this Plan.

     (D)    <u>Class 6B(iii):  Intercompany Claims</u>

     (i)    <u>Classification</u>.  Class 6B(iii) comprises of Intercompany Claims.

     (ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class

6B(iii) Claims and such Claims shall be cancelled.

     (iii)    <u>Impairment and Voting.</u>  Class 6B(iii) is impaired, and the Holders

of Class 6B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore,

Holders of Class 6B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

     (E)    <u>Class 6C: Equity Interests</u>

     (iv)    <u>Classification</u>.  Class 6C comprises the Equity Interests in TMI.

     (v)    <u>Treatment</u>.  Holders of Class 6C Equity Interests will not receive

any Distribution of property nor retain any property under this Plan and all Equity Interests in

TMI shall be ultimately assigned to Investment Assets on the Effective Date without the payment

of any monies or consideration.

(vi)    <u>Impairment and Voting</u>  Class 6C is impaired by this Plan. Holders of Allowed Class 6C Claims are entitled to vote accept or reject this Plan.

4.7.    <u>Bermuda Island</u>

(A)    <u>Class 7A: Secured Claims</u>

(i)    <u>Classification</u>.  Class 7A consists of the Claims held by Bank of America.  Class 7A Claims shall be Allowed in an amount equal to the amount of outstanding obligations owed by Bermuda Island as of the Commencement Date and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment</u>.  Subject to a separately presented and approved Settlement Agreement with Bank of America, Holders of Class 7A Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Bermuda Island otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 7A is impaired by this Plan. Holders of Allowed Class 7A Claims are entitled to vote to accept or reject this Plan.

(B)    <u>Class 7B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 7B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 7B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Bermuda Island otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 7B(i) is impaired by this Plan.

Holders of Allowed Class 7B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 7B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 7B(ii) consists of all unsecured non-priority

Claims.

(ii)    <u>Treatment.</u>  Holders of Class 7B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Bermuda Island otherwise distributable to a subsidiary of Former

Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 7B(ii) is impaired, and the Holders

of Allowed Class 7B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 7B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 7B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class

7B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 7B(iii) is impaired, and the Holders

of Class 7B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore,

Holders of Class 7B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 7C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 7C comprises the Equity Interests in

Bermuda Island.

(ii)    <u>Treatment</u>.  Holders of Class 7C Equity Interests will not receive

any Distribution of property nor retain any property under this Plan and all Equity Interests in

Bermuda Island shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

        (iii)    <u>Impairment and Voting</u>  Class 7C is impaired by this Plan. Holders of Allowed Class 7C Claims are entitled to vote accept or reject this Plan.

    4.8.    <u>Orion</u>

    (A)    <u>Class 8A: Secured Claims</u>

        (i)    <u>Classification</u>.  Class 8A consists of the Claims held by Bank of America.  Class 8A Claims shall be Allowed in an amount equal to the amount of outstanding obligations owed by Orion as of the Commencement Date.

        (ii)    <u>Treatment</u>.  Subject to a separately presented and approved Settlement Agreement with Bank of America, Holders of Class 8A Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Orion otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 8A is impaired by this Plan. Holders of Allowed Class 8A Claims are entitled to vote to accept or reject this Plan.

    (B)    <u>Class 8B(i): Unsecured Priority Claims</u>

        (i)    <u>Classification</u>.  Class 8B(i) shall consist of unsecured Priority Claims.

        (ii)    <u>Treatment.</u>  Holders of Class 8B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Orion otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 8B(i) is impaired by this Plan.

Holders of Allowed Class 8B(i) Claims are entitled to vote accept or reject this Plan.

        (C)    <u>Class 8B(ii): Unsecured Non-Priority Claims</u>

        (i)    <u>Classification</u>.  Class 8B(ii) consists of all unsecured non-priority

Claims.

        (ii)    <u>Treatment.</u>  Holders of Class 8B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Orion otherwise distributable to a subsidiary of Former Tarragon,  in

accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 8B(ii) is impaired, and the Holders

of Allowed Class 8B(ii) Claims are entitled to vote to accept or reject this Plan.

        (D)    <u>Class 8B(iii):  Intercompany Claims</u>

        (i)    <u>Classification</u>.  Class 8B(iii) comprises of Intercompany Claims.

        (ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class

8B(iii) Claims and such Claims shall be cancelled.

        (iii)    <u>Impairment and Voting.</u>  Class 8B(iii) is impaired, and the Holders

of Class 8B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore,

Holders of Class 8B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

        (E)    <u>Class 8C: Equity Interests</u>

        (i)    <u>Classification</u>.  Class 8C comprises the Equity Interests in Orion.

        (ii)    <u>Treatment</u>.  Holders of Class 8C Equity Interests will not receive

any Distribution of property nor retain any property under this Plan and all Equity Interests in

Orion shall be ultimately assigned to Homebuilding Assets on the Effective Date without the payment of any monies or consideration.

        (iii)    <u>Impairment and Voting</u>.  Class 8C is impaired by this Plan. Holders of Allowed Class 8C Claims are entitled to vote accept or reject this Plan.

    4.9.    <u>Orlando Central</u>

    (A)    <u>Class 9A: Secured Claims</u>.   There are no Class 9A Claims.

    (B)    <u>Class 9B(i): Unsecured Priority Claims</u>

        (i)    <u>Classification</u>.  Class 9B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

        (ii)    <u>Treatment.</u>  Holders of Class 9B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Orlando Central otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 9B(i) is impaired by this Plan. Holders of Allowed Class 9B(i) Claims are entitled to vote accept or reject this Plan.

    (C)    <u>Class 9B(ii): Unsecured Non-Priority Claims</u>

        (i)    <u>Classification</u>.  Class 9B(ii) consists of all unsecured non-priority Claims.

        (ii)    <u>Treatment.</u>  Holders of Class 9B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Orlando Central otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 9B(ii) is impaired, and the Holders of Allowed Class 9B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)   <u>Class 9B(iii):  Intercompany Claims</u>

(i)   <u>Classification</u>.  Class 9B(iii) comprises of Intercompany Claims.

(ii)   <u>Treatment</u>.  There shall be no Distributions to Holders of Class 9B(iii) Claims and such Claims shall be cancelled.

(iii)   <u>Impairment and Voting.</u>  Class 9B(iii) is impaired, and the Holders of Class 9B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 9B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)   <u>Class 9C: Equity Interests</u>

(i)   <u>Classification</u>.  Class 9C comprises the Equity Interests in Orlando Central.

(ii)   <u>Treatment</u>.  Holders of Class 9C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Orlando Central shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Orlando Central shall be dissolved.

(iii)   <u>Impairment and Voting</u>  Class 9C is impaired, and the Holders of Class 9C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 9C  Claims will not be entitled to vote to accept or reject the Plan.

4.10.   <u>Fenwick</u>

(A)   <u>Class 10A: Secured Claims</u>.  There are no Class 10A Claims.

(B)   <u>Class 10B(i): Unsecured Priority Claims</u>

(i)      <u>Classification</u>.  Class 10B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)     <u>Treatment.</u>  Holders of Class 10B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Fenwick otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 10B(i) is impaired by this Plan. Holders of Allowed Class 10B(i) Claims are entitled to vote accept or reject this Plan.

(C)      <u>Class 10B(ii): Unsecured Non-Priority Claims</u>

(i)      <u>Classification</u>.  Class 10B(ii) consists of all unsecured non-priority Claims.

(ii)     <u>Treatment.</u>  Holders of Class 10B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Fenwick otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 10B(ii) is impaired, and the Holders of Allowed Class 10B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)      <u>Class 10B(iii):  Intercompany Claims</u>

(i)      <u>Classification</u>.  Class 10B(iii) comprises of Intercompany Claims.

(ii)     <u>Treatment</u>.  There shall be no Distributions to Holders of Class 10B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 10B(iii) is impaired, and the Holders of Class 10B(iii) Claims will be conclusively deemed to have rejected the Plan.

Therefore, Holders of Class 10B(iii) Claims will not be entitled to vote to accept or reject the Plan.

    (E)   <u>Class 10C: Equity Interests</u>

    (i)   <u>Classification</u>. Class 10C comprises the Equity Interests in Fenwick.

    (ii)   <u>Treatment</u>. Holders of Class 10C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Fenwick shall be cancelled on the Effective Date without the payment of any monies or consideration. On the Effective Date, Fenwick shall be dissolved.

    (iii)   <u>Impairment and Voting</u> Class 10C is impaired, and the Holders of Class 10C Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 10C Claims will not be entitled to vote to accept or reject the Plan.

    4.11.   <u>Las Olas</u>

    (A)   <u>Class 11A(i): Secured Claims (Bank Atlantic)</u>

    (i)   <u>Classification</u>. Class 11A(i) consists of the Claims held by Bank Atlantic. Class 11A Claims(i) shall be Allowed in an amount equal to the amount of outstanding obligations owed by Las Olas to Bank Atlantic as of the Commencement Date and shall be administered by the Disbursing Agent.

    (ii)   <u>Treatment</u>. Holders of Class 11A(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive title to the Assets owned by Las Olas which secure such Class 11A(i) Claims.

    (iii)   <u>Impairment and Voting</u>. Class 11A(i) is impaired by this Plan. Holders of Allowed Class 11A(i) Claims are entitled to vote to accept or reject this Plan.

  (B) <u>Class 11A(ii): Secured Claims (Regions Bank)</u>

  (i) <u>Classification</u>.  Class 11A(ii) consists of the Claims held by

Regions Bank.  Class 11A(ii) Claims shall be Allowed in an amount equal to the amount of

outstanding obligations owed by Las Olas to Regions Bank as of the Commencement Date and

shall be administered by the Disbursing Agent.

  (ii) <u>Treatment</u>.  Holders of Class 11A(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive an unsecured promissory note of Las Olas in

the amount of the deficiency that exists with respect to the outstanding obligations owed by Las

Olas to Holders of Class 11A(ii) Claims after applying the value of the Assets received from

Central Square in partial satisfaction of such Class 11A(ii) Claims (the "Regions Bank Note").

The Regions Bank Note shall be repaid from the proceeds from the liquidation of the Assets of

Las Olas and provide for interest payments only over a term of three years based on a ten year

amortization at an interest rate equal to the One Month Libor Rate plus 350 basis points with a

balloon payment at the end of such term; provided, however, that the payments to Regions Bank

under the Regions Bank Note are contingent upon the mortgage held by Regions Bank on certain

penthouses owned by Las Olas surviving any fraudulent conveyance claims that may be asserted.

  (iii) <u>Impairment and Voting</u>.  Class 11A(ii) is impaired by this Plan.

Holders of Allowed Class 11A(ii) Claims are entitled to vote to accept or reject this Plan.

  (C) <u>Class 11B(i): Unsecured Priority Claims</u>

  (i) <u>Classification</u>.  Class 11B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

  (ii) <u>Treatment.</u>  Holders of Class 11B(i) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Las Olas otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 11B(i) is impaired by this Plan. Holders of Allowed Class 11B(i) Claims are entitled to vote accept or reject this Plan.

(D)    <u>Class 11B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 11B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment</u>.  Holders of Class 11B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Las Olas otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 11B(ii) is impaired, and the Holders of Allowed Class 11B(ii) Claims are entitled to vote to accept or reject this Plan.

(E)    <u>Class 11B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 11B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 11B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 11B(iii) is impaired, and the Holders of Class 11B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 11B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(F)    <u>Class 11C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 11C comprises the Equity Interests in Las Olas.

(ii)    <u>Treatment</u>.  Holders of Class 11C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Las Olas shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

(iii)    <u>Impairment and Voting</u>  Class 11C is impaired by this Plan. Holders of Allowed Class 11C Claims are entitled to vote accept or reject this Plan.

4.12.    <u>Trio West</u>

(A)    <u>Class 12A: Secured Claims</u>   There are no Class 12A Claims.

