**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Attorneys for Tarragon Corporation, *et al.*,
Debtors-in-Possession

|  |  |
|---|---|
|  | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE DONALD H. STECKROTH CASE NO. 09-10555 (DHS) |
| In re: | Chapter 11 (Jointly Administered) |
| TARRAGON CORPORATION, *et al.* |  |
| Debtors-in-Possession. | **DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION** |
|  | **HEARING DATE AND TIME:** May 11, 2010 at 2:00 p.m. |

TO:   Honorable Donald H. Steckroth
       United States Bankruptcy Judge

Tarragon Corporation, *et al.* (collectively, the "Debtors"),[1] the within debtors and

debtors-in-possession in the above-captioned jointly administered cases, by and through their

---

[1] The Debtors are Tarragon Corporation ("Tarragon Corp."), Tarragon Development Corporation, Tarragon South Development Corp., Tarragon Development Company LLC, Tarragon Management, Inc., Bermuda Island Tarragon LLC, Orion Towers Tarragon, LLP ("Orion"), Orlando Central Park Tarragon L.L.C., Fenwick Plantation Tarragon LLC, One Las Olas, Ltd., The Park Development West LLC, 800 Madison Street Urban Renewal, LLC, 900 Monroe Development LLC, Block 88 Development, LLC, Central Square Tarragon LLC, Charleston Tarragon Manager, LLC, Omni Equities Corporation, Tarragon Edgewater Associates, LLC, The Park Development East LLC, Vista Lakes Tarragon, LLC, Murfreesboro Gateway Properties, LLC, Tarragon Stonecrest, LLC, MSCP, Inc., Tarragon Stratford, Inc. and TDC Hanover Holdings LLC.

counsel, Cole, Schotz, Meisel, Forman & Leonard, P.A., hereby reply to the objections to the Debtors' First Amended and Restated Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Debtors' Joint Plan of Reorganization , and state as follows:[2]

## I. INTRODUCTION

1. In the past 8 months since they filed their initial plan of reorganization, the Debtors have worked cooperatively with the Official Committee of Unsecured Creditors (the "Committee") and other material stakeholders to propose a modified plan of reorganization that presents the most advantageous outcome for all the Debtors' creditors. Toward that end, the Debtors have entered into an agreement with UTA Capital LLC ("UTA") pursuant to which UTA will provide exit financing for a plan of reorganization on terms more favorable than those previously negotiated with ARKOMD LLC ("ARKOMD"). That agreement is embodied in a First Amended and Restated Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Amended Plan") and accompanying First Amended and Restated Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Debtors' Chapter 11 Plan of Reorganization (the "Amended Disclosure Statement"), both of which were filed with the Court on April 21, 2010.

2. The Amended Disclosure Statement contains more than adequate disclosure within the meaning of Section 1125 of the Bankruptcy Code, enabling holders of impaired claims or interests to vote on the Plan on a fully-informed basis. The Debtors have provided detailed disclosure about their Plan and the history and operations of the Debtors in the Amended Disclosure Statement. Despite the thousands of parties-in-interest participating in and/or affected by these cases, the Debtors received only five objections to their initial Disclosure

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed them in the applicable Objection or the Second Amended Disclosure Statement (as defined herein).

2

Statement, all but two of which have been withdrawn.[3] The remaining objections were filed by the Lead Plaintiff and Class in the Consolidated Securities Class Action captioned *In re: Tarragon Corporation, Securities Litigation,* Case No. 07-CIV-7972 (PKC) (S.D.N.Y.) (the "Securities Objection") and Frederick Welling and Judson Welling (the "Wellings") (the "First Welling Objection").  In connection with the Amended Disclosure Statement, the Debtors are in receipt of an objection from Ursa Development Group, LLC (the "Ursa Objection"), as well as a second objection from the Wellings (the "Second Welling Objection", which together with the Securities Objection, First Welling Objection and Ursa Objection are collectively referred to as the "Objections").[4]

3.    The Debtors believe all the issues raised in the Objections have either been (a) resolved by the inclusion of additional information in the Amended Disclosure Statement and/or (b) are without merit or otherwise raise issues relevant solely to plan confirmation and should be overruled.  Attached hereto as **Exhibit A** is a chart of the specific disclosure-related arguments raised in each of the Objections and the Debtors' responses thereto.

