STERN, LAVINTHAL, FRANKENBERG & NORGAARD, LLC
184 Grand Avenue
Englewood, New Jersey 07631
Telephone No. (201) 871-1333
Fax No. (201) 871-3161
Counsel to Joel S. Greene and
Montville Holdings V, LLC

By:  Gary K. Norgaard, Esq.
       GN - 9243

---

|                          | :   | UNITED STATES BANKRUPTCY COURT |
| In re:                   |     | FOR THE DISTRICT OF NEW JERSEY |
|                          | :   | NEWARK VICINAGE |
| TARRAGON CORPORATION,    |     | |
| *et al.*                 | :   | Chapter 11 |
|                          |     | |
| Debtors-in-Possession    | :   | Lead Case No. 09-10555 DHS |
|                          |     | (Jointly Administered) |

**OBJECTION OF JOEL S. GREENE AND MONTVILLE HOLDINGS, V, LLC
TO CONFIRMATION OF SECOND AMENDED AND RESTATED JOINT PLAN
OF REORGANIZATION PROPOSED BY TARRAGON CORPORATION
AND ITS AFFILIATED DEBTORS**

Joel S. Greene and Montville Holdings V, LLC,
("Creditors") make the following Objections to Confirmation
of the Second Amended and Restated Joint Plan of
Reorganization (the "Proposed Plan" or the "Plan") proposed
by Tarragon Corporation and its Affiliated Debtors
("Debtors").

**BACKGROUND**

1.   Despite the volume of the Proposed Plan the and
accompanying Disclosure Statement, the Debtors offer little
information as to how the treatment of the holders of
claims or interests might actually benefit from the

Page **1** of 31

Proposed Plan, what distributions they might expect, how assets of the estate and assets not of the estate will disposed of or how the Proposed Plan will be administered. Instead, the Debtors propose a needlessly complex structure composed of a patchwork of disjunctive documents calling for the creation of at least four new post-confirmation entities, each of which purport to serve the simple objective of liquidating the assets of the Debtors. But as one burns through the haze of the Debtors' elaborate and confusing proposal, there emerges a plan that seeks to impermissibly expand the protection of the Bankruptcy Code to non-debtor third parties, and to prohibit creditors from litigating actions against non-debtors - including the subsidiaries, non-filing affiliates, officers and other insiders of the Debtors in complete derogation of fundamental concepts of due process and by an unwarranted and unsustainable intrusion into the sovereign jurisdiction of the Connecticut state courts to decide a fundamental and unique issue of Connecticut real property law concerning non-debtors, on a property that is not an asset of the estate and is within its sovereign borders. Indeed, confirmation of the Proposed Plan leaves the Creditors with no forum for resolution of the title issues which is a condition precedent to any distribution of property that is

not fungible such as real estate. The Proposed Plan also permits the Debtors' insider principals to acquire valuable equity interests in the post-confirmation entities based o their prior positions, without providing evidence that such acquisitions provide real and measurable benefit the estate's creditors, without any meaningful contribution of "new value" and in direct violation of the absolute Priority Rule of 11 U.S.C. 1129(b)(1).

2.    The Creditors are plaintiffs in a suit pending in the Superior Court of Connecticut against, *inter alia*, the lead debtor Tarragon Corporation and its non-filing subsidiary, Mohegan Hill Tarragon, LLC. Mohegan Hill Tarragon, LLC has not sought relief under any chapter of the Bankruptcy Code, and it is not one of the proponents of the Proposed Plan. It has not submitted itself to the reporting requirement of the US Trustee and has not bound itself to the obligations imposed upon a Debtor in the contemplated exchange of privilege for responsibility.

3.    Generally, in the case pending in the Superior Court of Connecticut[1], the Creditors maintain that Tarragon Corporation, Mohegan Hill Tarragon, LLC and the other defendants named in the action defrauded the Creditors into

---

[1] The case has been stayed due to the filing by Tarragon Corporation and the Connecticut Courts policy of avoiding duplication of effort and the preservation of judicial economy.

releasing their rights in more than 30 separate tracts of land surrounding the Mohegan Sun Casino in Uncasville, Connecticut. Mohegan Hill Development, LLC and/or Montville Properties I, LLC presently hold title to the properties, subject to the Creditors' *lis pendens*. Neither are debtors herein. The Creditors assert a claim to title to the properties and seek a declaratory judgment and imposition of a constructive trust upon the properties. As a result, and in accordance with controlling Connecticut real property law, the duly filed *lis pendens* created (as intended) a cloud on title that can only be resolved through the application of Connecticut's unique laws concerning real property. See Connecticut General Statutes Title 52. Civil actions, Section 52-325 Notice of Lis Pendens and <u>Connecticut v Doehr</u>, 501 US 1 (1991). As the Supreme Court noted in <u>Doehr</u> at page 29,

> Stated differently, Stop and Shop's lis pendens is no mere lien, but it is a claim implicating the plaintiff's ownership interest and standing in this case.

