| | |
|---|---|
| DOCKET NO: HHD-X07-CV-06-5008307 S | : SUPERIOR COURT |
| JOEL GREENE and<br>MONTVILLE PROPERTY HOLDINGS V, LLC | : COMPLEX LITIGATION DOCKET |
| V. | : AT HARTFORD |
| JOHN VOLOSHIN, ET AL. | : DECEMBER 10, 2008 |

## SIXTH AMENDED COMPLAINT

With the consent of the Tarragon defendants and the Court, plaintiffs hereby file this Sixth Amended Complaint.

FIRST COUNT

1.  The plaintiff entity is a wholly owned entity of the plaintiff Joel Greene, which he formed for purposes as described referenced herein.

2.  The defendants include John Voloshin; JOLI, LLC, an entity owned and/or controlled by the defendant John Voloshin and legally or de facto by his spouse Linda Voloshin; Voloshin Capital, LLC, an entity owned and/or controlled by the defendant John Voloshin; Voloshin Capital-Uncasville LLC, an entity owned and/or controlled by the defendant John Voloshin; Voloshin Development Corporation, an entity owned and/or controlled by the defendant John Voloshin; Montville Property Holdings I, LLC, which entity is supposed to be owned and controlled by plaintiff Joel Greene and defendant

John Voloshin and which was created to hold title to one or more of the properties referenced hereafter, and further to hold a membership interest in Mohegan Hill Development, LLC; Mohegan Hill Tarragon, LLC, an entity controlled by the defendant Tarragon; Tarragon Corporation, a public corporation primarily involved in residential real estate. Mohegan Hill Development, LLC is an entity owned by Mohegan Hill Tarragon, LLC and by Montville Property Holdings I, LLC. Mohegan Hill Development, LLC is controlled by Tarragon Corporation. Upon information and belief, Mohegan Hill Development/Wilson, LLC is owned by Mohegan Hill Development, LLC.

3. In the fall of 2002, plaintiff Joel Greene developed a plan to acquire and assemble a substantial number of parcels of real estate in close proximity to Mohegan Sun Casino in the Uncasville section of Montville, CT.

4. Greene already had an ownership interest (as a silent partner) in one of the assemblage parcels known as Wilson Marina.

5. Greene and an entity formed by Greene (i.e. Uncasville Acquisitions, LLC), optioned numerous properties. Uncasville Acquisitions, LLC, joint ventured with an entity known as Hackman Capital Partners, LLC (HCP) for purposes of continuing the plan of assemblage through an entity known as HCP-Uncasville, LLC in which Greene and HCP were members.

2

6. Greene, through Uncasville Acquisitions, was a 50% joint venturer with HCP; however, Greene's interest was allegedly diluted to 25% of the referenced joint venture pursuant to certain provisions of the HCP-Uncasville, LLC operating agreement.

7. In July 2004, the plaintiff Greene, with the knowledge and encouragement of Hackman, decided to seek a new partner to buy out Hackman's interest in HCP-Uncasville, LLC, and to continue his plan to acquire and assemble properties in close proximity to Mohegan Sun Casino, and it was in that context that the plaintiff first met the defendant, John Voloshin.

8. In January, 2005, the defendant Voloshin formed Montville Property Holdings I, LLC by filing Articles of Organization with the Delaware Secretary of State. At said time, Voloshin was acting as agent for Greene and his interests.

9. Montville Property Holdings I, LLC was to be owned 50% by the plaintiff Greene and 50% by the defendant Voloshin, but Greene was to be entitled to 70% of the cash distributions and profits, and Voloshin was to receive 30% of the cash distributions and profits.

10. As a condition to Voloshin's involvement in Montville Property Holdings I, LLC, Voloshin was required to invest $2,000,000 into Montville

3

Property Holdings I, LLC and to make payments on account of the options and purchase agreements, which the defendant Voloshin failed and neglected to make. As a result, plaintiff Greene and his affiliates were required to pay sums which were to have been paid by defendant Voloshin in order to preserve the options and purchase agreements in connection with one or more of the following properties: Dahlke, Canfield, Wujtewicz, Wernicki, Wilson Marina, Bill Allen, Marion Taylor, Hilton Schwarz and The Legg Estate.

11. On or about February 23, 2005, plaintiff Greene and defendant Voloshin retained Heritage Realty Advisors, LLC (an entity owned and controlled by Mark Iannone), to secure debt and/or equity financing to acquire Hackman's interest in HCP-Uncasville, LLC.