(B)    <u>Class 12B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 12B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 12B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Trio West otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 12B(i) is impaired by this Plan. Holders of Allowed Class 12B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 12B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 12B(ii) consists of all unsecured non-priority Claims.

(ii)     <u>Treatment.</u>  Holders of Class 12B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Trio West otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)     <u>Impairment and Voting</u>.  Class 12B(ii) is impaired, and the Holders of Allowed Class 12B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)     <u>Class 12B(iii):  Intercompany Claims</u>

(i)     <u>Classification</u>.  Class 12B(iii) comprises of Intercompany Claims.

(ii)     <u>Treatment</u>.  There shall be no Distributions to Holders of Class 12B(iii) Claims and such Claims shall be cancelled.

(iii)     <u>Impairment and Voting.</u>  Class 12B(iii) is impaired, and the Holders of Class 12B(iii) Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 12B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)     <u>Class 12C: Equity Interests</u>

(i)     <u>Classification</u>.  Class 12C comprises the Equity Interests in Trio West.

(ii)     <u>Treatment</u>.  Holders of Class 12C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Trio West shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Trio West shall be dissolved.

(iii)    <u>Impairment and Voting</u>  Class 12C is impaired, and the Holders of

Class 12C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of

Class 12C  Claims will not be entitled to vote to accept or reject the Plan.

4.13.    <u>800 Madison</u>

(A)    <u>Class 13A: Secured Claims</u>

(i)    <u>Classification</u>.  Class 13A consists of the Claims held by Bank of

America.  Class 13A Claims shall be Allowed in an amount equal to the amount of outstanding

obligations owed by 800 Madison as of the Commencement Date and shall be administered by

the Disbursing Agent.

(ii)    <u>Treatment</u>.  Subject to a separately presented and approved

Settlement Agreement with Bank of America, in exchange for Bank of America agreeing to (a)

forbear from exercising any rights under the loan documents against 800 Madison, (b) extend the

maturity dates of the loan to 800 Madison, and (c) provide post-petition financing to 800

Madison to complete construction of its property and funding of an interest reserve, Tarragon

Corp. and Tarragon Dev. Corp. will, in turn, deliver a guaranty of the Bank of America

Financing Loans, which guaranty shall be secured solely by a first priority lien on 60% of the net

proceeds payable to Tarragon Corp. and Tarragon Dev. Corp. from a sale of real property owned

by 800 Madison.

(iii)    <u>Impairment and Voting</u>.  Class 13A is impaired by this Plan.

Holders of Allowed Class 13A Claims are entitled to vote to accept or reject this Plan.

(B)    <u>Class 13B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 13B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 13B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of 800 Madison otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 13B(i) is impaired by this Plan. Holders of Allowed Class 13B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 13B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 13B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 13B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of 800 Madison otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 13B(ii) is impaired, and the Holders of Allowed Class 13B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 13B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 13B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 13B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 13B(iii) is impaired, and the Holders of Class 13B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 13B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)  Class 13C: Equity Interests

(i)  Classification.  Class 13C comprises the Equity Interests in 800 Madison.

(ii)  Treatment.  Holders of Class 13C Equity Interests shall retain their interests in 800 Madison.

(iii)  Impairment and Voting.  Class 13C is unimpaired by this Plan. Therefore, the Holders of Class 13C Claims are not entitled to vote to accept or reject this Plan and are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.

4.14.  900 Monroe

(A)  Class 14A: Secured Claims

(i)  Classification.  Class 14A consists of the Claims held by Bank of America.  Class 14A Claims shall be Allowed in an amount equal to the amount of outstanding obligations owed by 900 Monroe as of the Commencement Date.

(ii)  Treatment.  Subject to a separately presented and approved Settlement Agreement with Bank of America, Holders of Class 14A Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of 900 Monroe otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)  Impairment and Voting.  Class 14A is impaired by this Plan. Holders of Allowed Class 14A Claims are entitled to vote to accept or reject this Plan.

(B)  Class 14B(i): Unsecured Priority Claims

(i)     <u>Classification</u>.  Class 14B(i) shall consist of unsecured Priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 14B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of 900 Monroe otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 14B(i) is impaired by this Plan. Holders of Allowed Class 14B(i) Claims are entitled to vote accept or reject this Plan.

(C)     <u>Class 14B(ii): Unsecured Non-Priority Claims</u>

(i)     <u>Classification</u>.  Class 14B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 14B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of 900 Monroe otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 14B(ii) is impaired, and the Holders of Allowed Class 14B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)     <u>Class 14B(iii):  Intercompany Claims</u>

(i)     <u>Classification</u>.  Class 14B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 14B(iii) Claims and such Claims shall be cancelled.

(iii)   <u>Impairment and Voting.</u>  Class 14B(iii) is impaired, and the Holders of Class 14B(iii) Claims will be conclusively deemed to have rejected the Plan.

Therefore, Holders of Class 14B(iii) Claims will not be entitled to vote to accept or reject the

Plan.

     (E)    <u>Class 14C: Equity Interests</u>

     (i)    <u>Classification</u>. Class 14C comprises the Equity Interests in 900

Monroe.

     (ii)    <u>Treatment</u>. Holders of Class 14C Equity Interests will not receive

any Distribution of property nor retain any property under this Plan and all Equity Interests in

900 Monroe shall be ultimately assigned to Homebuilding Assets on the Effective Date without

the payment of any monies or consideration.

     (iii)    <u>Impairment and Voting</u>. Class 14C is impaired by this Plan.

Holders of Allowed Class 14C Claims are entitled to vote accept or reject this Plan.

     4.15.   <u>Block 88</u>

     (A)    <u>Class 15A: Secured Claims</u>  There are no Class 15A Claims.

     (B)    <u>Class 15B(i): Unsecured Priority Claims</u>

     (i)    <u>Classification</u>. Class 15B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

     (ii)    <u>Treatment.</u> Holders of Class 15B(i) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Block 88 otherwise distributable to a subsidiary of Former Tarragon,

in accordance with Section 507 of the Bankruptcy Code.

     (iii)    <u>Impairment and Voting</u>. Class 15B(i) is impaired by this Plan.

Holders of Allowed Class 15B(i) Claims are entitled to vote accept or reject this Plan.

     (C)    <u>Class 15B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 15B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 15B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Block 88 otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 15B(ii) is impaired, and the Holders of Allowed Class 15B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 15B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 15B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 15B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 15B(iii) is impaired, and the Holders of Class 15B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 15B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 15C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 15C comprises the Equity Interests in Block 88.

(ii)    <u>Treatment</u>.  Holders of Class 15C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Block 88 owned by a Debtor shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

(iii)    <u>Impairment and Voting</u>  Class 15C is impaired by this Plan.

Holders of Allowed Class 15C Claims are entitled to vote accept or reject this Plan.

4.16.   <u>Central Square</u>

(A)    <u>Class 16A: Secured Claims</u>

(i)    <u>Classification</u>.  Class 16A consists of the Claims held by Regions

Bank.  Class 16A Claims shall be Allowed in an amount equal to the amount of outstanding

obligations owed by Central Square as of the Commencement Date and shall be administered by

the Disbursing Agent.

(ii)    <u>Treatment</u>.  Holders of Class 16A Claims, in full, final, and

complete satisfaction of such Claims, shall receive title to the Assets owned by Central Square

which secures such Class 16A Claims.

(iii)    <u>Impairment and Voting</u>.  Class 16A is impaired by this Plan.

Holders of Allowed Class 16A Claims are entitled to vote to accept or reject this Plan.

(B)    <u>Class 16B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 16B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 16B(i) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Central Square otherwise distributable to a subsidiary of Former

Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 16B(i) is impaired by this Plan.

Holders of Allowed Class 16B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 16B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 16B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 16B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Central Square otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 16B(ii) is impaired, and the Holders of Allowed Class 16B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 16B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 16B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 16B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 16B(iii) is impaired, and the Holders of Class 16B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 16B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 16C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 16C comprises the Equity Interests in Central Square.

(ii)    <u>Treatment</u>.  Holders of Class 16C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Central Square shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

(iii)    <u>Impairment and Voting</u>  Class 16C is impaired by this Plan.

Holders of Allowed Class 16C Claims are entitled to vote accept or reject this Plan.

    4.17.    <u>Charleston</u>

(A)    <u>Class 17A: Secured Claims</u>  There are no Class 17A Claims.

(B)    <u>Class 17B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 17B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 17B(i) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Charleston otherwise distributable to a subsidiary of Former

Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 17B(i) is impaired by this Plan.

Holders of Allowed Class 17B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 17B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 17B(ii) consists of all unsecured non-priority

Claims.

(ii)    <u>Treatment.</u>  Holders of Class 17B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Charleston otherwise distributable to a subsidiary of Former

Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 17B(ii) is impaired, and the Holders

of Allowed Class 17B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 17B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 17B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 17B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 17B(iii) is impaired, and the Holders of Class 17B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 17B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 17C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 17C comprises the Equity Interests in Charleston.

(ii)    <u>Treatment</u>.  Holders of Class 17C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Charleston shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Charleston shall be dissolved.

(iii)    <u>Impairment and Voting</u>  Class 17C is impaired, and the Holders of Class 17C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 17C  Claims will not be entitled to vote to accept or reject the Plan.

4.18.    <u>Omni</u>

(A)    <u>Class 18A: Secured Claims</u>   There are no Class 18A Claims.

(B)    <u>Class 18B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 18B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 18B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Omni otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 18B(i) is impaired by this Plan. Holders of Allowed Class 18B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 18B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 18B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 18B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Omni otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 18B(ii) is impaired, and the Holders of Allowed Class 18B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 18B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 18B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 18B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 18B(iii) is impaired, and the Holders of Class 18B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 18B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

    (E)    <u>Class 18C: Equity Interests</u>

        (i)    <u>Classification</u>.  Class 18C comprises the Equity Interests in Omni.

        (ii)    <u>Treatment</u>.  Holders of Class 18C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Omni shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

        (iii)    <u>Impairment and Voting</u>  Class 18C is impaired by this Plan. Holders of Allowed Class 18C Claims are entitled to vote accept or reject this Plan.

    4.19.    <u>Tarragon Edgewater</u>

    (A)    <u>Class 19A: Secured Claims</u>  There are no Class 19A Claims.

    (B)    <u>Class 19B(i): Unsecured Priority Claims</u>

        (i)    <u>Classification</u>.  Class 19B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

        (ii)    <u>Treatment.</u>  Holders of Class 19B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Tarragon Edgewater otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 19B(i) is impaired by this Plan. Holders of Allowed Class 19B(i) Claims are entitled to vote accept or reject this Plan.

    (C)    <u>Class 19B(ii): Unsecured Non-Priority Claims</u>

        (i)    <u>Classification</u>.  Class 19B(ii) consists of all unsecured non-priority Claims.

        (ii)    <u>Treatment.</u>  Holders of Class 19B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Tarragon Edgewater otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 19B(ii) is impaired, and the Holders of Allowed Class 19B(ii) Claims are entitled to vote to accept or reject this Plan.

    (D)    <u>Class 19B(iii):  Intercompany Claims</u>

        (i)    <u>Classification</u>.  Class 19B(iii) comprises of Intercompany Claims.

        (ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 19B(iii) Claims and such Claims shall be cancelled.

        (iii)    <u>Impairment and Voting.</u>  Class 19B(iii) is impaired, and the Holders of Class 19B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 19B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

    (E)    <u>Class 19C: Equity Interests</u>

        (i)    <u>Classification</u>.  Class 19C comprises the Equity Interests in Tarragon Edgewater.

        (ii)    <u>Treatment</u>.  Holders of Class 19C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Tarragon Edgewater shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

        (iii)    <u>Impairment and Voting</u>  Class 19C is impaired by this Plan. Holders of Allowed Class 19C Claims are entitled to vote accept or reject this Plan.