4.    The Debtors also have received certain informal objections and comments to the Amended Plan and Amended Disclosure Statement.  The Debtors have incorporated those comments in a further amended plan and disclosure statement, thereby avoiding additional objections.  Attached hereto as **Exhibit B** and **Exhibit C**, respectively, are the Second Amended

---

[3]    The Limited Objection filed by A.J.D. Construction Company (Doc. 984) has been withdrawn (Doc. No. 1195). The Objection (Doc. No. 986), and Cross-Motion and Limited Objection (Doc. No. 1019) filed on behalf of Bordeaux Condominium Association, Inc., The Hamptons at MetroWest Condominium Association, Inc., a Florida Non-Profit Corporation, Waterstreet at Celebration, Condominium Association, Inc., a Florida Non-Profit Corporation have been withdrawn (Doc. No. 1275). The Limited Objection (Doc. No. 983) filed on behalf of Las Olas Riverhouse Condominium Association has been withdrawn (Doc. No. 1676).  The Objection by filed Regions Bank (Doc. No. 1021) has been withdrawn (Doc. No. 1717).

[4] The Ursa Objection is captioned as a "Statement of Position with Respect to Disclosure Statement", but is essentially an objection to the approval of the Amended Disclosure Statement.

and Restated Disclosure Statement (the "Second Amended Disclosure Statement") and Second Amended and Restated Joint Plan of Reorganization (the "Second Amended Plan").[5]

5. Accordingly, the Debtors believe that the Amended Disclosure Statement provides adequate information for purposes of Section 1125 of the Bankruptcy Code and should be approved.

## II. BACKGROUND

6. On January 12, 2009, January 13, 2009 and February 5, 2009 (as applicable to each Debtor, the "Filing Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  Since the Filing Date, the Debtors have remained in possession of their assets and continued management of their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7. On February 4, 2009, the Office of the United States Trustee for the District of New Jersey appointed a Committee.  Since its appointment and retention of advisors, the Committee has been actively involved in all facets of the Debtors' Chapter 11 cases.

8. A detailed description of the Debtors' businesses and facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Affidavit and Supplemental Affidavit of William S. Friedman (collectively, the "Friedman Affidavit") submitted in support of the Debtors' various "First Day Motions" [Docket Nos. 23 and 33].  Those facts are incorporated herein by reference.

9. As set forth in the Friedman Affidavit, Tarragon Corp. and its direct and indirect, debtor and non-debtor affiliates (collectively, "Tarragon") are real estate developers, owners and

---

[5] The Second Amended Disclosure Statement and Second Amended Plan, together with any further disclosures required by the Court, will be filed upon the Court's approval of the adequacy of the Second Amended Disclosure Statement.

4

38590/0031-5967234v2

managers.  Tarragon operates two (2) business divisions, a real estate development division (the "Development Division") and an investment division (the "Investment Division").  The Development Division focuses on developing, renovating, building and marketing homes in high-density, urban locations and in master-planned communities.  The Investment Division owns and operates a portfolio of stabilized rental apartment communities.

10. Since the Filing Date, the Debtors have devoted substantial time critically examining their business operations and funding requirements to identify the most efficient and comprehensive options for emerging from Chapter 11 and maximizing value for stakeholders.  The Debtors continued to explore all strategic alternatives including evaluating a possible sale or other restructuring or recapitalization, or combinations thereof.  In that regard, the Debtors engaged Lazard Freres & Co. LLC to evaluate those alternatives and to actively to market the Debtors to potential investors or purchasers.