Annexed hereto as **Exhibit A** is a true copy of the Creditors' **Sixth Amended Complaint**. Annexed hereto as **Exhibit B** are true copies of the Creditors' ***Lis Pendens*** covering the properties.

4.   According to the UTA Creditor Agreement attached

at Exhibit H to the Debtors' Second Amended Disclosure Statement, the Debtors maintain that the non-debtor Mohegan Hill Tarragon, LLC owns a 60% interest in the non-debtor Mohegan Hill Development, LLC.   According to the same exhibit and the Organization Chart attached as Exhibit C to the Disclosure Statement, the Debtors maintain that the Debtor Tarragon Corporation owns 100% of the non-debtor Mohegan Hill Tarragon, LLC.   However, the Proposed Plan does not limit the selling those equity interests that are assets or the estate but goes beyond that to the impermissible conclusion it can sell the assets of those non-debtor entities as though they were assets of the estate, and with the protections and benefits of a sale of assets of the estate, IF they decide to sell the assets through the bankruptcy process.   There is nothing that determines whether the sale is done under Section 363 or "outside" the balanced protections of the Code other than the whim if the proponents despite the fact that the sale will be held out as beyond review.

### THE PROPOSED PLAN CANNOT BE ACCEPTED BY ALL
### IMPAIRED CLASSES OF CLAIMS AND INTERESTS

5.   The lead Debtor Tarragon Corp. is a publicly traded company, with a listing on NASDAQ; the Debtors indicate that as of August 2008, there were over 28 Million

shares of common stock outstanding. *Disclosure Statement,* Sec. II A, p. 7. Under the Proposed Plan, the holders of these interests will receive nothing, and are deemed to have rejected the Plan. *Proposed Plan*, Sec. 4.2(I), p. 39.

6. As the Proposed Plan cannot be accepted by the impaired class of interests, it cannot satisfy the requirements of 11 U.S.C. Sec. 1129(a)(8). The Debtors may only seek confirmation under Sec. 1129(b) as conceded in the Proposed Plan. As discussed below, the Proposed Plan does not comply with many of the requirements of that section.

**THE DEBTORS SEEK TO IMPERMISSABLY EXTEND THE JURISDICTION OF THE BANKRUPTCY COURT OVER THE PROPERTY OF THIRD PARTIES**

7. The Creditors object to confirmation of the Proposed Plan, as it purports to provide post-confirmation entities with authority to sell non-estate real property fraudulently titled entirely in the non-debtor Mohegan Hill Development, LLC, free and clear of the Creditors' claims and encumbrances pursuant to 11 U.S.C. Sec. 363(b) and (f) despite the fact the plain language of the statute and fundamental concepts of due process prohibit it.

8. Neither the Disclosure Statement nor the Proposed Plan specifically states whether or not the Debtors intend to sell the non-debtor subsidiary's title interest in its

real property, which is covered by the Creditors' *lis pendens.* As with much of the Proposed Plan, the reader is left to piece together the various disjunctive provisions and those of other tangential documents such as the Operating Agreements listed in Exhibit A to be assumed in order to get a very foggy picture of what is actually proposed. Those documents do not clarify whether the post-confirmation entities created by the Plan will seek to sell any specific property for any price and don't require there to be any forum nor opportunity to examine the propriety and benefits of the proposed sale.  As the Proposed Plan stands today the proponents can select how and through what mechanism the sale is process which precludes not only resolution of the Creditor's title claims but also does not provide for higher or better offers.  How this can be said to benefit creditors and enhance the estate is inscrutable. But Section 7.1(E) of the Proposed Plan suggests that the post-confirmation entities will exercise such expansive and extraordinary authority.  That section provides:

(E) <u>Liquidation</u>

1    <u>Liquidation of Assets</u>

Following confirmation of the Plan, Reorganized Tarragon and the Tarragon Creditor Entity shall proceed diligently to liquidate the presently owned physical and intangible **assets of Tarragon Corp. and certain of its Affiliates** . . . in

accordance with the terms and conditions of the
Plan.

*Proposed Plan*, Article VII, Sec. 7.1(e), p. 95 (emphasis

supplied).  Thus it appears that the Debtors do not propose

to liquidate merely their shares or memberships in non-

debtor affiliates, but intend to sell the underlying real

property held by non-debtor affiliates - including the real

property that is the subject of the Creditors' encumbrances

and without any resolution of those issues.  Under this

scenario the Code becomes an unwitting accomplice to the

fraud perpetrated upon the Creditors which wrested the

property from the Creditors and which is the subject matter

of a pending suit in Connecticut.  At the least, this Court

should defer to the Connecticut Court for the resolution of

these purely state law title issues before it inadvertently

assists the Defendants in that suit in accomplishing their

goals.  We are not asking this court to try that case, nor

are we suggesting that would be proper, to the contrary we

are asserting that the proper forum for resolution is the

pending State Court action for the reasons set forth is

detail below.