12. In May, 2005, the plaintiff Greene and the defendant Voloshin hired Attorney Michael Milazzo to draft an operating agreement for Montville Properties Holdings I, LLC, which operating agreement went through a number of drafts, culminating in an agreement on September 7, 2005, which agreement was executed by plaintiff Greene and defendant Voloshin.

13. On or about May, 2005, Iannone arranged a meeting between plaintiff Greene, defendant Voloshin, and William Friedman, the Chairman and Chief Executive Officer of Tarragon Corporation, to discuss the buyout of

Hackman and a potential partnership or joint venture with Tarragon, for purposes of continuing Greene's assemblage plans.

14. During June of 2005, the business terms of Tarragon's participation in the new partnership/joint venture with plaintiff Greene's and defendant Voloshin's newly formed company, Montville Property Holdings I, LLC were finalized. Thereafter, defendant Voloshin and the attorney for Montville Property Holdings I, LLC (Robert Martino, Esquire, of Updike, Kelly & Spellacy), handled the negotiation and drafting of the operating agreement between Montville Property Holdings I, LLC and Tarragon.

15. On September 8, 2005, a new entity known as Mohegan Hill Development LLC was formed, composed of Montville Property Holdings I, LLC and Mohegan Hill Tarragon, LLC, a wholly owned subsidiary of Tarragon Corporation. Mohegan Hill Development, LLC was the new joint venture entity formed to purchase the assemblage from HCP-Uncasville, LLC and to continue with Greene's assemblage plan.

16. Upon information and belief, the Operating Agreement for Mohegan Hill Development, LLC provided that Montville Property Holdings I, LLC would be credited with capital contributions for previous cash expenditures incurred in furtherance of the acquisition of the assemblage

properties, the majority of said cash expenditures being monies that were paid by the plaintiff Greene, directly or indirectly.

17.  On or about September 21, 2005 - October 12, 2005, Mohegan Hill Development, LLC purchased all of HCP-Uncasville, LLC's interest in the assemblage, thus effectuating the buyout of Hackman. The plaintiff Greene received no proceeds from that Closing. Instead, the plaintiff Greene was to receive through Montville Property Holdings I, LLC substantial equity which, together with Tarragon's affiliate, Mohegan Hill Tarragon, LLC, continued Greene's plan of assemblage under the newly formed entity known as Mohegan Hill Development, LLC.

18.  On or about October 12, 2005, pursuant to the direction of defendant Voloshin, the plaintiff Greene transmitted $2,144,188 to an account owned by JOLI, LLC (a defendant), the members of which entity are John and at least de facto Linda Voloshin. Plaintiff Greene was told by defendant Voloshin that these funds were necessary in order for Montville Property Holdings I in part to close its joint venture arrangement with Mohegan Hill Tarragon, LLC. Apparently, Voloshin had still not invested his $2,000,000 as equity in Montville Property Holdings I, yet Greene provided capital of

6

$2,144,188 (Wilson Marina proceeds) together with his 25% interest of HCP-Uncasville, LLC.

19. The plaintiff Montville Property Holdings V, LLC is the assignee of Greene's interests, including Uncasville Acquisitions, LLC, HCP-Uncasville, his legal or equitable interests in Montville Property Holdings I and Mohegan Hill Tarragon, LLC, and his interests in the properties which are part of the assemblage, which properties are known as:

47 Driscoll Road, Montville;

229 Massapeag Side Road, Montville;

272 Massapeag Side Road, Montville;

260 Massapeag Side Road, Montville;

252 Massapeag Side Road, Montville;

266 Massapeag Side Road, Montville;

255 Massapeag Side Road, Montville;

233 Massapeag Side Road, Montville;

237 Massapeag Side Road, Montville;

241 Massapeag Side Road, Montville;

245 Massapeag Side Road, Montville;

226 Massapeag Side Road, Montville;

246 Massapeag Side Road, Montville;

6 tracts generally known as 43R Driscoll Road

34,913 square feet westerly side of Massapeag Side Road

Derry Hill Road;

190 Derry Hill Road;

238 Massapeag Side Road;

40 Saltbox Lane;

44 Saltbox Lane;

48 Saltbox Lane;

16 Swanty Johnson Road;

19 Tra-Mart Drive, Montville;

Lots 4, 5, and 24 Massapeag Side Road;

43, 46, 54, 68 and 78 Massapeag Side Road;

41 Driscoll Drive now known as 43 Driscoll Drive;

162 Derry Hill Road;

217 Massapeag Side Road;

265 Massapeag Side Road, commonly referred to as Wilson Marina; and

1519-1523 Norwich-New London Turnpike.

in regard to all of which property the plaintiffs have a direct or indirect legal or equitable interest individually, as a partner, member, joint venturer, or a participant through their affiliates in regard to said properties, notwithstanding that title was placed in the name of Mohegan Hill Development, LLC and/or Montville Property Holdings I, LLC.