4.20.    Trio East

(A)    Class 20A: Secured Claims

(i)    Classification.  Class 20A consists of the Claims held by Bank of America.  Class 20A Claims shall be Allowed in an amount equal to the amount of outstanding obligations owed by Trio East as of the Commencement Date and shall be administered by the Disbursing Agent.

(ii)    Treatment.  Subject to a separately presented and approved Settlement Agreement with Bank of America, Holders of Class 20A Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Trio East otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    Impairment and Voting.  Class 20A is impaired by this Plan. Holders of Allowed Class 20A Claims are entitled to vote to accept or reject this Plan.

(B)    Class 20B(i): Unsecured Priority Claims

(i)    Classification.  Class 20B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    Treatment.  Holders of Class 20B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Trio East otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    Impairment and Voting.  Class 20B(i) is impaired by this Plan. Holders of Allowed Class 20B(i) Claims are entitled to vote accept or reject this Plan.

(C)    Class 20B(ii): Unsecured Non-Priority Claims

        (i)    <u>Classification</u>.  Class 20B(ii) consists of all unsecured non-priority Claims.

        (ii)    <u>Treatment.</u>  Holders of Class 20B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Trio East otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

        (iii)    <u>Impairment and Voting</u>.  Class 20B(ii) is impaired, and the Holders of Allowed Class 20B(ii) Claims are entitled to vote to accept or reject this Plan.

      (D)    <u>Class 20B(iii):  Intercompany Claims</u>

        (i)    <u>Classification</u>.  Class 20B(iii) comprises of Intercompany Claims.

        (ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 20B(iii) Claims and such Claims shall be cancelled.

        (iii)    <u>Impairment and Voting.</u>  Class 20B(iii) is impaired, and the Holders of Class 20B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 20B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

      (E)    <u>Class 20C: Equity Interests</u>

        (i)    <u>Classification</u>.  Class 20C comprises the Equity Interests in Trio East.

        (ii)    <u>Treatment</u>.  Holders of Class 20C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Trio East shall be ultimately assigned to Liquidation Assets on the Effective Date without the payment of any monies or consideration.

(iii)   <u>Impairment and Voting</u>  Class 20C is impaired by this Plan.

Holders of Allowed Class 20C Claims are entitled to vote accept or reject this Plan.

**4.21.**   <u>Vista</u>

(A)   <u>Class 21A: Secured Claims</u>  There are no Class 21A Claims.

(B)   <u>Class 21B(i): Unsecured Priority Claims</u>

(i)   <u>Classification.</u>  Class 21B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)   <u>Treatment.</u>  Holders of Class 21B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Vista otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 21B(i) is impaired by this Plan. Holders of Allowed Class 21B(i) Claims are entitled to vote accept or reject this Plan.

(C)   <u>Class 21B(ii): Unsecured Non-Priority Claims</u>

(i)   <u>Classification.</u>  Class 21B(ii) consists of all unsecured non-priority Claims.

(ii)   <u>Treatment.</u>  Holders of Class 21B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Vista otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 21B(ii) is impaired, and the Holders of Allowed Class 21B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)   <u>Class 21B(iii):  Intercompany Claims</u>

(i)     Classification.  Class 21B(iii) comprises of Intercompany Claims.

(ii)    Treatment.  There shall be no Distributions to Holders of Class

21B(iii) Claims and such Claims shall be cancelled.

(iii)   Impairment and Voting.  Class 21B(iii) is impaired, and the

Holders of Class 21B(iii) Claims will be conclusively deemed to have rejected the Plan.

Therefore, Holders of Class 21B(iii)  Claims will not be entitled to vote to accept or reject the

Plan.

(E)     Class 21C: Equity Interests

(i)     Classification.  Class 21C comprises the Equity Interests in Vista.

(ii)    Treatment.  Holders of Class 21C Equity Interests will not receive

any Distribution of property nor retain any property under this Plan and all Equity Interests in

Vista shall be cancelled on the Effective Date without the payment of any monies or

consideration.  On the Effective Date, Vista shall be dissolved.

(iii)   Impairment and Voting  Class 21C is impaired, and the Holders of

Class 21C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of

Class 21C  Claims will not be entitled to vote to accept or reject the Plan.

    4.22.   Murfreesboro

(A)     Class 22A: Secured Claims.  There are no Class 22A Claims.

(B)     Class 22B(i): Unsecured Priority Claims

(i)     Classification.  Class 22B(i) shall consist of unsecured Priority

Claims and shall be administered by the Disbursing Agent.

(ii)    Treatment.  Holders of Class 22B(i) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Murfreesboro otherwise distributable to a subsidiary of Former

Tarragon, in accordance with Section 507 of the Bankruptcy Code.

      (iii)   <u>Impairment and Voting</u>.  Class 22B(i) is impaired by this Plan.

Holders of Allowed Class 22B(i) Claims are entitled to vote accept or reject this Plan.

     (C)   <u>Class 22B(ii): Unsecured Non-Priority Claims</u>

      (i)   <u>Classification</u>.  Class 22B(ii) consists of all unsecured non-priority

Claims.

      (ii)   <u>Treatment.</u>  Holders of Class 22B(ii) Claims, in full, final, and

complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the

liquidation of the Assets of Murfreesboro otherwise distributable to a subsidiary of Former

Tarragon, in accordance with Section 507 of the Bankruptcy Code.

      (iii)   <u>Impairment and Voting</u>.  Class 22B(ii) is impaired, and the Holders

of Allowed Class 22B(ii) Claims are entitled to vote to accept or reject this Plan.

     (D)   <u>Class 22B(iii):  Intercompany Claims</u>

      (i)   <u>Classification</u>.  Class 22B(iii) comprises of Intercompany Claims.

      (ii)   <u>Treatment</u>.  There shall be no Distributions to Holders of Class

22B(iii) Claims and such Claims shall be cancelled.

      (iii)   <u>Impairment and Voting.</u>  Class 22B(iii) is impaired, and the

Holders of Class 22B(iii) Claims will be conclusively deemed to have rejected the Plan.

Therefore, Holders of Class 22B(iii)  Claims will not be entitled to vote to accept or reject the

Plan.

     (E)   <u>Class 22C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 22C comprises the Equity Interests in Murfreesboro.

(ii)    <u>Treatment</u>.  Holders of Class 22C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Murfreesboro shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Murfreesboro shall be dissolved.

(iii)    <u>Impairment and Voting</u>  Class 22C is impaired, and the Holders of Class 22C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 22C  Claims will not be entitled to vote to accept or reject the Plan.

4.23.    <u>Stonecrest</u>

(A)    <u>Class 23A: Secured Claims.</u>   There are no Class 23A Claims.

(B)    <u>Class 23B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 23B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 23B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Stonecrest otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 23B(i) is impaired by this Plan. Holders of Allowed Class 23B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 23B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 23B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 23B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Stonecrest otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 23B(ii) is impaired, and the Holders of Allowed Class 23B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 23B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 23B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 23B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 23B(iii) is impaired, and the Holders of Class 23B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 23B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 23C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 23C comprises the Equity Interests in Stonecrest.

(ii)    <u>Treatment</u>.  Holders of Class 23C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Stonecrest shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Stonecrest shall be dissolved.

(iii)    <u>Impairment and Voting</u>  Class 23C is impaired, and the Holders of Class 23C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 23C  Claims will not be entitled to vote to accept or reject the Plan.

    4.24.    <u>Stratford</u>

(A)    <u>Class 24A: Secured Claims</u>  There are no Class 24A Claims.

(B)    <u>Class 24B(i): Unsecured Priority Claims</u>

(i)    <u>Classification</u>.  Class 24B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 24B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Stratford otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 24B(i) is impaired by this Plan. Holders of Allowed Class 24B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 24B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 24B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 24B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Stratford otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 24B(ii) is impaired, and the Holders of Allowed Class 24B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    Class 24B(iii):  Intercompany Claims

(i)    Classification.  Class 24B(iii) comprises of Intercompany Claims.

(ii)    Treatment.  There shall be no Distributions to Holders of Class 24B(iii) Claims and such Claims shall be cancelled.

(iii)    Impairment and Voting.  Class 24B(iii) is impaired, and the Holders of Class 24B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 24B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    Class 24C: Equity Interests

(i)    Classification.  Class 24C comprises the Equity Interests in Stratford.

(ii)    Treatment.  Holders of Class 24C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Stratford shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Stratford shall be dissolved.

(iii)    Impairment and Voting  Class 24C is impaired, and the Holders of Class 24C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 24C  Claims will not be entitled to vote to accept or reject the Plan.

4.25.    MSCP

(A)    Class 25A: Secured Claims  There are no Class 25A Claims.

(B)    Class 25B(i): Unsecured Priority Claims

(i)    Classification.  Class 25B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)    <u>Treatment.</u>  Holders of Class 25B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of MSCP otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 25B(i) is impaired by this Plan. Holders of Allowed Class 25B(i) Claims are entitled to vote accept or reject this Plan.

(C)    <u>Class 25B(ii): Unsecured Non-Priority Claims</u>

(i)    <u>Classification</u>.  Class 25B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 25B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of MSCP otherwise distributable to a subsidiary of Former Tarragon,  in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 25B(ii) is impaired, and the Holders of Allowed Class 25B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 25B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 25B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 25B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 25B(iii) is impaired, and the Holders of Class 25B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 25B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)   <u>Class 25C: Equity Interests</u>

(i)   <u>Classification</u>.  Class 25C comprises the Equity Interests in MSCP.

(ii)   <u>Treatment</u>.  Holders of Class 25C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in MSCP shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, MSCP shall be dissolved.

(iii)   <u>Impairment and Voting</u>  Class 25C is impaired, and the Holders of Class 25C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 25C  Claims will not be entitled to vote to accept or reject the Plan.

4.26.   <u>Hanover</u>

(A)   <u>Class 26A: Secured Claims</u>  There are no Class 26A Claims.

(B)   <u>Class 26B(i): Unsecured Priority Claims</u>

(i)   <u>Classification</u>.  Class 26B(i) shall consist of unsecured Priority Claims and shall be administered by the Disbursing Agent.

(ii)   <u>Treatment.</u>  Holders of Class 26B(i) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Hanover otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)   <u>Impairment and Voting</u>.  Class 26B(i) is impaired by this Plan. Holders of Allowed Class 26B(i) Claims are entitled to vote accept or reject this Plan.

(C)   <u>Class 26B(ii): Unsecured Non-Priority Claims</u>

(i)   <u>Classification</u>.  Class 26B(ii) consists of all unsecured non-priority Claims.

(ii)    <u>Treatment.</u>  Holders of Class 26B(ii) Claims, in full, final, and complete satisfaction of such Claims, shall receive their Pro Rata share of the proceeds from the liquidation of the Assets of Hanover otherwise distributable to a subsidiary of Former Tarragon, in accordance with Section 507 of the Bankruptcy Code.

(iii)    <u>Impairment and Voting</u>.  Class 26B(ii) is impaired, and the Holders of Allowed Class 26B(ii) Claims are entitled to vote to accept or reject this Plan.

(D)    <u>Class 26B(iii):  Intercompany Claims</u>

(i)    <u>Classification</u>.  Class 26B(iii) comprises of Intercompany Claims.

(ii)    <u>Treatment</u>.  There shall be no Distributions to Holders of Class 26B(iii) Claims and such Claims shall be cancelled.

(iii)    <u>Impairment and Voting.</u>  Class 26B(iii) is impaired, and the Holders of Class 26B(iii) Claims will be conclusively deemed to have rejected the Plan. Therefore, Holders of Class 26B(iii)  Claims will not be entitled to vote to accept or reject the Plan.

(E)    <u>Class 26C: Equity Interests</u>

(i)    <u>Classification</u>.  Class 26C comprises the Equity Interests in Hanover.