A. **Negotiations with ARKOMD LLC and Westminster Residential Acquisition LLC**

11. On August 3, 2009, the Debtors filed a Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for the Debtors' Chapter 11 Plan of Reorganization and a proposed Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Proposed Plan").  ARKOMD was to serve as the sponsor of the Proposed Plan.  A hearing on the adequacy of the initial Disclosure Statement was originally scheduled for September 10, 2009.  That hearing, however, was adjourned on several occasions to enable the Debtors, the Committee and other substantial stakeholders additional time to engage in discussions regarding the terms of a consensual plan of reorganization.

12. As the Debtors were negotiating the terms of a plan with ARKOMD, the Debtors, through the Committee, received an expression of interest from Westminster Residential Acquisition LLC ("Westminster Residential") to act as the plan sponsor.  After extensive and

5

vigorous multi-party negotiations among the Debtors, the Committee, the potential sponsors and other interested parties, and after evaluating the proposals from ARKOMD and Westminster Residential, the Debtors determined it was in the best interests of their estates to enter into an agreement with Westminster Residential pursuant to which Westminster Residential would act as the plan sponsor.

13. On October 22, 2009, the Debtors, Committee and Westminster Residential, among others, entered into a term sheet, which sets forth the terms pursuant to which Westminster Residential would sponsor a plan of reorganization that would have the support of all major constituents in these Chapter 11 cases (the "Westminster Term Sheet"). After a series of negotiations, however, the Debtors and the Committee could not reach an agreement with Westminster Residential on a restructuring consistent with that contemplated by the Westminster Term Sheet and negotiations ceased.

14. Thereafter, the Debtors recommenced negotiations with ARKOMD regarding the terms pursuant to which ARKOMD would sponsor a plan of reorganization. During those negotiations, however, an agreement was reached among ARKOMD and Westminster Residential pursuant to which ARKOMD would acquire fifty percent (50%) of the equity in Westminster Residential. The Debtors resumed negotiations with ARKOMD with respect to the terms of a term sheet pursuant to which Westminster (then co-owned by ARKOMD) would act as the sponsor. Those negotiations, however, did not consummate in an agreement.

**B.     The Debtors' Negotiations with UTA Capital LLC**

15. The Debtors then approached UTA regarding the terms pursuant to which UTA would sponsor a plan of reorganization. On March 5, 2010, the Debtor, the Committee, Ansonia LLC (the Debtors' partner in Ansonia Apartments, L.P.), Taberna Capital Management LLC (the largest unsecured creditor of Tarragon Corp.), UTA, Beachwold Partners, L.P., Tarragon Corp.,

6

Robert Rothenberg and William F. Friedman entered into a term sheet, which set forth the terms pursuant to which UTA would provide exit financing for a plan of reorganization that would have the support of all major constituents in the Chapter 11 cases. The term sheet subsequently was amended on March 24, 2010. Those terms have been memorialized in definitive documents negotiated among the parties, including a debtor-in-possession credit agreement that was approved by the Court on a final basis on April 15, 2010.

16. On April 21, 2010, the Debtors filed the Amended Plan and Amended Disclosure Statement. The Amended Plan is the product of extensive negotiations among the Debtors, the Committee and other material stakeholders.

### III. THE COURT SHOULD OVERRULE THE OBJECTIONS

17. As set forth on Exhibit A, the Debtors have addressed most of the Objections (including the First Wellings Objection) by the inclusion of additional information in the Amended Disclosure Statement (and Second Amended Disclosure Statement). The Securities Objection relating to the validity of the third party releases in the Amended Plan, which objection is properly reserved for confirmation, remains outstanding and is addressed below.

18. The Second Wellings Objection seeks "additional" disclosure on various items in the Amended Disclosure Statement. As set forth below, however, those objections are without merit and should be overruled.