9.   Further, Article XI, paragraph (T) of the

Proposed Plan provides for the retention of this Court's

jurisdiction:

> (T) to issue Orders pursuant to Section 363(b) of
> the Bankruptcy Code; provided, however, that
> Bankruptcy Court approval is not required to
> consummate any sales after confirmation of the
> Plan.

*Proposed Plan*, Article XI, Par (T), p. 130.

When read in connection with section 7.1(e), this section seems to vest in the post-confirmation entities a right to sell real property held by non-debtor affiliates free and clear of encumbrances under 11 U.S.C. Sec. 363(b) and (f).

10. The Creditors object to any provision of the Proposed Plan which authorizes the Debtors, the post-confirmation entities, or any other party to sell real property **that they do not own** free and clear of the Creditors' claims and interests. A Debtor-in-possession may sell only "property of the estate," as defined by 11 U.S.C. Section 541(a), under the authority of 11 U.S.C. Sec. 363(b). The Bankruptcy Code "...simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc., 960 F.2d 366, 372 (3rd Cir. 1992), *quoting* Pearlman v. Reliance Ins. Co., 371 U.S. 132, 135-36 (1962).

11. The Bankruptcy Court must determine that property is "property of the estate" before considering whether to

allow a sale under Sec. 363(b).   In re Rodeo Canon Dev. Corp., 362 F. 3d 603, 606 (9th Cir. 2004); In re Popp, 323 B.R. 260 (9th Cir. BAP 2005).  A Chapter 11 Plan may provide for the sale of only "property of the estate." 11 U.S.C. Sec. 1123(a)(5)(D) & (b)(4).  Property held by non-debtor subsidiaries of a debtor is not property of the estate.  In re Lockings, 308 Fed. Appx. 583 (3rd Cir. 2008)(foreclosure sale of real estate titled in corporation is not prohibited by the automatic stay in bankruptcy case of sole shareholder); Fowler v. Shadel, 400 F. 3rd 1016 (7th Cir. 2005)(assets of corporation do not become property of the estate in case of sole shareholder; shareholder may not claim an exemption in corporate assets); In re Rodio, 257 B.R. 699, 701 (Bkrtcy. D. Conn. 2001)(an individual debtor's membership interest in limited liability company is property of the estate, but property transferred to or acquired by that LLC is not).

12.   Through the Proposed Plan's language permitting sales of property held by the Debtors' non-filing affiliates under 11 U.S.C. Sec. 363(b) (at the sole discretion of the Plan Proponents), it appears that the Debtors seek to employ the Bankruptcy Court in an effort to remove the Creditors' *lis pendens* from the property at issue in the Connecticut State Court suit, and to prevent

the Creditors from seeking the Connecticut Court's determination of their state-law rights in the property. Confirmation of a plan allowing such an expansion of Section 363 would improperly extend the Bankruptcy Court's jurisdiction over the property of non-debtors and over disputes between non-debtors. It will offend the fundamental bankruptcy principle of <u>Butner v. United States</u>, 440 U.S. 48 (1979), which protected the state-law property rights of non-debtor third parties from modification in a Bankruptcy Case. <u>Butner</u> teaches that:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. **Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."** <u>Lewis v. Manufacturers National Bank</u>, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323. The justifications for application of state law are not limited to **ownership interests**; they apply with equal force to security interests, including the interest of a mortgage in rents earned by mortgaged property. (Emphasis added)

<u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).

If this Court confirms the Proposed Plan, The Proponents will argue that the Creditors and the Connecticut court will be bound by its terms. Confirmation

of the Proposed Plan's proviso allowing sales of non-debtor subsidiaries' property under Sec. 363(b) it will be argued will grant the Debtors the authority to strip the Connecticut Court of jurisdiction over property within its borders, and to seek this Court's resolution of a title dispute over property in which the Debtors assert no interest.  Allowing the DebtorS such power to interfere with the operation of a sovereign state court and to alter the rights of parties due to the "mere happenstance" of bankruptcy would be manifestly unjust and improper, as absolutely no federal interest would be served.  Indeed, the Proposed plan would go far to destroy the commercial certainty essential for commerce and order by deviating from the,

> ...uniform treatment of property interests by both state and federal courts within a State..

> And indisputably does not,

> "...reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."