Plaintiffs have filed a lis pendens on the above properties and those subsequently acquired as part of the assemblage, pursuant to the lis pendens statute as made and provided.

20. Upon information and belief, the defendant Voloshin has failed, neglected and refused to contribute his capital contributions to said Montville Property Holdings I, LLC and has in fact utilized plaintiffs' contributions in regard to self-dealing with Tarragon and on other potential business ventures, all to plaintiffs' special loss and damage. Still further, upon information and belief defendant Linda Voloshin utilized JOLI funds to pay mortgages on residential properties owned solely by defendant Linda Voloshin.

21. Plaintiffs have a legal or equitable interest in Montville Property Holdings I, and thereby in said properties, and the plaintiffs have been wrongfully denied information and participation in regard to the joint venture, all to the plaintiffs' special loss and damage.

22. Mohegan Hill Development LLC has proceeded to acquire the properties that were originally contracted for by the plaintiff Greene and his affiliates and has utilized down payment monies advanced by Greene to close on said properties.

23. Plaintiffs have reason to believe that all of the defendants maintain that the plaintiffs have no interest in Montville Property Holdings I or in Mohegan Hill Development, LLC, or in any of the properties that are referenced herein, even though it was the plaintiffs that negotiated the sales agreements with the owners to create the assemblage; even though it was the plaintiffs that provided deposit money and installment payments in regard to one or more of the sales agreements; even though it was the plaintiffs that created and caused the assemblage in the first instance; even though plaintiffs did not receive monies for the interest in HCP-Uncasville, LLC, and the plaintiff invested over $2,000,000 in JOLI, LLC.

24. Plaintiffs require judicial assistance to determine the rights of the plaintiffs in and to the assemblage and the entities referenced aforesaid.

SECOND COUNT

1-24. Paragraphs 1 through 24 of the First Count are hereby made Paragraphs 1 through 24 of this the Second Count as if fully set forth herein.

25. The defendant Voloshin, and his entities owed and owe the plaintiffs a fiduciary duty regarding the aforesaid, which defendants have breached by self-dealing including a breach of the duty of undivided loyalty and utmost good faith, all to the plaintiffs' special loss and damage. The defendants Tarragon and Mohegan Tarragon aided and abetted the defendant Voloshin to breach his fiduciary duties owed to the plaintiffs. Defendants knew that Greene was responsible for the assemblage; that Greene expected to continue as a principal in the development and assemblage in whatever entity was to acquire the properties from HCP-Uncasville; that Greene would not have released his interest in said HCP-Uncasville without such assurance; that the defendants induced Greene to execute a release in assurance for his continued ownership interest in the entity to be formed to acquire HCP-Uncasville's interest; that upon information and belief, the defendants, and in particular its CEO, William Friedman, sought to undermine and exclude Greene as a partner. While Greene's ownership interest in HCP-Uncasville was at least 25% at the time of the transaction between Tarragon and HCP-Uncasville, the

11

defendants knew that the plaintiffs received no proceeds from the HCP-Uncasville transaction and that the defendants were to protect the plaintiffs' interests, which the defendants failed and neglected to do, all to the plaintiffs' special loss and damage.

THIRD COUNT

1-24. Paragraphs 1 through 24 of the First Count are hereby made Paragraphs 1 through 24 of this the Third Count as if fully set forth herein.

25. Paragraph 25 of the Second Count is hereby made Paragraph 25 of this the Third Count as if fully set forth herein.

26. The defendants have denied plaintiffs' participation and interest in the joint venture, as a result of which the plaintiffs claim an interest in the properties owned by defendants in connection with said assemblage, for the reasons aforesaid. The plaintiffs request a declaratory judgment to determine the rights of the plaintiffs in and to the subject properties, including imposition of a constructive trust to protect plaintiffs' interests.