(ii)    <u>Treatment</u>.  Holders of Class 26C Equity Interests will not receive any Distribution of property nor retain any property under this Plan and all Equity Interests in Hanover shall be cancelled on the Effective Date without the payment of any monies or consideration.  On the Effective Date, Hanover shall be dissolved.

(iii)   <u>Impairment and Voting</u>  Class 26C is impaired, and the Holders of Class 26C Claims will be conclusively deemed to have rejected the Plan.  Therefore, Holders of Class 26C  Claims will not be entitled to vote to accept or reject the Plan.

<u>**ARTICLE V.**</u>

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1.   <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.

(A)   <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all Executory Contracts and unexpired leases that exist between the applicable Debtor and any Person as of the Confirmation Date and which are set forth in Schedule 5.1(A)(1) (Executory Contracts) or Schedule 5.1(A)(2) (unexpired leases), shall be deemed assumed by the applicable Debtor and assigned to Reorganized Tarragon as of the Effective Date, except for any Executory Contract or unexpired lease (i) which has been assumed pursuant to an Order of the Bankruptcy Court entered before the Confirmation Date, (ii) which has been rejected pursuant to an Order of the Bankruptcy Court entered before the Confirmation Date, or (iii) as to which a motion for approval of the rejection of such Executory Contract or unexpired lease has been filed and served before the Confirmation Date; <u>provided</u>, <u>however</u>, that each of the Debtors reserves the right, on or before the Effective Date, to amend such Schedules to delete any Executory Contract or unexpired lease therefrom or to add any Executory Contract or unexpired lease thereto, in which event such Executory Contract(s) or unexpired lease(s) shall be deemed to be, respectively, assumed or rejected.  All executory contracts, other contracts and agreements and any unexpired leases that exist between any of the Debtors and any Person shall be rejected by the Debtors as of the Confirmation Date unless expressly assumed on Schedule 5.1(A)(1) or 5.1(A)(2).  The applicable Debtor shall provide notice of any amendments to Schedule 5.1(A)(1) or 5.1(A)(2) to the parties to the Executory

Contracts and unexpired leases affected thereby.  The listing of a document on Schedule

5.1(A)(1) or 5.1(A)(2) shall not constitute an admission by the applicable Debtor that such

document is an Executory Contract or an unexpired lease or that the applicable Debtor has any

liability thereunder.

(B)     Schedules of Rejected Executory Contracts and Unexpired Leases;

Inclusiveness.  Each Executory Contract and unexpired lease listed or to be listed on Schedule

5.1(A)(1) or 5.1(A)(2) shall include (i) modifications, amendments, supplements, restatements,

or other agreements made directly or indirectly by any agreement, instrument, or other document

that in any manner affects such Executory Contract or unexpired lease, without regard to whether

such agreement, instrument or other document is listed on Schedule 5.1(A)(1) or 5.1(A)(2) and

(ii) Executory Contracts or unexpired leases appurtenant to the premises listed on Schedule

5.1(A)(1) or 5.1(A)(2) including, without limitation, all easements, licenses, permits, rights,

privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal

easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in

real estate or rights in rem relating to such premises to the extent any of the foregoing are

Executory Contracts or unexpired leases, unless any of the foregoing agreements previously have

been assumed.

(C)     Insurance Policies.  Each of the Debtors' insurance policies and any

agreements, documents or instruments relating thereto, including, without limitation, any

retrospective premium rating plans relating to such policies, are treated as Executory Contracts

under the Plan.  Notwithstanding the foregoing, distributions under the Plan to any Holder of a

Claim covered by any of such insurance policies and related agreements, documents or

instruments that are assumed hereunder, shall be in accordance with the treatment provided

under this Plan.  Nothing contained in this Article shall constitute or be deemed a waiver of any

Cause of Action that any of the Debtors may hold against any entity including, without

limitation, the insurer under any of the Debtors' policies of insurance.

(D)    Approval of Assumption or Rejection of Executory Contracts and
Unexpired Leases.  Entry of the Confirmation Order shall constitute as of the Effective Date, the

approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the (i)

assumption of the Executory Contracts and unexpired leases to be assumed pursuant to Article

5.1(A) hereof, and (ii) rejection of the Executory Contracts and unexpired leases to be rejected

pursuant to Article 5.1(A) hereof.   Upon the Effective Date, each counter party to an Executory

Contract or unexpired lease listed on listed on Schedule 5.1(A)(1) or 5.1(A)(2) shall be deemed

to have consented to assumption contemplated by Bankruptcy Code Section 365(c)(1)(B), to the

extent such consent is necessary for such assumption.

(E)    Cure of Defaults.  Except as may otherwise be agreed to by the parties,

within ninety days after the Effective Date, or as due in the ordinary course of business, and

provided such Executory Contract or unexpired lease has not been rejected as of the Effective

Date, Reorganized Tarragon shall cure any and all undisputed defaults under any Executory

Contract or unexpired lease assumed pursuant to the Plan in accordance with section 365(b)(1) of

the Bankruptcy Code or in accordance with agreements previously negotiated by the parties in

respect of the reduction of pre- Commencement Date Claims, as applicable.  Notice of the cure

amount is set forth on Schedule 5.1(A)(1) or 5.1(A)(2), as applicable, to the Plan.  If no Cure

amount is set forth on those Schedules, the applicable Debtor believes no cure amount is due.

Notwithstanding the foregoing, in the event of a dispute regarding (i) the nature or amount of any

cure obligation, (ii) the ability of Reorganized Tarragon or any assignee to provide "adequate

assurances of future performance" (within the meaning of section 365 of the Bankruptcy Code)

under the Executory Contract or unexpired lease to be assumed or assigned, or (iii) any other

matter pertaining to any such assumption, the cure obligation shall be satisfied no later than

thirty days of the entry of a Final Order determining the obligation, if any, of the applicable

Debtor or Reorganized Tarragon with respect thereto, or as may otherwise be agreed to by the

parties.

(F)    <u>Cure Procedure</u>.  The Plan and Schedule 5.1(A)(1) or 5.1(A)(2) (included

in the Plan Supplement) shall constitute notice to any non-Debtor party to any Executory

Contract or unexpired lease to be assumed pursuant to the Plan of the amount of any cure amount

owed, if any, under the applicable Executory Contract or unexpired lease.  **Any non-Debtor**

**party that fails to respond or object on or before the deadline scheduled by the Bankruptcy**

**Court for objections to the Plan, shall be deemed to have consented to such proposed**

**amount for all purposes in the Chapter 11 Cases.**

(G)    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts and</u>

<u>Unexpired Leases Rejected Pursuant to the Plan</u>.  Claims arising out of the rejection of an

Executory Contract or unexpired lease, after the Bar Date, pursuant to Article 5.1(A) of this Plan

must be filed with the Bankruptcy Court and served upon the Clerk and the Debtors' counsel or

as otherwise may be provided in the Confirmation Order, by no later than thirty days after notice

of entry of the Confirmation Order and/or notice of an amendment to Schedule 5.1(A)(1) or

5.1(A)(2).  Any Claims not filed within such time will be forever barred from assertion against

the applicable Debtor and its Estate and Reorganized Tarragon and its property.  Any Claim

arising out of the rejection, prior to the Bar Date, of an Executory Contract or unexpired lease,

shall have been filed with the Bankruptcy Court and served upon the applicable Debtor prior the

Bar Date or is forever barred from assertion against the applicable Debtor and its Estate and

Reorganized Tarragon and its property.  Unless otherwise Ordered by the Bankruptcy Court, all

Claims arising from the rejection of Executory Contracts and unexpired leases shall be treated as

General Unsecured Claims under the Plan.

(H)    Indemnification Obligations.  For purposes of the Plan, the obligations of

any of the Debtors to defend, indemnify, reimburse or limit the liability of any present member,

manager, director, officer or employee who is or was a member, manager, director, officer or

employee, respectively, on or after the Commencement Date against any Claims or obligations

pursuant any to operating agreement, certificates of formation or similar corporate governance

documents, applicable state law, or specific agreement, or any combination of the foregoing,

shall: (i) be assumed by Reorganized Tarragon; (ii) survive confirmation of the Plan; (iii) remain

unaffected thereby; and (iv) not be discharged, irrespective of whether indemnification, defense,

reimbursement or limitation is owed in connection with an event occurring before, on or after the

Commencement Date.

## ARTICLE VI.

## ACCEPTANCE OR REJECTION OF THIS PLAN

6.1.    Voting Classes

Holders of Allowed Claims in each impaired Class are entitled to vote as a class to accept

or reject this Plan.  Each Holder of an Allowed Claim in the applicable Classes delineated in the

Claims Treatment Table are entitled to vote to accept or reject this Plan.

6.2.    Acceptance by Impaired Classes

An impaired Class of Claims shall be deemed to have accepted this Plan if (i) the Holders

(other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-

thirds in amount of the Allowed Claims actually voting in such Class have voted to accept this

Plan and (ii) the Holders (other than any Holder designated under section 1126(e) of the

Bankruptcy Code) of more than one-half in number of the Allowed Class voting in such Class

have voted to accept this Plan.

      6.3.    <u>Non Consensual Confirmation</u>

At the Debtors' request, this Plan may be confirmed under the so-called "cram down"

provisions set forth in section 1129(b) of the Bankruptcy Code if, in addition to satisfying the

other requirements for confirmation, this Plan "does not discriminate unfairly" and is determined

to be "fair and equitable" with respect to each Class of Claims or Equity Interests that has not

accepted this Plan (*i.e.*, dissenting Classes).  Because certain Classes are deemed to have rejected

this Plan, the Debtors are requesting confirmation of this Plan, as it may be modified from time

to time in accordance with the terms of this Plan, under section 1129(b) of the Bankruptcy Code.

The Debtors also will request confirmation under this provision for any impaired Class that

rejects this Plan.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw this

Plan or any amendment or supplement thereto, including to amend or modify it to satisfy the

requirements of section 1129(b) of the Bankruptcy Code, if necessary, in accordance with

section 1127 of the Bankruptcy Code and this Plan.

# **ARTICLE VII.**

## **IMPLEMENTATION OF THE PLAN**

In addition to the provisions set forth elsewhere in the Plan, the following shall constitute

the means for implementation of the Plan:

      7.1.    <u>Post Confirmation Tarragon.</u>

      (A)    <u>Reorganized Tarragon</u>

Upon the Effective Date, Tarragon Corp. shall become Reorganized Tarragon, pursuant

to which all of the existing shares of Tarragon Corp., including those shares owned by the

Affiliated Debt Holders, shall be cancelled of record.  In exchange for HFZ Capital Group, LLC

("HFZ") agreeing to purchase certain preferred stock of Reorganized Tarragon ("Tarragon

Preferred Stock") having a cumulative preferred dividend of 8% in an amount of up to

$5,000,000 (the "Preferred Stock Purchase") of which at least $1 million will be purchased on

the Effective Date to provide initial working capital to Reorganized Tarragon, HFZ shall receive

40% of the new issue common stock of Reorganized Tarragon.

Subsequent to the Effective Date, HFZ will purchase, at par, at such time or times as

required by the Affiliated Debt Holders, additional preferred stock of Reorganized Tarragon in

an amount equal to $5 million *less* the amount of the initial Preferred Stock Purchase in

increments of no less than $500,000 (the "Additional Preferred Stock").   The proceeds of such

sale shall be used to enable Reorganized Tarragon to pay, when required, its future operating

costs and expenses, including liquidation expenses of Liquidation Assets described below and

debt service, to the extent that the income of Reorganized Tarragon, as reasonably determined by

the Affiliated Debt Holders, is insufficient to pay in a timely manner such costs and expenses.

The Board of Directors of Reorganized Tarragon (the "Reorganized Tarragon Board")

will agree upon a monthly operating budget following the Effective Date, which will include

Reorganized Tarragon's future operating costs and expenses, including liquidation expenses of

Liquidation Assets and debt service.  At such times when the Affiliated Debt Holders determine

that Reorganized Tarragon's cash flow is insufficient to pay, when required, any budgeted item,

HFZ will purchase the Additional Preferred Stock.