**A.    The Securities Objection Relating to Third Party Releases Should Be Overruled**

19. The Securities Objection prematurely and improperly addresses the validity of the third party releases.[6] The Debtors submit that issue should be determined at confirmation on the

---

[6] As set forth on Exhibit A, all other points raised in the Securities Objection have been adequately addressed.

7

38590/0031-5967234v2

basis of an appropriate record, and upon facts and circumstances developed up to and including the hearing on the confirmation of the Amended Plan.

20. In In re Waterville Timeshare Group, 67 B.R. 412 (Bankr. D.N.H. 1986), the bankruptcy court specifically addressed issues relating to a premature adjudication of the confirmability of a plan of reorganization at a disclosure statement hearing. The court observed that:

> [a]pproval of a disclosure statement is an interlocutory action in the progress of a chapter 11 reorganization effort leading to a confirmation hearing at which all parties have ample opportunity to objection to confirmation of the plan.

Id. at 413 (cf. In re Worldcom, Inc., 2003 WL 21498904, *2 (S.D.N.Y. 2003)); In re Matter of Texas Extrusion Corp., 844 F.2d 1142, 1155 (5th Cir. 1988)).

21. The hearing on the adequacy of a disclosure statement should not be seized upon by parties-in-interest to address the confirmability of a Chapter 11 plan. As one court stated, "[i]f the creditors oppose their treatment in the plan, but the Disclosure Statement contains adequate information, issues respecting the plan's confirmability will await the hearing on confirmation." In re Scioto Valley Mortgage Co., 88 B.R. 168, 172 (Bankr. S.D. Ohio 1988); see also In re Featherworks Corp., 45 B.R. 455, 457 (Bankr. E.D.N.Y. 1984) (stating that a disclosure statement hearing is too early to conclude that a plan cannot be confirmed).

22. Courts generally refuse to approve a disclosure statement only when the proposed plan of reorganization is patently or facially unconfirmable. In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001) (holding that "a disclosure statement should be disapproved at the threshold only where the plan it describes displays fatal facial deficiencies or the stark absence of good faith"). But relief of that nature must be tempered. See In re U.S. Brass Corp., 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996) (disapproval of adequacy of disclosure statement is discretionary and must be used carefully so as not to convert disclosure statement hearing into

8

confirmation hearing and to insure due process concerns are protected); <u>In re Cardinal Congregate I</u>, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) ("Where objections relating to confirmability of a plan of reorganization raise novel or unsettled issues of law, the Court will not look behind the disclosure statement to decide such issues at the hearing on the adequacy of the disclosure statement."); <u>In re Dakota Rail, Inc.</u>, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) ("Only where the disclosure statement *on its face* relates to a plan that cannot be confirmed does the court have an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan; otherwise, confirmation issues are left for later consideration."); <u>In re Copy Crafters Quickprint, Inc.</u>, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("care must be taken to ensure that the hearing on the disclosure statement does not turn into a confirmation hearing, due process considerations are protected and objections are restricted to those defects that could not be cured by voting").

23. The alleged impermissible releases to non-Debtor parties hardly makes the Plan unconfirmable on its face. Even if the Securities Objection is correct (which the Debtors do not concede), that issue should not be addressed at the Disclosure Statement hearing because due process considerations entitle the Debtors and all creditors to be heard on the merits of the issue. The appropriate time for addressing such issue is at the Confirmation Hearing. The Debtors, however, do not believe the claims raised in the securities litigation have <u>any</u> merit whatsoever. In fact, while the claims as to the Debtors have been stayed since the Filing Date, the litigation was dismissed as to all non-debtor parties. Based on the posture of that litigation, the Debtors do not believe that the plaintiffs will be prejudiced by the release provisions proposed by the plan because their claims have no merit. In any event, the propriety of the non-Debtor releases is an issue this Court should address in connection with confirmation.

9

**B.    The Second Welling Objection Should Be Overruled**

24.     The Second Welling Objection similarly is without merit and should be overruled. The Second Welling Objection primarily argues that the Amended Disclosure Statement makes no reference to the anticipated disposition of the Orion property or the proposed treatment of or distribution to its creditors. The Wellings apparently have not carefully read the Amended Disclosure Statement, as it details the exact information they allege is missing.