To the contrary, confirmation of the Proposed Plan would serve to promote forum shopping by giving these defendants the ability to avoid the pending action in the Connecticut Court familiar with its unique property laws governing this property within its sovereign borders and

the case history and background and substitute this Court
under the rubric of a claims motion after a sale that is a
*fete accompli* before the issue is ever properly examined
with the essential due process both procedural and
substantive. This is not what <u>Butner</u> intends. And the way
the Proposed Plan's sale provisions are structured, based
on its terms and the tangential documents incorporated such
as the aforementioned Operating Agreements and the
expansive "First Day" Sales order obtained within days of
the initial filing on January 12, 2009 and meaningful due
process for these Creditors is lost. With this opportunity
any litigant such as these would opt for the windfall
presented by this Plan and the opportunity to forum shop,
or chose no forum at all, at their unfettered whim.

13. It is important to note that <u>In re New Jersey</u>
<u>Affordable Homes Corp.</u>, 2006 WL 2128624 (Bkrtcy. D.N.J.)
does not support the Plan's provisions granting the post-
confirmation entities authority to seek this Court's
determination of the Creditors' rights in the property of
non-debtors. In <u>New Jersey Affordable Homes</u>, this Court
approved a Trustee's application for authority to sell real
property free and clear of third-parties' asserted title
interests in property. In reaching its holding, the Court
stressed the unusual nature of that bankruptcy proceeding,

the underlying District Court Orders relating to the suit
commenced by the Securities and Exchange Commission (the
"SEC") and the fraudulent investment scheme at the heart of
the operations of the debtors, non-debtor affiliates and
insiders, stating:

> At the outset, it must be acknowledged that **this
> is not the typical bankruptcy case.** Rather, as
> the **District Court** realized and this Court has
> recognized, the Trustee and *all* interested
> parties are faced with a tragic situation of
> unusual proportions. The fraudulent conduct
> committed by Puff and NJAH can only result in
> deleterious ramifications for all parties
> involved. As the **District Court's orders make
> clear the Receiver (and now the Trustee) was
> appointed to unravel the fraud, liquidate assets
> and pursue claims for the benefit of all
> creditors of this bankruptcy estate.** Moreover,
> this Court must be mindful of the specific
> directive given by the **District Court** in both the
> Amended Preliminary Order and the Order
> Continuing Injunctive Relief; **namely, for the
> Receiver (and now the Trustee) to implement an
> expedited sales process to liquidate the real
> property and related assets of NJAH, its
> corporate affiliates, '*and any person or entity
> who holds title to real property acquired through
> investments and/or the purchase of securities.*'**

NJ Affordable Home, 2006 WL 2128624 at Pages 7- 8 (Emphasis
in original, bold emphasis added).

    14.  In NJ Affordable Homes, this Court acknowledged
that the Section 541 definition of property of the estate
is generally given a broad application, citing Westmoreland
Human Opportunities, Inc. v. Walsh, 246 F. 3d 233, 241 (3rd

Cir. 2001) (additional citations omitted).  However, this
Court's extension of this definition to include property
not titled in the name of the debtor or its affiliates was
directly linked to the unique circumstances of the debtors'
fraudulent investment activities.  The Court noted that:

> The Court agrees with the Trustee's conclusions
> **that based upon the unique facts and
> circumstances of the fraud perpetrated by NJAH
> and Puff**, the mere fact that title to a property
> is in the name of an investor does not mean that
> NJAH does not have an equitable interest in the
> property, however speculative that interest may
> be. (Emphasis added)
>
> <u>New Jersey Affordable Homes, Corp.</u>, 2006 Westlaw

2128624 at Page 8

This Court concluded that the third parties'
acquisition of the properties was an integral part of the
debtor's fraudulent Ponzi scheme, and determined that the
Debtors held <u>equitable title</u> to those properties.  But in
the case at bar, the Debtors do not assert that they hold
equitable title or any other interest in the real property
of their non-debtor subsidiaries.  They concede that they
hold no interest in the property - legal, equitable or
otherwise. Under the facts of this matter and as set forth
in the Connecticut Complaint (Exhibit A) it is clear that
the Creditors not the non-debtor affiliates have a claim to
equitable title.

15.   The Proposed Plan improperly seeks to grant the post-confirmation entities the ability to seek the Bankruptcy court's intrusion into a dispute involving purely state-law claims to real property within the sovereign borders of Connecticut, in which the Debtors assert no interest whatsoever and wherein a litigation as to those unique rights has been pending for years prior to the Title 11 filing of one Defendant. This is contrary to the requirements of 11 U.S.C. Sec. 363(b), 11 U.S.C. Sec. 1123 and 28 U.S.C. Sec. 1334 and does violence to the delicately crafted balance of debtor and creditor rights as well as the principles of commercial certainty and consistency as required by the Butner principles and the requirement for order.   Thus, the Creditors respectfully submit that this Court should deny confirmation of the Proposed Plan under 11 U.S.C. Sec. 1129(a)(1).