27. The Tarragon defendants, in particular Friedman, its CEO, were fully aware that the condition to secure the plaintiffs' cooperation in regard to Tarragon's acquisition of the HCP-Uncasville property was Greene's continued participation and Greene's influence over the continued assemblage and

eventual development over the properties. The defendants promised and assured Greene that Greene would continue to participate in the assemblage and in the eventual development of the properties and that plaintiff Greene's interests therein would be protected. But for such promises and assurance of Greene's continued participation, and that the plaintiff's interests would be protected, the plaintiff would not have consented to or allowed the transaction between HCP-Uncasville and Tarragon to proceed, all to the plaintiffs' special loss and damage. To the extent that defendants secured plaintiffs' release in HCP-Uncasville, LLC to allow defendants' acquisition of the rights and benefits of the assemblage and defendants did not protect plaintiff Greene's interest, then defendants defrauded Greene, all to his special loss and damage.

FOURTH COUNT (As to JOLI, LLC, John Voloshin and Linda Voloshin)

1-24. Paragraphs 1 through 24 of the First Count are hereby made Paragraphs 1 through 24 of this the Fourth Count as if fully set forth herein.

25. To the extent JOLI LLC is owned solely by defendant John Voloshin, then the use of monies provided by plaintiff Greene to JOLI which defendants John and Linda Voloshin used for Linda Voloshin's residential properties constitutes a fraudulent transfer of such monies, which transfers

13

Linda knowingly accepted and thereby aided and abetted in such fraud, and/or same constituted a constructive fraud, as Linda and John Voloshin together with JOLI, LLC, were insiders all within the meaning and intent of General Statutes §§ 52-552a et seq.

FIFTH COUNT (As to JOLI, LLC, John Voloshin, and Linda Voloshin)

1-24. Paragraphs 1 through 24 of the First Count are hereby made Paragraphs 1 through 24 of this the Fifth Count as if fully set forth herein.

25. Defendants JOLI LLC, John Voloshin and Linda Voloshin misappropriated the monies given to JOLI for investment in Mohegan Hill, all to the plaintiffs' special loss and damage. The actions aforesaid constitute theft to the extent the funds were not used for their intended purpose and solely for defendants John and Linda Voloshin's benefit.

SIXTH COUNT

1-24. Paragraphs 1 through 24 of the First Count are hereby made Paragraphs 1 through 24 of this the Sixth Count as if fully set forth herein.

25. Paragraph 25 of the Second Count is hereby made Paragraph 25 of this the Sixth Count as if fully set forth herein.

26. Paragraph 27 of the Third Count is hereby made Paragraph 26 of this the Sixth Count as if fully set forth herein.

27. Paragraph 25 of the Fourth Count is hereby made Paragraph 27 of this the Sixth Count as if fully set forth herein.

28. Paragraph 25 of the Fifth Count is hereby made Paragraph 28 of this the Sixth Count as if fully set forth herein.

29. At all times relevant hereto, the conduct of the defendants offended public policy; was immoral, oppressive, unethical and unscrupulous; and caused substantial injury to consumers, competitors and other businessmen; thereby violating the Connecticut Unfair Trade Practices Act ("CUTPA") C.G.S. § 42-110a, *et seq.*, as made and provided, resulting in ascertainable losses to the plaintiffs.

WHEREFORE, the plaintiffs claim:

1. Damages;

2. A constructive trust in regard to the entities;

3. A constructive trust in regard to the properties;

4. Damages pursuant to C.G.S. § 42-110g;.

5. Punitive damages pursuant to C.G.S. § 42-110g(a);

6. Attorney's fees pursuant to C.G.S. § 42-110g(d);

7. Declaratory judgment as to the rights of the plaintiffs in and to the subject entities and properties;

8. Treble damages for theft pursuant to C.G.S. § 52-564 as made and provided;

9. Punitive and exemplary damages for fraud.

10. Such legal and equitable relief as the Court deems appropriate.

PLAINTIFFS,

By_____
Richard P. Weinstein, Esquire of
WEINSTEIN & WISSER, P.C.
29 South Main Street, Suite 207
West Hartford, CT 06107
Telephone No. (860) 561-2628
Facsimile No. (860) 521-6150
Juris No. 45674

## **CERTIFICATION**

This is to certify that on the 10th day of December, 2008, a copy of the foregoing was served upon:

Kerry R. Callahan, Esquire
Updike, Kelly & Spellacy
One State Street
P. O. Box 231277
Hartford, CT  06123-1277

Douglas M. Evans, Esquire
Kroll, McNamara, Evans & Delehanty, LLP
65 Memorial Drive, 3rd Floor
West Hartford, CT  06107

Arthur Wells, Esquire
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA  01608-1477

_____
Richard P. Weinstein

17