In the event that HFZ shall fail to purchase any of the Additional Preferred Stock when

required, then, in addition to any other remedies available at law or equity: (i) the Affiliated Debt

Holders shall have the right to arrange for a replacement investor to purchase Class B Preferred

Stock of Reorganized Tarragon ("Class B Preferred Stock"), which shall be the same as the

Tarragon Preferred Stock except that the Class B Preferred Stock shall be repaid prior to the

Tarragon Preferred Stock, (ii) if such failure to purchase shall occur prior to the second

anniversary of the Effective Date, HFZ shall not be entitled to have a director on the

Reorganized Tarragon Board and the purchaser of the Class B Preferred Stock shall have the

right to appoint two directors to the Reorganized Tarragon Board, (iii) if such failure to purchase

shall occur on or after such second anniversary, HFZ shall be entitled to have one director on the

Reorganized Tarragon Board and the purchaser of the Class B Preferred Stock shall have the

right to have one director on the Reorganized Tarragon Board, and (iv) Reorganized Tarragon

shall have the right to repurchase for an aggregate of $1,000, a percentage of the common shares

of Reorganized Tarragon owned by HFZ and of the membership interests of HFZ in HFZ M/F

Company equal to 1% for each $200,000 of Class B Preferred Stock to be purchased by the

replacement investor and reissue (or transfer) such common stock and HFZ M/F Company

membership interests to the replacement investor.

   Reorganized Tarragon shall maintain book entries to distinguish between Tarragon

Preferred Stock issued for funds advanced by HFZ for carrying costs of Investment Assets (the

"Tarragon Preferred Stock (Investment)") and all other uses.

   The Affiliated Debt Holders shall receive 60% of the common stock of Reorganized

Tarragon in exchange for the waiver of approximately $40 million of affiliated unsecured claims

held by the Affiliated Debt Holders.  In addition, William S. Friedman and Arie Kotler shall each

agree to guarantee certain existing obligations of Tarragon Corp. to GECC on terms acceptable

to them in their sole discretion.  Furthermore, William S. Friedman and Robert Rothenberg shall

agree to amend their existing employment contracts to reduce compensation.  Finally, the

members of Ansonia, LLC shall agree to waive any veto rights they control, conditioned on

arrangements for Robert Rothenberg's continued participation in portfolio management and so

long as there is no materially adverse tax  consequences relating to any proposed transaction

which is not otherwise covered from the proceeds of such transaction.

(B)   HFZ M/F Company

On or promptly following the Effective Date, Reorganized Tarragon and HFZ shall form

HFZ M/F Company.  Reorganized Tarragon shall contribute, and shall cause its affiliates to

contribute, to HFZ M/F Company all of the equity interests (the "Downstreamed Equity

Interests") in the entities (the "Downstreamed Entities") which own the Assets contained in the

Liquidation Portfolio (as set forth on Exhibit C), the Investment Portfolio (as set forth on Exhibit

B) and the Homebuilding Portfolio (as set forth on Exhibit A).  In exchange for the contributions

of the Downstreamed Equity Interests, Reorganized Tarragon and its Affiliates who are

transferors of Downstream Equity Interests (collectively, the "Reorganized Tarragon

Transferors") shall receive, in the aggregate, 83.333% of the equity interests in HFZ M/F

Company.  HFZ shall own the other 16.667% of the equity interests of HFZ M/F Company.

(C)   Former Tarragon

On or promptly following the Effective Date, HFZ M/F Company shall form Former

Tarragon.  HFZ M/F Company shall contribute to Former Tarragon all of the Downstreamed

Equity Interests.

(D)   New Business

On or promptly following the Effective Date, HFZ M/F Company shall form New

Business.  HFZ M/F Company shall contribute to New Business all of the Assets contained in

the New Business Portfolio.

38590/0031-5177189v22

(E)    Liquidation Assets

On or promptly following the Effective Date, Former Tarragon shall form Liquidation Assets. Former Tarragon shall contribute to Liquidation Assets the Downstreamed Equity Interests of entities owning the Liquidation Portfolio.

(F)    Investment Assets

On or promptly following the Effective Date, Former Tarragon shall form Investment Assets. In exchange for the DIP Lender agreeing to make the DIP Lender Investment, the DIP Lender shall receive (i) repayment of the DIP Loan Balance in Cash following confirmation of the Plan, (ii) non-voting preferred equity interests in Investment Assets ("Preferred Interests") having a cumulative preferred dividend of 8% on the amount of the DIP Lender Investment (the "Investment Preferred Interest"), and (iii) 51% of the equity interests of Investment Assets. Former Tarragon shall own the remaining equity interests of Investment Assets and shall contribute to Investment Assets all of the Downstreamed Equity Interests of the Downstreamed Entities owning the Investment Portfolio. Following confirmation of the Plan, the DIP Lender shall purchase, at such time or times as required by the Affiliated Debt Holders, additional Investment Preferred Interests in an amount up to $2,500,000 (the "Additional Investment Preferred Interests"). The proceeds of such sale shall be used to enable Investment Assets to pay, when required, its future operating costs and expenses.

Investment Assets and the manager entity of Investment Assets shall each have a Board of Managers (the "Investment Assets Board" and the "Investment Assets Manager Board", respectively) consisting of five Managers: three appointed by the DIP Lender, one appointed by the Affiliated Debt Holders and one appointed by HFZ. The Investment Assets Board will agree upon a monthly operating budget following the Effective Date. At such times when Investment

Assets' cash on hand is insufficient to satisfy, when required, the overall budget, the DIP Lender shall purchase Additional Investment Preferred Interests.

In the event that the DIP Lender shall fail to purchase any of the Additional Investment Preferred Interests when required, then: (i) the Investment Assets Board shall have the right to arrange for a replacement investor to purchase Class B Preferred Interests of Investment Assets ("Class B Interests"), which shall be the same as the Investment Preferred Interests, except that the Class B Interests shall be repaid prior to the Investment Preferred Interests, (ii) the DIP Lender shall be entitled to have one Manager on each of the Investment Assets Board and the Investment Assets Manager Board and the purchaser of the Class B Interests shall have the right to have one Manager on each of the Investment Assets Board and the Investment Assets Manager Board, and (iii) Reorganized Tarragon shall have the right to repurchase for an aggregate of $1,000, a percentage of the common equity interests of Investment Assets owned by the DIP Lender equal to 1% for each $100,000 of the Class B Interests to be purchased by the replacement investor and transfer such common equity interests to the replacement investor.

(G)    <u>Homebuilding Assets</u>

On or promptly following the Effective Date, Former Tarragon shall form Homebuilding Assets.  Former Tarragon shall contribute to Homebuilding Assets all of the Downstreamed Equity Interests of the entities owning the Homebuilding Portfolio.

(H)    <u>Post Confirmation Officers.</u>

On or promptly following the Effective Date, the post-confirmation senior executive officers of Reorganized Tarragon and Investment Assets will include the following individuals:

<u>Reorganized Tarragon</u>:

Udi Toledano - Chief Executive Officer

Robert Rothenberg – Chief Operating Officer

Eyal Nuchamovitz – Chief Financial Officer

William Friedman – Chief Acquisition Officer


Investment Assets:

Arie Kotler – Chief Executive Officer

Robert Rothenberg – Chief Operating Officer

Eyal Nuchamovitz – Chief Financial Officer


In addition to the above referenced senior executive officers, junior executive officers who will be responsible for the day-to-day business affairs of Reorganized Tarragon and its Affiliates will be appointed from time to time.

    7.2.    <u>Flow of proceeds from Assets contained in the Liquidation Portfolio.</u>

The Net Proceeds from the liquidation of the Assets contained in the Liquidation Portfolio ("Liquidation Portfolio Proceeds") shall be distributed as follows:

(A)    All loans and applicable carrying costs, selling costs and post-Confirmation expenses attributable to the real estate assets held by each subsidiary of Liquidation Assets shall be paid in full (or reimbursed to Reorganized Tarragon or any Affiliate which advanced such expenses) from the Net Proceeds of such subsidiary; next

(B)    All remaining Net Proceeds shall be distributed to Former Tarragon, the sole member of Liquidation Assets.

    7.3.    <u>Flow of proceeds from Assets contained in the Investment Portfolio.</u>

The Net Proceeds from the sale, refinancing or other capital event of or related to the Assets contained in the Investment Portfolio ("Investment Portfolio Proceeds") shall be distributed as follows:

(A)     Any amounts received by Investment Assets from Former Tarragon as DIP Lender Expense Contributions (as hereinafter defined) shall be applied solely to the payment of the Priority Return and the redemption of Investment Preferred Interests  (or Class B Interests, if applicable); next

(B)     All Net Proceeds of Investment Assets shall be distributed (i) first, to the DIP Lender in proportion to the aggregate accrued but unpaid Priority Return and for the redemption of the Investment Preferred Interests, and (ii) then, to Former Tarragon in proportion to the aggregate outstanding accrued preferred dividends and redemption value of the Tarragon Preferred Stock (Investment).  All amounts distributed to the DIP Lender pursuant to this provision shall be applied first to accrued but previously unpaid Priority Returns, then to the redemption of the Investment Preferred Interests (in full or in part); next

(C)     After the Investment Preferred Interests and Tarragon Preferred Stock (Investment) have been redeemed, until the Creditor Note has been paid in full, 62.77% of the Net Proceeds shall be paid to Former Tarragon and 37.23% of the Net Proceeds shall be paid to the DIP Lender; next

(D)     After the Investment Preferred Interests and Tarragon Preferred Stock (Investment) have been redeemed, and after the Creditor Note has been paid in full, to the members of Investment Assets (Former Tarragon and the DIP Lender) in proportion to their membership interests in Investment Assets.

7.4.    Flow of proceeds from Assets contained in the Homebuilding Portfolio.

All of the Net Proceeds from the liquidation of the Assets contained in the Homebuilding

Portfolio ("Homebuilding Portfolio Proceeds") shall be distributed to Former Tarragon, the sole

member of Homebuilding Assets.

   7.5. <u>Flow of Funds from Former Tarragon.</u>

  Any funds received by Former Tarragon ("Former Tarragon Proceeds") shall be

distributed as follows:

   (A) <u>Creditor Note Non-Recourse Payments</u>.  Former Tarragon shall issue the

Creditor Note as a payment in kind for non-priority claims of unsecured creditors of Tarragon

Corp., Tarragon Dev. Corp., Tarragon South, Tarragon Dev., LLC and TMI.  Former Tarragon

shall apply the designated funds received from the Portfolio Entities and, for a period of five

years after the Effective Date, the Special Tax Receipts (designated as such by HFZ M/F

Company) in satisfaction of the Creditor Note.  Payments on the Creditor Note shall be made on

a quarterly basis.  Net Proceeds received from the Portfolio Entities shall be paid toward the

Creditor Note as follows:

1 0% from Liquidation Assets, until the satisfaction of all Funded Confirmation Expenses (as hereinafter defined) or other Administrative Expense Claims; thereafter, 90% of Net Proceeds received from Liquidation Assets.

2 0% from Investment Assets, until all Tarragon Preferred Stock (Investment) and all Investment Preferred Interests have been redeemed; thereafter 43% (27% of the 62.77% distribution) of Net Proceeds received from Investment Assets.

3 0% from Homebuilding Assets until all Tarragon Preferred Stock has been redeemed; thereafter 15% of Net Proceeds received from Homebuilding Assets.

   (B) For a period of five years after the Effective Date, Former Tarragon shall

apply all of the Special Tax Receipts (contributed by HFZ M/F Company) to the payment of the

Creditor Note.

**7.6.** Recovery of Funded Confirmation Expenses from Liquidation Assets

Distributions. Former Tarragon shall apply the Net Proceeds received from Liquidation Assets

to the extent of the Funded Confirmation Expenses, as follows:

(A) A cumulative amount equal to the DIP Lender Confirmation Expenses,

*less* previously contributed amounts hereunder, shall be contributed to Investment Assets, to be

used by Investment Assets to redeem the Investment Preferred Interests (the "DIP Lender

Expense Contribution").