25.     Section V.7.a of the Amended Disclosure Statement entitled "Liquidation of Assets" clearly provides that Reorganized Tarragon will have the primary responsibility for the liquidation, subject to the approval of the Tarragon Creditor Entity (which approval shall not be unreasonably withheld). Moreover, the officers of Reorganized Tarragon are specifically identified in the Amended Disclosure Statement to be William S. Friedman and Robert Rothenberg.

26.     In their objection, the Wellings also ignore Exhibits D and E to the Amended Disclosure Statement. Those exhibits provide the Debtors' cash flow projections and estimated recovery to creditors. In particular, those exhibits illustrate that the Debtors anticipate selling the Orion property in 2011 for approximately $9,690,000. After payment of a $7,690,000 secured claim to Bank of America, N.A. and $145,000 for windown and other administrative claims, the Debtors project on Exhibit E that $1,855,000 will be available to satisfy claims of unsecured creditors and those unsecured creditors will receive a 4.4% dividend. The Debtors assert that Exhibits D and E provide adequate information as to the timing and extent of recovery that creditors of Orion will receive.

27.     The Debtors respond to the other issues raised in the Second Wellings Objection as follows:

> (a)     **The Disclosure Statement at paragraph 7(a) on page 74 makes reference to "certain of its Affiliates" without disclosing**

**which Affiliates are the "certain" Affiliates.** The "Affiliates" that are referenced in that section are those Debtor and non-Debtor affiliates of Tarragon Corp. whose assets are not being transferred to New Ansonia under the terms of the plan. The assets being transferred to New Ansonia are clearly identified on Exhibit G of the Amended Disclosure Statement. The Wellings are only concerned with the Orion property, and it is clear from Exhibits D and E to the Amended Disclosure Statement that property will be liquidated in accordance with the plan. That fact is evident in the Amended Disclosure Statement and no further disclosure is required.

(b)     **The Disclosure Statement at paragraph 7(a) on page 74 makes reference to "certain Liquidation Assets listed on Exhibit B" without disclosing adequate information as to which of its Assets are the "certain" Assets referred to by the Debtors.** This objection relates to the schedule of estimated minimum net liquidation proceeds. That schedule is relevant only in that it contains trigger points for UTA Capital LLC ("UTA"), the exit-lender, to have consent rights to sales. UTA wanted to be assured Reorganized Tarragon would not sell any of its collateral at unreasonably low prices and, accordingly, bargained for a minimum net proceeds schedule that Reorganized Tarragon needs to achieve, below which it cannot sell without UTA's consent. That protective feature for UTA already has been approved by the Court in the final DIP financing order entered on April 15, 2010. The Debtors will not make that schedule public because doing so would adversely affect Reorganized Tarragon's ability to sell for the highest possible price for the benefit of all creditors. That issue, however, is completely irrelevant to creditors. The Debtors project much higher proceeds that those scheduled minimum amounts, and those anticipated net proceeds (for all Debtor assets, including Orion) are set forth in the cash flows attached as Exhibit D to the Amended Disclosure Statement.

(c)     **The Disclosure Statement at paragraph F on page 85 and the Plan at paragraph (B) on page 99, make reference to real properties that may be abandoned or surrendered without the Disclosure Statement disclosing adequate information as to which real properties Debtors refer.** The Debtors' plan is premised, in part, on the liquidation of material assets including the Orion property. The Debtors have no present intention to abandon the Orion property, as is evident by their projection of material net proceeds from Orion's assets on Exhibits D and E to the Amended Disclosure Statement. This objection represents the Wellings' lack of understanding of the Debtors' plan, rather than a need for additional disclosure.