**THE DEBTORS SEEK TO FORCE THE CREDITORS TO RELEASE CLAIMS AGAINST THIRD PARTIES AND TO ENJOIN CREDITORS FROM TAKING ACTION AGAINST THIRD PARTIES**

16.   The Creditors also object to the breadth of the "Mutual Releases" provided at Section 10.5(C) of the Proposed Plan, and maintain that the Plan's inclusion of this section merits denial of confirmation.   The section provides:

(C)  <u>Mutual Releases</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, **the Debtors**, the Tarragon Creditor Entity, the TCE Trustee, Reorganized Tarragon, New Ansonia, the Creditors' Committee, the members of the Creditors' Committee **and all Holders of Claims** and/or Interests **and each of their respective affiliates**, principals, officers, directors, partners, members, attorneys, accountants, financial advisors, advisory affiliates, employees, and agents **(each a "Released Party") shall each conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each other Released Party from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether known or unknown, seen or unforeseen, existing or hereafter arising, in law, equity or otherwise**, that any Released party would have been legally entitled to assert in their own right (whether individually or collectively), **based on or relating to, or in any manner arising from**, in whole or in part, the Debtors, Reorganized Tarragon, New Ansonia, the Creditors' Committee, the members of the Creditors' Committee, the Chapter 11 Case, the Plan, **the purchase, sale or rescission of the purchase or sale of any assets of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim that is treated in the Plan, the business or contractual agreements between any Debtor and any Released Party**, the restructuring of any Claims or Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan and the Disclosure Statement, or any related agreements, instruments, or other documents, upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date. . .

*Proposed Plan*, Article X, Sec. 10.5(C), pp. 125-26

(emphasis supplied).

If the Proposed Plan is confirmed, the plain language of this section will terminate the Creditors' suit against Mohegan Hill Tarragon, LLC and conclusively deny the Creditors any forum to determine their title claims. They will be left with the inadequate rubric of a claims contest as a symbolic substitute for the due process required in the appropriate forum for these issues, the Connecticut state court. It will prohibit the Creditors from prosecuting their claim for a title interest in the property of that non-debtor subsidiary, and from seeking money judgment against that party or virtually any party. Indeed, it will prevent every holder of claims or interests from taking legal action against the Debtors' principals, officers, directors and other insiders and even prevent one creditor from taking actions against other creditors despite their tangential involvement in this matter.

17. This section even requires the Debtors and the post-confirmation entities to release any claims for affirmative recovery that they may assert against holders of claims or interests. In what way does this benefit the creditors of the estate?

18. Regardless of the Debtor's reference to Bankruptcy Code Section 1123(b), the broad releases that the Proposed Plan would provide to the Debtors'

subsidiaries and other third parties are not authorized by the Bankruptcy Code and are offensive to its basic structure. The expansive releases of non-debtors contemplated in the Proposed Plan violates 11 <u>U.S.C.</u> Sec. 524(e) and the Third Circuit's holding in <u>In re Continental Airlines</u>, 203 F. 3d 203 (3rd Cir. 2000). As the Proposed Plan does not comply with applicable provisions of the Bankruptcy Code, it cannot be confirmed under 11 <u>U.S.C.</u> Sec. 1129(a)(1).

19. Another example of the Proposed Plan's attempted improper extension of the Bankruptcy Code's protection to non-debtors appears at section 7.10. That section provides:

> 7.10 <u>Survival of the Debtors' Indemnification Obligations</u>. **Any obligations of the Debtors** pursuant to their corporate charters and bylaws or other organizational documents **to indemnify current and former officers and directors** of the Debtors with respect to all present and future actions, suits and proceedings against the Debtors or such directors and/or officers, **based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan**. To the extent provided in this section, such obligations shall be deemed and treated as executory contracts assumed by the Debtors hereunder and shall continue as obligations of Reorganized Tarragon. Upon the Effective Date, except in the case of gross negligence, willful misconduct or fraud, **the commencement or prosecution by any person or entity, whether directly, indirectly or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights,**

**causes of action or liability subject to indemnification by the Debtors, Reorganized Tarragon or New Ansonia shall be enjoined**.

*Proposed Plan*, Art. VII, Sec. 7.10, pp. 113-14 (emphasis supplied).

This section creates an impermissible, separate, informal class of preferred unsecured claims – the claims for indemnification held by present and former insiders of the Debtors – and provides for unimpaired treatment of those claims. Neither the Disclosure Statement nor the Proposed Plan suggest how many parties hold indemnification claims, or estimate the extent to which the post-confirmation entities will be called upon to pay these claims from the estate's property – which might otherwise be available for payment of dividends to general unsecured creditors. But this section makes it clear that these insiders' unsecured claims will be fully reimbursed under the Proposed Plan, regardless of whether the general unsecured claims held by non-insiders realize any recovery in this case.