(B) A cumulative amount equal to the HFZ Confirmation Expenses, *less*

previously distributed amounts hereunder, shall be distributed to HFZ M/F Company, to be

further distributed to Reorganized Tarragon to be applied by the Reorganized Tarragon Board to

redeem the Tarragon Preferred Stock (the "HFZ Expense Distribution").

(C) The DIP Lender Expense Contribution and the HFZ Expense Distribution

shall be made pari passu by Former Tarragon in proportion to the outstanding balance of the DIP

Lender Confirmation Expenses and the HFZ Confirmation Expenses, reduced by prior payments

pursuant to Articles 7.6(A) and 7.6(B) immediately above.

(D) The remaining Net Proceeds shall be distributed to HFZ M/F Company,

the sole member of Former Tarragon.

7.7. Flow of Funds from HFZ M/F Company.

Any funds received by HFZ M/F Company ("HFZ M/F Company Proceeds") shall be

distributed as follows (after allowance for legal fees and reasonable reserves):

(A) So long as any Preferred Stock of Reorganized Tarragon remains

outstanding, all Net Proceeds of HFZ M/F Company shall be distributed to Reorganized

Tarragon; and

(B)      After all of the Preferred Stock of Reorganized Tarragon have been

redeemed, all Net Proceeds of HFZ M/F Company shall be distributed to the members of HFZ

M/F Company (HFZ and Reorganized Tarragon) in proportion to their membership interests in

HFZ M/F Company at such times as the Managing Members of HFZ M/F Company shall

determine.

7.8.    <u>Corporate Action for Reorganized Tarragon</u>.  On the Effective Date, all

matters and actions provided for under the Plan that would otherwise require approval of the

members, managers, officers and/or directors of the Debtors or Reorganized Tarragon or their

successors-in-interest under the Plan and all other Plan Documents, and the election or

appointment, as the case may be, of managers or officers of Reorganized Tarragon pursuant to

the Plan, shall be deemed to have been authorized and effective in all respects as provided herein

and shall be taken without any requirement for further action by members, managers or directors

of Reorganized Tarragon.

7.9.    <u>Approval of Agreements</u>.  The solicitation of votes on the Plan also shall be

deemed as a solicitation for the approval of the Plan Documents and Plan Supplement and all

transactions contemplated by the Plan.  Entry of the Confirmation Order shall constitute approval

of the Plan Documents and Plan Supplement and all transactions contemplated thereby.

7.10.    <u>Special Procedures for Lost, Stolen, Mutilated or Destroyed Instruments</u>.  In

addition to any requirements under any certificate of incorporation or bylaws or other similar

governance document, any Holder of a Claim evidenced by an instrument that has been lost,

stolen, mutilated or destroyed will, in lieu of surrendering such instrument, deliver to the

Disbursing Agent: (i) evidence satisfactory to the Disbursing Agent and the Debtors or

Reorganized Tarragon, as the case may be, of the loss, theft, mutilation or destruction; and (ii)

such security or indemnity as may be required by the Disbursing Agent to hold the Disbursing

Agent and the Debtors or Reorganized Tarragon, as the case may be, harmless from any

damages, liabilities or costs incurred in treating such individual as a Holder of an instrument.

Upon compliance with this Article, the Holder of a Claim evidenced by any such lost, stolen,

mutilated or destroyed instrument will, for all purposes under the Plan, be deemed to have

surrendered such instrument.

7.11.   Operation of the Debtors-in-Possession Between the Confirmation Date and

the Effective Date.  The Debtors shall each continue to operate as Debtors-in-Possession, subject

to the supervision of the Bankruptcy Court, pursuant to the Bankruptcy Code, during the period

from the Confirmation Date through and until the Effective Date, and any obligation incurred by

the applicable Debtor during that period shall constitute an Administrative Expense Claim.

7.12.   Revesting of Assets.

(A)    The property of the Estates of the Debtors not otherwise distributed

pursuant to this Plan shall revest in Reorganized Tarragon on the Effective Date.

(B)    From and after the Effective Date Reorganized Tarragon may operate its

business, and may use, acquire and dispose of property without supervision or approval by the

Bankruptcy Court and free of any restrictions imposed by the Bankruptcy Code, but subject to

the continuing jurisdiction of the Bankruptcy Court as set forth in Article X of this Plan.

(C)    As of the Effective Date, all property of the Debtors and Reorganized

Tarragon shall be free and clear of all Liens, Claims and Equity Interests, except as provided in

the Plan or the Confirmation Order.

7.13.   Discharge of Debtors.  The rights afforded herein and the treatment of all

Claims and Equity Interests herein shall be in exchange for and in complete satisfaction,

discharge and release of Claims and Equity Interests of any nature whatsoever, including any

interest accrued on such Claims from and after the Commencement Date, against the Debtors

and the Debtors-in-Possession, Estates, or any of their assets or properties.  Except as otherwise

provided herein, (A) on the Effective Date, all such Claims against and Equity Interests in any of

the Debtors shall be satisfied, discharged and released in full, and (B) all Persons are precluded

and enjoined from asserting against Reorganized Tarragon, their respective successors, or their

assets or properties any other or further Claims or Equity Interests based upon any act or

omission, transaction or other activity of any kind or nature that occurred before the

Confirmation Date.

      7.14.  <u>Term of Bankruptcy Injunction or Stays</u>.  All injunctions or stays provided

for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and

in existence on the Confirmation Date, shall remain in full force and effect until the Effective

Date. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the

terms and conditions of the Plan, the Confirmation Order or a separate Order of the Bankruptcy

Court, all entities who have held, hold, or may hold Claims against or Equity Interests in any of

the Debtors, are permanently enjoined, on and after the Confirmation Date, from (A)

commencing or continuing in any manner any action or other proceeding of any kind with

respect to any such Claim or Equity Interests, (B) the enforcement, attachment, collection or

recovery by any manner or means of any judgment, award, decree or Order against any of the

Debtors on account of any such Claim or Equity Interests, (C) creating, perfecting or enforcing

any encumbrance of any kind against any of the Debtors or against the property or interests in

property of any of the Debtors on account of any such Claim or Equity Interests and (D)

asserting any right of setoff, subrogation or recoupment of any kind against any obligation due

from any of the Debtors or against the property or interests in property of any of the Debtors on account of any such Claim or Equity Interests. Such injunction shall extend to successors of the applicable Debtor (including, without limitation, Reorganized Tarragon) and their respective properties and interests in property.

7.15.    <u>Exculpation</u>.  The Debtors, Reorganized Tarragon, the Creditors' Committee, each of the members of the Creditors' Committee, and their respective members, partners, officers, directors, employees and agents (including any attorneys, financial advisors, investment bankers and other professionals retained by such Persons) shall have no liability to any Holder of any Claim or Equity Interests for any act or omission in connection with, or arising out of the Chapter 11 Cases, the Disclosure Statement, the Plan, the Plan Documents, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for willful misconduct or gross negligence as determined by a Final Order of the Bankruptcy Court and, in all respects, shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under this Plan.

7.16.    <u>Dissolution of Certain Entities</u>.  The following entities will be deemed dissolved upon the Effective Date: Orlando Central, Murfreesboro, Stonecrest, Fenwick, Trio West, Charleston, Vista, Stratford, MSCP and Hanover.

## ARTICLE VIII.

## CAUSES OF ACTION

8.1.    <u>Preservation of Causes of Action</u>.  Entry of the Confirmation Order shall not be deemed or construed as a waiver or release by any of the Debtors of any Causes of Action.  In accordance with section 1123(b)(3) of the Bankruptcy Code, all Retained Actions shall be retained by Reorganized Tarragon on the Effective Date and Reorganized Tarragon may (but not

be required to) enforce all Retained Actions.  All funds received from the Retained Actions shall

be paid to Reorganized Tarragon and distributed in accordance with the terms of this Plan.

Reorganized Tarragon, in its sole discretion, will determine whether to bring, settle, release,

compromise, or enforce any rights (or decline to do any of the foregoing) with respect to the

Retained Actions.  Reorganized Tarragon or any successors may pursue such litigation claims in

accordance with the best interests of Reorganized Tarragon or any successors holding such rights

of action.

Notwithstanding the foregoing, except for the Retained Actions, all other Causes of

Actions, including Avoidance Actions, shall be assigned to the Liquidation Trustee on the

Effective Date and the Liquidation Trustee may (but not be required to) enforce all such Causes

of Actions.  All funds received from such Causes of Actions shall be distributed in accordance

with the terms of this Plan.  The Liquidation Trustee, in its sole discretion, will determine

whether to bring, settle, release, compromise, or enforce any rights (or decline to do any of the

foregoing) with respect to such Causes of Actions.  The Liquidation Trustee or any successors

may pursue such litigation claims in accordance with the best interests of the Liquidation Trustee

or any successors holding such rights of action.

Except as expressly provided in this Plan, the failure of the Debtors to specifically list

any Claim, Cause of Action, right of action, suit or proceeding in the Schedules, the Disclosure

Statement or any Schedule to the Plan Supplement does not, and will not be deemed to,

constitute a waiver or release by the Debtors of such Claim, Cause of Action, right of action, suit

or proceeding, and either the Liquidation Trustee or Reorganized Tarragon, as applicable, will

retain the right to pursue such Claims, Cause of Action, rights of action, suits or proceeding in its

sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim

preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of

action, and suit or proceeding upon or after the Confirmation or consummation of the Plan.

Further, recovery of any proceeds of Causes of Action shall be deemed "for the benefit of the

[applicable] Estate" as set forth in section 550(a) of the Bankruptcy Code.

## ARTICLE IX.

### CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

9.1.    <u>Conditions to Confirmation</u>.  The following conditions shall be met before

Confirmation of the Plan:

(A)    An Order shall have been entered finding that:

(1)    the Disclosure Statement contains adequate information pursuant

to section 1125 of the Bankruptcy shall have been issued by the Bankruptcy Court; and

(2)    the Debtors, the Creditors' Committee and their respective

principals, officers, directors, attorneys, accountants, financial advisors, advisory affiliates,

employees, and agents solicited acceptance or rejection of the Plan in good faith pursuant to 11

U.S.C. § 1125(e); and

(B)    the proposed Confirmation Order shall be in form and substance

reasonably satisfactory to the Debtors and shall have been signed by the Bankruptcy Court and

entered on the docket of this Chapter 11 Cases.

9.2.    <u>Conditions Precedent to the Effective Date</u>.  The Plan shall not become

effective unless and until the following conditions shall have been satisfied or waived:

(A)    The Confirmation Order shall authorize and direct that the Debtors and

Reorganized Tarragon take all actions necessary or appropriate to enter into, implement and

consummate the contracts, instruments, releases, leases and other agreements or documents

created in connection with the Plan, including the Plan Documents and the transactions

contemplated thereby.

(B)     The Confirmation Order, and each Order referred to in Article 9.1 hereof,

shall have become a Final Order.

(C)     The statutory fees owing to the United States Trustee shall have been paid

in full.

(D)     All other actions, authorizations, consents and regulatory approvals

required (if any) and all Plan Documents necessary to implement the provisions of the Plan shall

have been obtained, effected or executed in a manner acceptable to the Debtors or, if waivable,

waived by the Person or Persons entitled to the benefit thereof.