11

(d) **The Disclosure Statement at paragraph 2 on page 104 makes reference to Executory Contracts "which are set forth in Schedule 5(F) of the Disclosure" without identifying the Executory Contracts, and there is no Schedule 5(F) attached to the Disclosure Statement.** Schedule 5(F) provides that it will be filed with the Plan Supplement, which will be filed no later than five (5) days before the voting deadline. The Court should be aware that the only executory contract that the Debtors listed in the Orion case is a settlement agreement with the Wellings. Section 5.1(E) of the Amended Plan contains a procedure for dealing with cure claims, if any. Additionally, Section 5.1(F) of the Amended Plan contains a procedure for filing a claim for a rejected executory contract. The Debtors submit that process is fair and protects the interests of counter-parties to executory contracts.

(e) **The Disclosure Statement at paragraph 9 on page 113 makes reference to a Plan Supplement without providing any information as to the contents of the Plan Supplement and without attaching a copy of the Plan Supplement to the Disclosure Statement. The Plan Supplement does not appear to have been filed with the Court as of this date.** Section 12.12 of the Amended Disclosure Statement provides that the Plan Supplement will include all material agreements or documents to the plan, to the extent not already filed with the Court. Additionally, the Amended Disclosure Statement provides that the Tarragon Creditor Entity Operating Agreement, the Jupiter Management Agreement and Schedule 5 shall be included in the Plan Supplement. Section 12.12 further provides that the Plan Supplement will be filed no later than five (5) days before the voting deadline. The Debtors submit such disclosure is adequate.

(f) **The Disclosure Statement at the sixth unnumbered paragraph on page 85 makes reference to "documents and information relating to the Plan and related matters" without disclosing adequate information as to which documents and information relating to the Plan and related matters Debtors refer.** The Debtors are unclear as to what paragraph the Wellings are referring.

(g) **The Plan at paragraph 5.1 on page 78 makes reference to Executory Contract and unexpired leases "which are set forth on Schedule 5 hereto" without the Disclosure Statement disclosing information as to what Schedule 5 states (i.e. which executory contracts and unexpired leases are included) and without attaching Schedule 5 to the Plan or Disclosure Statement.** As set forth above, Schedule 5 will be included in the Plan Supplement to be filed with the Court at least five (5) days before the voting deadline.

12

    (h)    **The proposed Plan at paragraph (E)(1) on page 88 makes reference to "certain of its Affiliates" without the Disclosure Statement disclosing adequate information as to which of its Affiliates are the "certain" Affiliates referred to by the Debtors.** The "Affiliates" that are referenced in that section are those Debtor and non-Debtor affiliates of Tarragon Corp. whose assets are not being transferred to New Ansonia under the terms of the plan. The assets being transferred to New Ansonia are clearly identified on Exhibit G of the Amended Disclosure Statement. The Wellings are only concerned with the Orion property, and it is clear from Exhibits D and E to the Amended Disclosure Statement that property will be liquidated in accordance with the plan. That fact is evident in the Amended Disclosure Statement and no further disclosure is required.

    (i)    **The Plan at paragraph 3 on page 90 makes reference to distributions from the sale of Liquidation Assets without the Disclosure Statement disclosing adequate information as to within what timeframe such Liquidation Assets must be sold.** The Debtors' cash flow projections attached at Exhibit D to the Amended Disclosure Statement clearly provide the timeframe in which the Liquidation Assets will be sold.

28.    Based on the foregoing, the Debtors request that the Court approve the adequacy of the Amended Disclosure Statement so that the Debtors may proceed to solicit acceptances to the Amended Plan pursuant to the requirements of the Bankruptcy Code and the governing Bankruptcy Rules.

    Respectfully submitted,

    COLE, SCHOTZ, MEISEL,
    FORMAN & LEONARD, P.A.
    Attorneys for Tarragon Corporation, *et al.*,
    Debtors-in-Possession

    By:   */s / Warren A. Usatine*
        Michael D. Sirota
        Warren A. Usatine

DATED: May 10, 2010