20. The Debtors' informal classification of its insiders and their claims violates the provisions of 11 U.S.C. Sec. 1123(a), which mandates that a plan designate all separate classes of claims and specify the impaired or unimpaired status of each class.

21.  Further,  the  Debtors  mischaracterize  the indemnification  claims  of  insiders  as  "executory contracts."  The  Debtors  offer  nothing  to  suggest  that  the continuation  of  prepetition  agreements  with  present  and former  insiders  is  critical  to  the  liquidation  effort,  and offer  no  evidence  demonstrating  that  the  assumption  of  any obligation  to  indemnify  such  an  insider  can  benefit  the estate.  Without  any  benefit  to  the  creditors,  even  if  the court  rejects  the  traditional,  material  breach  test  for "executorines"  espoused  by  Professor  Countryman  in  favor  of the  benefit  to  the  estate  test  set  forth  in  In re Ridizio, 204  B.R.  417  (Bankr.  SDNY  1997)  the  contracts  are  not executory  and  cannot  be  assumed.

22.  The  Creditors  are  most  concerned  with  the injunctive  language  included  in  the  last  sentence  of section  7.10.  The  Debtors  seek  to  enjoin  "any  person  or entity"  from  suing  an  insider  whom  "the  Debtors, Reorganized  Tarragon,  or  New  Ansonia"  might  be  required  to indemnify.  If  such  an  injunction  were  permissible,  the Debtor's  insiders  wouldn't  need  a  plan  to  continue  any indemnification  obligation,  and  the  post-confirmation Debtors  would  never  be  required  to  honor  an  obligation  to indemnify.

23.  The  broad  release  provisions  of  Sec.  10.5  and  the

gratuitous injunction language of Section 7.10 reveal the Debtors' objective to shield their principals and subsidiaries from liability to the creditors in this matter.  The pursuit of such an objective clearly does not serve the legitimate purposes of the Bankruptcy Code. Indeed, the Code prohibits the third party releases and injunctions contemplated in the Proposed Plan, which would permanently terminate present <u>and future</u> claimants from pursuing claims against the debtor's officers, directors, subsidiaries and affiliates, without creating a collateral source for payment of such claims and in direct derogation of their due process rights as enunciated in <u>Mullane v Hanover</u>, 339 US 306 (1950). The Proposed Plan's provisions release future claimants,

> "whether known or unknown, seen or unforeseen, existing or hereafter arising, in law, equity or otherwise."

This is clearly violative of the Code and does not provide for the establishment of a trust or even minimal due process provisions such as notice to potential future claimants or a Future Claims Representative to protect their interests.  See <u>Fairchild Aircraft Corp.</u> (Bankr.W.D.Tex. 1995)[2].

---

[2] Despite being vacated in 1998 the principles established still represent the accurate law as to third party due process for unknown claims.

24.   The rare and special circumstances under which a plan of reorganization may permissibly include an injunction favoring third parties are set forth at 11 U.S.C. Sec. 524(g).   That section prohibits entry of an injunction without "notice and a hearing."   Clearly, that standard of due process is not satisfied by the Proposed Plan, which buries the language that would provide the third party releases and injunctions in the boilerplate paragraphs of a 150 page document and the tangential attachments.   Further, as a condition for entry of an injunction favoring third parties, Sec. 524(g) requires that the plan provide for the creation or a trust benefitting the claimants who are to be enjoined, so that they are not deprived of a remedy for their claims.

25.   As Section 7.10 of the Proposed Plan violates U.S.C. Section 1123(a) and 11 U.S.C. Section 524(e) and (g), the Proposed Plan cannot satisfy 11 U.S.C. Section 1129(a)(1).   Accordingly, the Creditors respectfully submit that confirmation of the Proposed Plan should be denied.

26.   As well as providing a *de facto* discharge of debts owed by their insiders, affiliates and subsidiaries, the Debtors also impermissibly seek a discharge of their own obligations.   Section 7.7 of the Proposed Plan provides for the "...complete satisfaction, discharge and release of

Claims    and    Equity    Interests    of    any    nature
whatsoever...against the Debtors and Debtors-in-Possession,
their  Estates,  or  any  of  their  assets  or  Properties."
*Proposed Plan*, Sec. 7.7, p. 111.   But as the Debtors
propose  to  liquidate  all  or  substantially  all  of  the
property  of  the  estate  under  the  Proposed  Plan,  11  U.S.C.
Sec.  1141(d)(3)  prohibits  the  discharge  of  the  Debtors'
obligations.   Accordingly,  the  Proposed  Plan  again  fails  to
comply  with  the  applicable  provisions  of  the  Bankruptcy
Code  and  merits  denial  of  confirmation  under  11  U.S.C.
Section 1129(a)(1).