     9.3.     <u>Effect of Failure of Conditions</u>.  If each condition to the Effective Date has

not been satisfied or duly waived within one year after the Confirmation Date, then upon motion

by any party in interest, made before the time that each of the conditions has been satisfied or

duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the

Confirmation Order will be vacated by the Bankruptcy Court; <u>provided</u>, <u>however</u>, that

notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of

the conditions to the Effective Date is either satisfied or duly waived by the Debtors, after

consultation with the Creditors' Committee before the Bankruptcy Court enters a Final Order

granting such motion.  If the Confirmation Order is vacated pursuant to this Article, the Plan

shall be deemed null and void in all respects including, without limitation, the discharge of

Claims pursuant to section 1141 of the Bankruptcy Code and the assumptions or rejections of

Executory Contracts and unexpired leases provided for herein, and nothing contained herein

shall (i) constitute a waiver or release of any Claims by or against any of the Debtors or (ii)

prejudice in any manner the rights of any of the Debtors.

       9.4.    <u>Waiver of Conditions to Confirmation and Effective Date</u>.  Each of the

conditions to Confirmation and the Effective Date may be waived in writing, in whole or in part,

by any of the Debtors at any time, without notice or an Order of the Bankruptcy Court, but only

after consultation with the Creditors' Committee.  The failure to satisfy or to waive any condition

may be asserted by any of the Debtors regardless of the circumstances giving rise to failure of

such condition to be satisfied (including any action or inaction by such Debtor).  The failure of

any of the Debtors to exercise any of the foregoing rights will not be deemed a waiver of any

other rights, and each such right will be deemed an ongoing right that may be asserted at any

time.

       9.5.    <u>Effects of Plan Confirmation</u>.

       (A)    <u>Limitation of Liability</u>.  Neither the Debtors, Reorganized Tarragon, the

Creditors' Committee, the members of the Creditors' Committee, the Disbursing Agent, nor any

of their respective post-Commencement Date employees, officers, directors, agents or

representatives, or any Professional (which, for the purposes of this Article, shall include any

counsel of the Debtors, Reorganized Tarragon or the Creditors' Committee) employed by any of

them, shall have or incur any liability to any Person whatsoever, including, specifically, any

Holder of a Claim or Equity Interests, under any theory of liability (except for any Claim based

upon willful misconduct or gross negligence), for any act taken or omission made in good faith

directly related to formulating, negotiating, preparing, disseminating, implementing, confirming

or consummating the Plan, the Plan Documents, the Confirmation Order, or any contract,

instrument, release, or other agreement or document created or entered into, or any other act

taken or omitted to be taken in connection with the Plan Documents, provided that nothing in

this paragraph shall limit the liability of any Person for breach of any express obligation it has

under the terms of the Plan, the Plan Documents, or under any agreement or other document

entered into by such Person either after the Commencement Date or in accordance with the terms

of the Plan or for any breach of a duty of care owed to any other Person occurring after the

Effective Date.  In all respects, the Debtors, Reorganized Tarragon, the Creditors' Committee,

the Disbursing Agent, and each of their respective members, managers, officers, directors,

employees, advisors and agents shall be entitled to rely upon the advice of counsel with respect

to their duties and responsibilities under the Plan.

   (B) <u>Subordination</u>.  The classification and manner of satisfying all Claims and

Equity Interests and the respective distributions and treatments under the Plan take into account

or conform to the relative priority and rights of the Claims and Equity Interests in each Class in

connection with any contractual, legal and equitable subordination rights relating thereto,

whether arising under general principles of equitable subordination, section 510(b) of the

Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released

pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the

Effective Date, all Persons from enforcing or attempting to enforce any such contractual, legal

and equitable subordination rights satisfied, compromised and settled pursuant to this Article IX.

   (C) <u>Mutual Releases</u>.  Pursuant to section 1123(b) of the Bankruptcy Code,

and except as otherwise specifically provided in the Plan, for good and valuable consideration,

on and after the Effective Date, the Debtors, the Creditors Committee, the members of the

Creditors Committee and all Holders of Claims and/or Interests and each of their respective

affiliates, principals, officers, directors, attorneys, accountants, financial advisors, advisory

affiliates, employees and agents (each a "Released Party") shall each conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each other Released Party from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any Released Party would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Creditors Committee, the members of the Creditors' Committee, the Chapter 11 Case, the Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and this Disclosure Statement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than any Claims, direct actions, causes of action, demands, rights, judgments, debts, obligations, assessments, compensations, costs, deficiencies or other expenses of any nature whatsoever (including without limitation, attorneys' fees) (i) arising under or based on the Plan or any other documents, instrument or agreement to be executed or delivered therewith, or (ii) in the case of fraud.

## **ARTICLE X.**

## **RETENTION OF JURISDICTION**

The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(A)    To hear and determine all matters with respect to the assumption or rejection of any Executory Contract or unexpired lease to which any of the Debtors is a party or with respect to which any of the Debtors may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(B)    To hear and determine any and all adversary proceedings, applications and contested matters, including, without limitation, adversary proceedings and contested matters arising in connection with the prosecution of the Avoidance Actions, to the extent specifically reserved in accordance with Article 8.1 of the Plan, and all other Causes of Action;

(C)    To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(D)    To enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(E)    To issue such Orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(F)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any Order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(G)    To hear and determine all Fee Applications; provided, however, that from and after the Effective Date, the payment of the fees and expenses of the retained Professionals of Reorganized Tarragon shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(H)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(I)       Except as otherwise limited herein, to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(J)       To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(K)       To hear any other matter not inconsistent with the Bankruptcy Code;

(L)       To enter a final decree closing the Chapter 11 Cases;

(M)       To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(N)       To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(O)       To issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(P)       To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement, including the Plan Documents;

(Q)       To enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases has been closed);

(R)     To resolve disputes concerning any reserves with respect to Disputed

Claims, Disputed Equity Interests or the administration thereof; and

(S)     To resolve any disputes concerning whether a Person or Entity had

sufficient notice of the Chapter 11 Cases, the Claims Bar Date, the hearing on the approval of the

Disclosure Statement as containing adequate information, the hearing on the confirmation of the

Plan for the purpose of determining whether a Claim, or Equity Interests is discharged hereunder

or for any other purpose.

**ARTICLE XI.**

**MISCELLANEOUS PROVISIONS**

11.1.    Effectuating Documents and Further Transactions.  The Debtors or

Reorganized Tarragon are authorized to execute, deliver, file or record such contracts,

instruments, releases, and other agreements or documents and to take such actions as may be

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.2.    Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the

Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan,

the creation of any mortgage, deed of trust or other security interest, the making or assignment of

any lease or sublease, or the making or delivery of any deed or other instrument of transfer

under, in furtherance of, or in connection with the Plan, including, without limitation, any merger

agreements or agreements of consolidation, deeds, bills of sale or assignments executed in

connection with any of the transactions contemplated under the Plan shall not be subject to any

stamp, real estate transfer, mortgage recording or other similar tax.

11.3.    Post-Confirmation Date Fees and Expenses.  From and after the

Confirmation Date, the Debtors and Reorganized Tarragon shall, in the ordinary course of

business and without the necessity for any approval by the Bankruptcy Court, but only to the

extent funds are available, pay the reasonable fees and expenses of Professional Persons

thereafter incurred by (A) the Debtors and Reorganized Tarragon, as the case may be, and (B)

the Creditors' Committee until its termination in accordance with the provisions hereof,

including, without limitation, those fees and expenses incurred in connection with the

implementation and consummation of the Plan.

      11.4.   <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of the

title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation

Hearing, shall be paid in Cash equal to the amount of such fees on the Effective Date.

Reorganized Tarragon shall timely pay post-confirmation quarterly fees assessed pursuant to 28

U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing the

Chapter 11 Cases, or enters an Order either converting this case to a case under Chapter 7 or

dismissing this case.  After the Confirmation Date, Reorganized Tarragon shall file with the

Bankruptcy Court and shall transmit to the United States Trustee a true and correct statement of

all disbursements made by Reorganized Tarragon for each month, or portion thereof, that the

Chapter 11 Cases remains open in a format prescribed by the United States Trustee.

      11.5.   <u>Amendment or Modification of the Plan</u>.  Alterations, amendments or

modifications of the Plan may be proposed in writing by the Debtors, at any time before the

Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the

conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have

complied with section 1125 of the Bankruptcy Code.

      11.6.   <u>Severability</u>.  In the event that the Bankruptcy Court determines, before the

Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such

provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such

Claims or Equity Interests as to which the provision is determined to be invalid, void or

unenforceable.  The invalidity, voidability or unenforceability of any such provision shall in no

way limit or affect the enforceability and operative effect of any other provision of the Plan.

      11.7.   <u>Revocation or Withdrawal of the Plan</u>.  Each of the Debtors reserves the right

to revoke or withdraw the Plan before the Confirmation Date.  If any of the Debtors revokes or

withdraws the Plan before the Confirmation Date, then the Plan shall be deemed null and void.

In such event, nothing contained herein shall constitute or be deemed a waiver or release of any

Claims by or against any of the Debtors or any other Person or to prejudice in any manner the

rights of any of the Debtors or any Person in any further proceedings involving any of the

Debtors.

      11.8.   <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of

the Debtors, the Holders of Claims, and Equity Interests, and their respective successors and

assigns, including, without limitation, Reorganized Tarragon.

      11.9.   <u>Notices</u>.  All notices, requests and demands to or upon the Debtors or

Reorganized Tarragon to be effective shall be in writing and, unless otherwise expressly

provided herein, shall be deemed to have been duly given or made when actually delivered or, in

the case of notice by facsimile transmission, when received and telephonically confirmed,

addressed as follows:

  To the Debtors:          Tarragon Corp.
                            423 West 55th Street, 12th Floor
                            New York, New York 10019
                            Attention: William Friedman, CEO

with copies to:             Cole, Schotz, Meisel,
                                     Forman & Leonard, P.A.
                                     25 Main Street
                                     P.O. Box 800
                                     Hackensack, NJ 07602-0800
                                     Attn:   Michael D. Sirota, Esq.
                                     Attn:   Warren Usatine, Esq.
                                     Facsimile:  (201) 489-1536

11.10.  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of such jurisdiction.

11.11.  <u>Withholding and Reporting Requirements</u>.  In connection with the consummation of the Plan, the Debtors or Reorganized Tarragon, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

11.12.  <u>Plan Supplement</u>.  Forms of all material agreements or documents related to any the Plan, including but not limited to those identified in this Plan, shall be contained in the Plan Supplement.  The Plan Supplement shall be filed with the Clerk of the Bankruptcy Court no later than five days before the Voting Deadline.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims, or Equity Interests may obtain a copy of the Plan Supplement upon written request to the Debtors' counsel.

11.13.  <u>Allocation of Plan Distributions Between Principal and Interest</u>.  To the

extent that any Allowed Claim entitled to a distribution under the Plan is comprised of

indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the

principal amount of the Claim first and then, to the extent the consideration exceeds the principal

amount of the Claim, to accrued but unpaid interest.

11.14.  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only,

and shall not constitute a part of the Plan for any other purpose.

11.15.  <u>Exhibits/Schedules</u>.  All exhibits and schedules to the Plan, including the

Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

11.16.  <u>Filing of Additional Documents</u>.  On or before substantial consummation of

the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents

as may be necessary or appropriate to effectuate and further evidence the terms and conditions of

the Plan.

11.17.  <u>No Admissions</u>.  Notwithstanding anything herein to the contrary, nothing

contained in the Plan shall be deemed as an admission by any Entity with respect to any matter

set forth herein.

11.18.  <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person

or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of

any heir, executor, administrator, successor or assign of such Person or Entity.

11.19.  <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall

have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of

the filing of the Plan, any statement or provision contained herein, or the taking of any action by

any of the Debtors with respect to the Plan shall be or shall be deemed to be an admission or

waiver of any rights of any of the Debtors with respect to the Holders of Claims or Equity

Interests before the Effective Date.

11.20.  <u>Section 1145 Exemption</u>.  Pursuant to section 1145(a) of the Bankruptcy

Code, the offer, issuance, transfer or exchange of any security under the Plan, or the making or

delivery of an offering memorandum or other instrument of offer or transfer under the Plan, shall

be exempt from section 5 of the Securities Act or any similar state or local law requiring the

registration for offer or sale of a security or registration or licensing of an issuer or a security.