### THE COURT CANNOT DETERMINE WHETHER THAT THE PLAN SATISFIES THE "BEST INTERESTS" TEST

27.   The plan proponents have the burden of proof as
to  confirmation  requirements.   See  In re Stone and Webster,
Inc., 286 B.R.  532 (Bankr.  D.  Del 2002).   Neither the
Disclosure  Statement  nor  the  Plan  provides  any  estimate  of
the  recovery  a  general  unsecured  creditor  might  realize
under  the  Proposed  Plan,  or  an  estimate  of  the  amount  it
might receive if the Debtors were liquidated under chapter
7 nor  any  meaningful  way  to  liquidate  and  compare  the
dividend  with  the  hypothetical  chapter  7  dividend.   The
Disclosure  Statement  includes  documents  entitled  "Estimate
of  Creditor  Recovery"  (Exhibit  E)  and  "Liquidation

Analysis" (Exhibit F).   However, these exhibits are confusing, incomplete, difficult to comprehend and insufficient to support a determination that each claimant will receive under the Plan at least as much as it would receive in a Chapter 7 liquidation.

28. The exhibits do not describe all of the accounting assumptions employed for their preparation. They do not adequately describe how the treatment of intercompany claims under the Proposed Plan would differ from their treatment in a Chapter 7 Liquidation.  Also, the exhibits do not reveal which values the Debtors assigned to their interests in the non-debtor subsidiaries or the values of the real estate owned by those non-debtor subsidiaries.  The Debtors provide no appraisals of any of the properties. Further they are so vague that they deny the creditors the opportunity to analyze the distribution and prepare to test the proffers and projections for the purposes of cross examination of the required testimony as to this standard.

29. As the Debtors cannot demonstrate that each creditor will receive at least as much under the Proposed Plan as it would receive in a chapter 7 liquidation, the Plan cannot satisfy 11 U.S.C. Sec. 1129(a)(7). Accordingly, the creditors respectfully request this Court

to deny confirmation of the Plan.

## THE PROPOSED PLAN DISCRIMINATES UNFAIRLY

30.    Although    the    Proposed    Plan    contemplates
liquidation of substantially all of the Debtors' interests
in property (in addition to the real property held by non-
debtor affiliates), the Debtors do not propose a simple
liquidation requiring an orderly distribution to creditors.
Instead,    their    Proposed    Plan    contemplates    a    complex
structure of newly created entities.  The Proposed Plan's
structure calls for the inequitable transfer of estate
property to several distinct post-confirmation entities,
and segregates the creditor body in a manner that prevents
the general unsecured, non-insider creditors from fully
enjoying the fruits of the Debtors' liquidation.  Thus the
Proposed Plan does not comply with 11 U.S.C. Section
1129(b)(1) and should not be confirmed.

31.    The Proposed Plan requires the great majority of
creditors holding claims against Tarragon Corp., Tarragon
Development Corp, Tarragon South and Tarragon Development,
LLC to receive, on account of such claims, pro-rated
interests in a newly created entity identified as the
"Tarragon Creditor Entity." *Disclosure Statement,* Sec.
V(A)(3), p. 71.  The Proposed Plan places these creditors
in classes 2B(ii), 3B(ii), 4B(ii) and 5B(ii). *Proposed*

*Plan*, Article IV, Sec. 4.2 – 4.5, Pp. 35-45.  The Debtors estimate that the amount of the filed claims in these classes exceeds $449 Million. (including general unsecured and contingent claims).  *Disclosure Statement*, Article IV, Sec. (D)(3), Pp 37-38.

32.  The Proposed Plan also requires the creation of a second new entity called Beachwold Residential, LLC.  It permits the "contribution" of claims against the debtors held by two insiders of the Debtors – Beachwold Partners, LP and Robert Rothenberg ("Rothenberg"). Upon information and belief, Beachwold Partners LP is a Texas limited partnership; its general partner is William S. Friedman ("Friedman") Tarragon's Chief Executive Officer and a major shareholder, and Friedman's wife and children are the limited partners.  Rothenberg is the President and Chief Operating Officer of Tarragon. According to the Disclosure Statement, Beachwold and Rothenberg (collectively the "Beachwold Parties") hold claims against the Debtors in the approximate amount of $40 million dollars. Disclosure Statement, Section II (D)(1), P. 12.

33. The Proposed Plan separately classifies the unsecured claims of these insiders from the general unsecured creditors of the four Debtors, and prescribes markedly different treatment for the insiders. The Proposed

Plan provides that Beachwold Partners L.P. and Rothenberg may contribute only $2 Million of their unsecured claims against the debtors in exchange for 100% of the interest in a new entity identified as "Beachwold Residential." *Disclosure Statement*, Article V, Sec. (A)(4), P. 71. Further, on account of the other $38 Million of claims that these insiders assert against Tarragon Corp., the Proposed Plan provides that they will receive the 100% interest in another new entity identified as "Reorganized Tarragon." *Disclosure Statement,* Article V, Sec. (A)(5), P. 72.