11.21.  <u>Implementation</u>.  The Debtors shall take all steps, and execute all documents,

including appropriate releases, necessary to effectuate the provisions contained in this Plan.

11.22.  <u>Inconsistency</u>.  In the event of any inconsistency among the Plan, the

Disclosure Statement, the Plan Documents, the Plan Supplement, or any other instrument or

document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

11.23.  <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in

consideration for the classification, distribution and other benefits provided under the Plan, the

provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or

controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute

the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all

other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings

shall constitute its determination that such compromises and settlements are in the best interests

of the Debtors, Reorganized Tarragon, the Estates, and all Holders of Claims and Equity

Interests against the Debtors.


DATED:  August 3, 2009

[*Signature pages to the Joint Plan of Reorganization follow.*]

**TARRAGON CORPORATION**


By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer


**TARRAGON DEVELOPMENT
CORPORATION**


By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer


**TARRAGON  SOUTH DEVELOPMENT
CORP.**


By:____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer


**TARRAGON DEVELOPMENT
COMPANY LLC**


By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Corporation, its Managing
Member


**TARRAGON MANAGEMENT INC.**


By:____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:   Chief Executive Officer

**BERMUDA ISLAND TARRAGON LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Tarragon Corporation, its Managing
Member

**ORION TOWERS TARRAGON LLP**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of Orion
Tarragon GP, Inc., its General Partner

**ORLANDO CENTRAL PARK
TARRAGON LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Tarragon Corporation, its Managing
Member

**FENWICK PLANTATION TARRAGON LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, the
Manager of Charleston Tarragon Manager,
LLC, its Manager

**CHARLESTON TARRAGON MANAGER, LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, its
Manager

**800 MADISON STREET URBAN RENEWAL, LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, the
Manager of Block 88 Development, LLC, its
Managing Member

**BLOCK 88 DEVELOPMENT LLC**

By: ____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, its
Manager

**900 MONROE DEVELOPMENT, LLC**

By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Corporation, its Manager

**THE PARK DEVELOPMENT EAST, LLC**

By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, the
Managing Member of Palisades Park East
Tarragon, LLC, its Managing Member

**ONE LAS OLAS, LTD.**

By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of Omni
Equitiies Corporation, its General Partner

**OMNI EQUITIES CORPORATION**

By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer

**CENTRAL SQUARE TARRAGON LLC**

By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Corporation, its Managing
Member

**THE PARK DEVELOPMENT WEST, LLC**


By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Tarragon Development Corporation, the
Managing Member of Palisades Park West
Tarragon, LLC, its Managing Member


**VISTA LAKES TARRAGON, LLC**


By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Tarragon Corporation, its Manager


**TARRAGON EDGEWATER ASSOCIATES, LLC**


By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Tarragon Development Corporation, its
Manager


**MURFREESBORO GATEWAY PROPERTIES, LLC**


By: \_\_\_\_/s/ William S. Friedman_____
Name:   William S. Friedman
Title:     Chief Executive Officer of
Morningside National, Inc., its Manager

**TARRAGON STONECREST LLC**

By: _____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Morningside National, Inc., its Manager

**TARRAGON STRATFORD, INC.**

By: _____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer

**MSCP, INC.**

By: _____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer

**TDC HANOVER HOLDINGS, LLC**

By: _____/s/ William S. Friedman_____
Name:   William S. Friedman
Title:    Chief Executive Officer of
Tarragon Development Corporation, its
Managing Member

## Exhibit A

Homebuilding Portfolio

| Project Name | Transferred Equity Interest |
|---|---|
| Block 106 & 111 – Laconte Site | The 62.5% Equity Interest in Block 106 Development LLC owned by Tarragon Dev. Corp. shall be transferred to Homebuilding Assets.<br><br>The 62.5% Equity Interest in Block 110 Development LLC owned by Tarragon Dev. Corp. shall be transferred to Homebuilding Assets. |
| Block 114B – NJ Casket/Hodgins | The 47.5% Equity Interest in Block 114 Development LLC owned by Tarragon Corp. shall be transferred to Homebuilding Assets. |
| Block 104 – Sales Center | The 47.5% Equity Interest in TDC/URSA Hoboken Sales Center, LLC owned by Tarragon Corp. shall be transferred to Homebuilding Assets. |
| Block 112 - Madison | The 62.5% Equity Interest in Block 112 Development LLC owned by Tarragon Dev. Corp. shall be transferred to Homebuilding Assets. |
| River Oaks | Tarragon South shall cause Orion Tarragon LP, Inc. to transfer its 69.9% Equity Interest in Orion to Homebuilding Assets.<br><br>Tarragon South shall cause Orion Tarragon GP, Inc. to transfer its 0.1% Equity Interest in Orion to Homebuilding Assets. |
| 900 Monroe | The 87.5% Equity Interest in 900 Monroe owned by Tarragon shall be transferred to Homebuilding Assets.<br><br>The 12.5% Equity Interest in 900 Monroe owned by Tarragon Dev. Corp. shall be transferred to Homebuilding Assets. |

**Exhibit B**

Investment Portfolio

| Project Name | Transferred Equity Interest |
|---|---|
| Vintage at Madison Crossing | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Woodcliff Estates | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Autumn Ridge | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Groton Towers | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Dogwood Hills | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Hamden Centre | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Lofts at the Mills | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Sagamore Hills | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Parkview | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| 200 Fountain | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Liberty Building | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to |

|  |  |
|---|---|
|  | Investment Assets. |
| Nutmeg Woods | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Ocean Beach | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Forest Park | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Lakeview | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| 278 Main Street | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Club at Danforth | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| River City Landing | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Vintage at Plantation Bay | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Harbor Green | The 100% Equity Interest in RI Panama City LLC owned by Tarragon Dev. LLC. shall be transferred to Investment Assets. |
| Links at Georgetown | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Heather Hill | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Vintage at the Park | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to |

| | |
|---|---|
| | Investment Assets. |
| Vintage at Legacy Lakes | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Tradition at Palm Aire | The 100% Equity Interest in Tradition Tarragon, LLC owned by Tarragon Corp. shall be transferred to Investment Assets. |
| Vintage at the Grove/Bentley | The 100% Equity Interest in Manchester Tolland Development LLC owned by Tarragon Corp. shall be transferred to Investment Assets. |
| Gull Harbor | The 89.44% Equity Interest in Ansonia Apartments, LP owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Cobblestone at Eagle Harbor | The 100% Equity Interest in Vineyard at Eagle Harbor LLC owned by Tarragon Dev. LLC shall be transferred to Investment Assets. |
| Woodcreek | The 100% Equity Interest in Woodcreek National, LC owned by Tarragon Corp. shall be transferred to Investment Assets. |
| Mustang Creek | Tarragon Corp. shall cause Tarragon Limited, Inc. to transfer its 99% Equity Interest in Mustang Creek National, LP to Investment Assets.<br><br>The 100% Equity Interest in Mustang National, Inc. (the 1% General Partner of Mustang Creek National, LP) owned by Tarragon Corp. shall be transferred to Investment Assets. |
| Aventerra Apartment Homes | Tarragon Corp. shall cause Vinland Property Investors, Inc. to transfer its 100% Equity Interest in Vinland Aspentree, Inc. to Investment Assets. |
| Summit on the Lake | The 100% Equity Interest in National Income Realty Investors, Inc. (the 1% General Partner of Summit on the Lake Associates, Ltd.) owned by Tarragon Corp. shall be transferred to Investment Assets.<br><br>The 99% Equity Interest in Summit on the Lake Associates, Ltd. owned by Tarragon Corp. shall be transferred to Investment Assets. |

| Southern Elms | The 100% Equity Interest in Mustang National, Inc. (the 1% General Partner of So. Elms National Associates, Limited Partnership) owned by Tarragon Corp. shall be transferred to Investment Assets.<br><br>The 99% Equity Interest in So. Elms National Associates, Limited Partnership owned by Tarragon Corp. shall be transferred to Investment Assets. |
| --- | --- |
| Tarragon Management, Inc. | The 100% Equity Interest in TMI owned by Tarragon Corp. shall be transferred to Investment Assets. |

## Exhibit C

Liquidation Portfolio

| Project Name | Transferred Equity Interest |
|---|---|
| 390 Capitol Avenue | The 100% Equity Interest in Capital Ave. Tarragon, LLC owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| East Haven (Mariner's Point) | The 100% Equity Interest in Mariner's Point Tarragon, LLC owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| Stratford | The 99% Equity Interest in Merritt Stratford, LLC owned by Stratford shall be transferred to Liquidation Assets.<br><br>The 1% Equity Interest in Merritt Stratford, LLC owned by MSCP shall be transferred to Liquidation Assets. |
| The Exchange | The 100% Equity Interested in Exchange Tarragon, LLC owned by Tarragon South shall be transferred to Liquidation Assets. |
| The Green at East Hanover | The 100% Equity Interest in East Hanover Tarragon, LLC owned by Hanover shall be transferred to Liquidation Assets. |
| Central Square | The 100% Equity Interest in Central Square owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| Las Olas River House | Tarragon Corp. shall cause River House Tarragon, LLC to transfer its 99% Equity Interest in Las Olas to Liquidation Assets.<br><br>The 100% Equity Interest in Omni (the 1% General Partner of Las Olas) owned by Tarragon South shall be transferred to Liquidation Assets. |
| Orchid Grove | Tarragon South shall cause Tarragon Cypress Grove, LLC to transfer its 50% Equity Interest in Orchid Grove, LLC to Liquidation Assets. |
| Bermuda Island | The 100% Equity Interest in Bermuda Island owned by Tarragon Corp. shall be transferred to Liquidation Assets. |

| | |
|---|---|
| Orlando Central Park | The 100% Equity Interest in Orlando Central owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| Block 88 | The 40% Equity Interest in Block 88 owned by Tarragon Corp. shall be transferred to Liquidation Assets.<br><br>The 30% Equity Interest in Block 88 owned by Tarragon Dev. Corp. shall be transferred to Liquidation Assets. |
| Mohegan Hill | Tarragon Corp. shall cause Mohegan Hill Tarragon LLC to transfer its 60% Equity Interest in Mohegan Hill Development, LLC to Liquidation Assets. |
| Trio East | Tarragon Dev. Corp. shall cause Palisades Park East Tarragon, LLC to transfer its 100% Equity Interest in Trio East to Liquidation Assets. |
| Keane Horse Farm | The 50% Equity Interest in Keane Stud Management, LLC owned by Tarragon Corp. shall be transferred to Liquidation Assets.<br><br>The 50% Equity Interest in Keane Stud, LLC owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| 20 North Water Street | The 100% Equity Interest in North Water Street Tarragon, LLC owned by Tarragon Dev. Corp. shall be transferred to Liquidation Assets. |
| Alta Mar (Marina) | The 100% Equity Interest in AltaMar Development, LLC owned by Tarragon Corp. shall be transferred to Liquidation Assets. |
| Mirabella | The 100% Equity Interest in Omni-Tivoli, LLC owned by Tarragon South shall be transferred to Liquidation Assets. |
| One Hudson Park | The 100% Equity Interest in Tarragon Edgewater owned by Tarragon Dev. Corp. shall be transferred to Liquidation Assets. |
| Uptown Village I & II | The 100% Equity Interest in Uptown Village Tarragon A, LLC owned by Tarragon South shall be transferred to Liquidation Assets.<br><br>The 100% Equity Interest in Uptown Village Tarragon B, LLC owned by Tarragon South shall be transferred to Liquidation Assets. |

| Block 144 – Norman Singer | The 62.5% Equity Interest in Block 144 Development, LLC owned by Tarragon Dev. Corp. shall be transferred to Liquidation Assets. |
| --- | --- |

## __Schedule 5.1(A)(1)__

Executory Contracts

[To be submitted.]

## Schedule 5.1(A)(2)

Unexpired Leases

[To be submitted.]