34.    The Proposed Plan then provides for the creation of another new limited liability company known as New Ansonia.   The Plan requires The Tarragon Creditor Entity to acquire 50% of the equity in New Ansonia, and for Beachwold Residential to acquire the other 50%. *Disclosure Statement,* Article V, Sec. (A)(5), P. 72.   Thereafter, New Ansonia is to acquire the interests presently held by Tarragon Corp and the Tarragon Development Corp. in five selected properties.[3] Thus, through the Tarragon Creditor Entity, the general unsecured creditors who hold almost $450 Million of

---

[3]    Listed on Exhibit G to the Disclosure Statement are the five properties that the Debtors are required to transfer to New Ansonia under the Plan. They are Tarragon Development Corp.'s 89.44% equity interest in Ansonia Apartments, LP; Tarragon Development Corp's 100% interest in RI Panama City, LLC; Tarragon Corp.'s 100% interest in Tradition Tarragon, LLC; Tarragon Corp.'s 100% Interest in Manchester Tolland, LLC; and Tarragon Development Corp's 100% interest in Vineyard at Eagle Harbor, LLC.

the claims against the Debtors will share a 50% interest in New Ansonia, while Beachwold and Rothenberg will share the other 50% - on account of only $2 Million of their claims against the Debtors.   Claims are not dollars they are if anything greatly impaired "bankruptcy dollars."   This is not a meaningful contribution of "new value" for the purpose of the Absolute Priority Rule as discussed below. This disparate treatment of unsecured claims is manifestly unfair.   The Proposed Plan does not comply with the provisions of 11 U.S.C. Sec. 1129(b)(2)(B).

35.   The unfair treatment of general unsecured creditors is apparent not only when compared to the insider creditors, but also when compared to the unsecured claims of Freddie Mac, Fannie Mae, GECC and the insiders holding indemnification claims against the Debtors (discussed above).   The Proposed Plan provides for the Debtors to assume, "reaffirm," or continue these obligations, thus assuring that they will receive 100% of their claims before the general unsecured claimants receive any dividend.

36.   The Creditors respectfully submit that the enormous difference between the Proposed Plan's treatment of general unsecured claims and its treatment of the unsecured non-priority claims held by insiders and certain preferred creditors constitutes "unfair discrimination"

under 11 U.S.C. Sec. 1129(b)(1). Accordingly, the Creditors respectfully submit that this Court should deny confirmation of the Proposed Plan.

### THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE

37. As discussed above, the Proposed Plan provides for the distribution of 100% of the equity in Beachwold Residential, 50% of the equity in New Ansonia, and 100% of the equity in Reorganized Tarragon to the insiders Beachwold and Rothenberg. The proposed distribution of any equity interest in the post-confirmation entities to the holders of these junior claims violates the absolute priority rule. The "new value exception" is not applicable due to the lack of adequate new value as set forth in In re HH Distribution LP, 400 B.R. 44 (Bankr. E.D. Pa. 2009), quoting In re Haskell Dawes, 199 B.R. 867 (Bankr. E.D. Pa. 1996):

> It is well accepted that to qualifiy as new value, old equity will have to make a capital contribution that is (1) in the form of money or moneys worth; (2) necessary to the reorganization; (3) substantial and (4) reasonably equivalent to the value of the interest being retained.

In re HH Distribution LP, 400 B.R. 44 (Bankr. E.D. Pa. 2009)

38. The Plan provides that the senior classes of general unsecured creditors will receive interests in the

Tarragon Creditor Entity only. While neither the Disclosure Statement nor Plan attempt to place a value on that entity, it is clear that the value is much less than the $450 Million in claims held by the general unsecured creditors. The Tarragon Creditor Entity cannot be worth more than it can expect to receive upon liquidation of the property of New Ansonia and Reorganized Tarragon.

39. As the Plan does not provide for a 100% dividend to general unsecured creditors, and as it provides for a distribution of dividends and/or equity interests to junior classes of insider claims, the absolute Priority Rule of 11 U.S.C. Sec. 1129(b)(2)(B) prohibits confirmation. Accordingly, the Creditors respectfully request this Court to deny confirmation of the Plan.

WHEREFORE, the Creditors respectfully request this Court to deny confirmation of the Proposed Plan in its entirety.

<div style="margin-left:40%">

Stern, Lavinthal, Frankenberg
& Norgaard, LLC
Counsel to Joel Greene and
Montville Holdings V, LLC

</div>

Dated: 6/11/10          _____/s/ Gary K. Norgaard_____
                        Gary K. Norgaard, Esq.

j:\worddoc\2009\09n276 green v. tarragon\pleadings\final ver obj confirmation.doc