STERN, LAVINTHAL, FRANKENBERG & NORGAARD, LLC
184 Grand Avenue
Englewood, New Jersey 07631
Telephone No. (201) 871-1333
Fax No. (201) 871-3161
Counsel to Block 106 Mtge., LLC

By:  Gary K. Norgaard, Esq.
        GN - 9243

|  |  |
|---|---|
| In re: | : | UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY NEWARK VICINAGE |

In re:                              :      UNITED STATES BANKRUPTCY COURT
                                           FOR THE DISTRICT OF NEW JERSEY
                                     :            NEWARK VICINAGE
TARRAGON CORPORATION,
*et al.*                             :            Chapter 11

   Debtors-in-Possession :      Lead Case No. 09-10555 DHS
_____
                                             (Jointly Administered)

**OBJECTION OF BLOCK 106 MTGE., LLC TO CONFIRMATION OF THE
SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION
PROPOSED BY TARRAGON CORPORATION AND ITS AFFILIATED DEBTORS**

     Secured creditor Block 106 Mtge., LLC (the "Creditor")
hereby objects to confirmation of the Second Amended and
Restated Joint Plan of Reorganization (the "Proposed Plan")
proposed by Tarragon Corporation ("Tarragon") and its
Affiliated Debtors (collectively the "Debtors") as stated
below.

     1.   The Creditor holds a mortgage covering the real
property commonly known as 1320-1330 Madison Avenue,
Hoboken, Lots 1-16, 16.1, 17.1, 17-32 in Block 106 and Lots
2-13, 13.1, 14, 14.1 in Block 11 on the City of Hoboken Tax
Map, New Jersey (the "Property"). The Property is titled in
the non-debtor affiliate Block 106 Development LLC.   The

Debtors Tarragon Corp. and Tarragon Development Corp. guaranteed the mortgage loan; thus the Creditor holds an unsecured claim against those parties.

2.    The original lender, The Provident Bank, issued the mortgage in the amount of $6,000,000.00 on June 28, 2006 and recorded the mortgage documents on June 29, 2006 at Mortgage Book 14555, Page 001 in the Clerk's office of Hudson County. On January 25, 2008, the lender modified and restated the mortgage by extending the maturity date to June 30, 2008. At that time, the mortgage had an unpaid principal balance of approximately $4.5 million.

3.    The borrower failed to satisfy the mortgage by the restated maturity date.  On or about October 29, 2008, the Creditor sent notice of Provident's assignment of the mortgage to the borrower, with notice of the borrower's default.   The borrower failed to cure the default. Thereafter, the Creditor commenced a foreclosure action in the Superior Court of New Jersey, Hudson County Chancery Division (Docket No. F-3002-09).  Presently, the Creditor is awaiting entry of Final Judgment in the foreclosure suit. Notably, the Property owner appeared in the foreclosure action but did not contest the validity of the mortgage lien.  It only objected to the amount of legal fees and expenses that the Creditor seeks to include in the

judgment amount. The Chancery Division has scheduled a hearing for June 16, 2010 to fix the amount of the Creditor's final judgment. Therefore, the Creditor anticipates that a judgment will entered in its foreclosure action by the time of the confirmation hearing. The Creditor maintains that amount due on the Creditor's mortgage loan through June 16, 2010 is $5,452,107.00.

4. The Creditor filed a timely Proof of Claim in the within bankruptcy proceeding on or about April 29, 2009. A true copy of the Creditor's Proof of Claim, without the related exhibits, is annexed hereto as Exhibit "A." True copies of the relevant exhibits were previously submitted with the Creditor's Proof of Claim. The Creditor shall provide copies of these exhibits as requested by the parties or required by the Court.

5. Despite the volume of the Proposed Plan the and accompanying Disclosure Statement, the Debtors offer little information as to how the holders of claims or interests might actually benefit from the Proposed Plan, what distributions they might expect, how assets of the estate and other assets addressed in the plan will disposed of, or how the Proposed Plan will be administered. Instead, the Debtors propose a needlessly complex structure composed of a patchwork of disjunctive documents calling for the

creation of at least four new post-confirmation entities, each of which purport to serve the simple objective of liquidating the assets of the Debtors.   But as one burns through the haze of the Debtors' elaborate and confusing proposal, there emerges a plan that seeks to impermissibly expand the protection of the Bankruptcy Code to non-debtor third parties, and to prohibit creditors from litigating actions against non-debtors - including the subsidiaries, non-filing affiliates, officers and other insiders of the Debtors, in complete derogation of fundamental concepts of due process. The Proposed Plan also permits the Debtors' insider principals to acquire valuable equity interests in the post-confirmation entities based on their prior positions, without providing evidence that such acquisitions provide real and measurable benefit the estate's creditors, and without any meaningful contribution of "new value" in direct violation of the absolute Priority Rule of 11 U.S.C. 1129(b)(1).

### THE PROPOSED PLAN CANNOT BE ACCEPTED BY ALL IMPAIRED CLASSES OF CLAIMS AND INTERESTS

6.   The lead Debtor Tarragon Corp. is a publicly traded company, with a listing on NASDAQ; the Debtors indicate that as of August 2008, there were over 28 Million shares of common stock outstanding. *Disclosure Statement,*

Sec. II A, p. 7.   Under the Proposed Plan, the holders of these interests will receive nothing, and are deemed to have rejected the Plan. *Proposed Plan*, Sec. 4.2(I), p. 39.

7.   As the Proposed Plan cannot be accepted by the impaired class of interests, it cannot satisfy the requirements of 11 U.S.C. Sec. 1129(a)(8).   The Debtors may only seek confirmation under Sec. 1129(b).   As discussed below, their Proposed Plan does not comply with the requirements of that section.

**THE DEBTORS SEEK TO EXTEND THE JURISDICTION OF THE BANKRUPTCY COURT OVER THE PROPERTY OF THIRD PARTIES**

8.   The Creditor objects to confirmation of the Proposed Plan, as the Proposed Plan purports to provide the post-confirmation entities with authority to sell real property held entirely by the non-debtor entity Block 106 Development LLC, free and clear of the Creditor's claims and encumbrances pursuant to 11 U.S.C. Sec. 363(b) and (f) – despite the plain language of the Code and the fundamental concepts of due process that prohibit such a sale.

9.   Neither the Disclosure Statement nor the Proposed Plan specifically states whether or not the Debtors intend to sell the non-debtor affiliate's title interest in the real property which is the subject of the Creditor's

foreclosure action; those documents do not clarify whether the post-confirmation entities created by the Plan will seek to sell any specific property for any price. As with much of the Proposed Plan, the reader is left to piece together the various disjunctive provisions and those of other tangential documents to be assumed in order to get a very foggy picture of what is actually proposed. Those documents do not clarify whether the post-confirmation entities created by the Proposed Plan will seek to sell any specific property for any price and don't require there to be any forum nor opportunity to examine the propriety and benefits of the proposed sale. As the Proposed Plan stands today the proponents can select how and through what mechanism the sale is processed which precludes higher or better offers to be made. How this can be said to benefit creditors and enhance the estate is inscrutable. But Section 7.1(E) of the Proposed Plan suggests that the post-confirmation entities will exercise such expansive and extraordinary authority. That section provides:

(E) <u>Liquidation</u>

1    <u>Liquidation of Assets</u>

Following confirmation of the Plan, Reorganized Tarragon and the Tarragon Creditor Entity shall proceed diligently to liquidate the presently owned physical and intangible **assets of Tarragon Corp. and certain of its Affiliates** . . . in

accordance with the terms and conditions of the
Plan.

*Proposed Plan*, Sec. 7.1(e), p. 95 (emphasis supplied).
Thus it appears that the Debtors do not propose to
liquidate merely their <u>shares</u> in non-debtor affiliates, but
intend to sell the real property held by non-debtor
affiliates - including the real property that is the
subject to the Creditor's mortgage lien.

10. Further, Article XI, paragraph (T) of the
Proposed Plan provides for the retention of this Court's
jurisdiction:

> (T) to issue Orders pursuant to Section 363(b) of
> the Bankruptcy Code; provided, however, that
> Bankruptcy Court approval is not required to
> consummate any sales after confirmation of the
> Plan.

*Proposed Plan*, Article XI, Par (T), p. 130.

When read in connection with section 7.1(e), this
section seems to vest in the post-confirmation entities a
right to sell real property held by non-debtor affiliates,
and to retain the option to sell such property free and
clear of liens under 11 <u>U.S.C.</u> Sec. 363(b) and (f).

11. The Creditor objects to any provision of the
Proposed Plan which authorizes the Debtors, the post-
confirmation entities, or any other party to sell real
property ***that they do not own*** free and clear of the

Creditor's claims and interests.   A Debtor-in-possession may sell only "property of the estate," as defined by 11 U.S.C. Section 541(a), under provisions of 11 U.S.C. Sec. 363(b).   The Bankruptcy Code "...simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." Universal Bonding Ins. Co. v. Gittens and Sprinkle Enterprises, Inc., 960 F.2d 366, 372 (3rd Cir. 1992), quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 135-36 (1962).

12.   The Bankruptcy Court must determine that property is "property of the estate" before considering whether to allow a sale under Sec. 363(b).   In re Rodeo Canon Dev. Corp., 362 F. 3d 603, 606 (9th Cir. 2004); In re Popp, 323 B.R. 260 (9th Cir. BAP 2005).   A Chapter 11 Plan may provide for the sale of only "property of the estate." 11 U.S.C. Sec. 1123(a) (5) (D) & (b) (4).   Property held by non-debtor subsidiaries of a debtor is not property of the estate. In re Lockings, 308 Fed. Appx. 583 (3rd Cir. 2008) (foreclosure sale of real estate titled in corporation is not prohibited by the automatic stay in bankruptcy case of sole shareholder); Fowler v. Shadel, 400 F. 3rd 1016 (7th Cir. 2005) (assets of corporation do not become property of the estate in case of sole shareholder; shareholder may not claim an exemption in corporate assets); In re Rodio, 257

B.R. 699, 701 (Bkrtcy. D. Conn. 2001)(an individual debtor's membership interest in limited liability company is property of the estate, but property transferred to or acquired by that LLC is not).

13. Through the Proposed Plan's language allowing sales of property held by the Debtors' non-filing affiliates under 11 U.S.C. Sec. 363(b), the Debtors seek to utilize the provisions of the Bankruptcy Code to remove the liens and encumbrances from the property of non-debtor affiliates, and to prohibit the Creditor from asserting its state-law right to acquire the property through foreclosure sale. Confirmation of a plan allowing such an expansion of Section 363 would improperly extend the Bankruptcy Court's jurisdiction over the property of non-debtors, and over disputes between non-debtors. It will offend the principle of Butner v. United States, 440 U.S. 48 (1979), which protected the state-law property rights of non-debtor third parties from modification in a Bankruptcy Case. In Butner, the Supreme Court held as follows:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to

> prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy." <u>Lewis v. Manufacturers National Bank</u>, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323. The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgage in rents earned by mortgaged property.

<u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).

If this Court confirms the Proposed Plan, The Creditors and the Connecticut court will be bound by its terms.   Confirmation of the Proposed Plan's proviso allowing sales of non-debtor subsidiaries' property under Sec. 363(b) will grant the Debtors the authority to strip the Connecticut Court of jurisdiction over property within its borders, and to seek this Court's resolution of a title dispute over property in which the Debtors assert no interest.   Allowing the Debtor such power to interfere with the operation of a sovereign state court would be manifestly unjust and improper, as absolutely no federal interest would be served.

14.   It is important to note that <u>In re New Jersey Affordable Homes Corp.</u>, 2006 WL 2128624 (Bkrtcy. D.N.J.) does not support the Plan's provisions granting the post-confirmation entities authority to seek this Court's determination of the Creditor's rights in the property of non-debtors.   In <u>New Jersey Affordable Homes</u>, the Court

approved a Trustee's application for authority to sell real property free and clear of third-parties' asserted title interests in property.  In reaching its holding, the Court stressed the unusual nature of that bankruptcy proceeding, the underlying District Court Orders relating to the suit commenced by the Securities and Exchange Commission (the "SEC") and the fraudulent investment scheme at the heart of the operations of the debtors, non-debtor affiliates and insiders, stating:

> At the outset, it must be acknowledged that this is not the typical bankruptcy case.  Rather, as the District Court realized and this Court has recognized, the Trustee and *all* interested parties are faced with a tragic situation of unusual proportions.  The fraudulent conduct committed by Puff and NJAH can only result in deleterious ramifications for all parties involved.  As the District Court's orders make clear the Receiver (and now the Trustee) was appointed to unravel the fraud, liquidate assets and pursue claims for the benefit of all creditors of this bankruptcy estate.  Moreover, this Court must be mindful of the specific directive given by the District Court in both the Amended Preliminary Order and the Order Continuing Injunctive Relief; namely, for the Receiver (and now the Trustee) to implement an expedited sales process to liquidate the real property and related assets of NJAH, its corporate affiliates, '*and any person or entity who holds title to real property acquired through investments and/or the purchase of securities.*'

NJ Affordable Home, 2006 WL 2128624 at Pages 7- 8 (Emphasis in the original).

15.   In <u>NJ Affordable Homes</u>, the Court acknowledged that the Section 541 definition of property of the estate is generally given a broad application, <u>citing</u> <u>Westmoreland Human Opportunities, Inc. v. Walsh</u>, 246 F. 3d 233, 241 (3rd Cir. 2001) (additional citations omitted).   However, the Court's extension of this definition to include property not titled in the debtors is directly linked to the unique circumstances of the debtors' fraudulent investment activities.   The Court noted that:

> The Court agrees with the Trustee's conclusions **that based upon the unique facts and circumstances of the fraud perpetrated by NJAH and Puff**, the mere fact that title to a property is in the name of an investor does not mean that NJAH does not have an equitable interest in the property, however speculative that interest may be.

<u>New Jersey Affordable Homes, Corp.</u>, 2006 Westlaw 2128624 at Page 8 (Emphasis added).

The Court concluded that the third parties' acquisition of the properties was an integral part of the debtor's fraudulent ponzi scheme, and determined that the Debtors held <u>equitable title</u> to those properties.   But in the case at bar, the Debtors do not assert that they hold equitable title or any other interest in the real property covered by the Creditor's mortgage.   They concede that they hold no interest in the property – legal, equitable or

otherwise.

16.   The Proposed Plan improperly seeks to invest the post-confirmation entities with authority to interfere with the Creditor's state-law foreclosure suit to recover real property in which the Debtors assert no interest whatsoever. These provisions are contrary to the requirements of 11 U.S.C. Sec. 363(b), 11 U.S.C. Sec. 1123 and 28 U.S.C. Sec. 1334. Thus, the Creditors respectfully submit that this Court should deny confirmation of the Proposed Plan under 11 U.S.C. Sec. 1129(a)(1).

17.   In the alternative, if the Court is inclined to confirm the Proposed Plan, the Creditor respectfully submits that the Plan should provide that any sale of the Block 106 Property comply with the requirements of 11 U.S.C. Section 363(b). A sale of the Creditor's security should be on appropriate and timely notice and subject to higher and better offers. The Creditor also submits that the Plan should preserve its right to credit-bid at any sale of its collateral pursuant to 11 U.S.C. Section 363(k). That section provides:

> At a sale under subjection (b) of this section
> property that is subject to a lien that secures
> an allowed claim, unless the court for cause
> orders otherwise the holder of such claim may bid
> at such sale, and, if the holder of such claim
> purchases such property, such holder may offset
> such claim against the purchase price of such

property.

11 <u>U.S.C.</u> Section 363(k).

In this matter, there is no cause that could justify an order that prevents the holder of a valid lien from credit-bidding for property that the Debtors seek to sell, as such bidding can only improve the recovery for all creditors.

**THE DEBTORS SEEK TO FORCE THE CREDITORS TO RELEASE CLAIMS AGAINST THIRD PARTIES AND TO ENJOIN CREDITORS FROM TAKING ACTION AGAINST THIRD PARTIES**

18.  The Creditors also object to the breadth of the "Mutual Releases" provided at Section 10.5(C) of the Proposed Plan, and maintain that the Plan's inclusion of this section merits denial of confirmation.  The section provides:

(C)  <u>Mutual Releases</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as specifically provided in the Plan, for good and valuable consideration, on and after the Effective Date, **the Debtors**, the Tarragon Creditor Entity, the TCE Trustee, Reorganized Tarragon, New Ansonia, the Creditors' Committee, the members of the Creditors' Committee **and all Holders of Claims** and/or Interests **and each of their respective affiliates**, principals, officers, directors, partners, members, attorneys, accountants, financial advisors, advisory affiliates, employees, and agents **(each a "Released Party") shall each conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each other Released Party from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever**, whether

known or unknown, seen or unforeseen, existing or
hereafter arising, in law, equity or otherwise,
that any Released party would have been legally
entitled to assert in their own right (whether
individually or collectively), **based on or
relating to, or in any manner arising from**, in
whole or in part, the Debtors, Reorganized
Tarragon, New Ansonia, the Creditors' Committee,
the members of the Creditors' Committee, the
Chapter 11 Case, the Plan, **the purchase, sale or
rescission of the purchase or sale of any assets
of the Debtors, the subject matter of, or the
transactions or events giving rise to, any Claim
that is treated in the Plan, the business or
contractual agreements between any Debtor and any
Released Party**, the restructuring of any Claims
or Equity Interests prior to or in the Chapter 11
Case, the negotiation, formulation, or
preparation of the Plan and the Disclosure
Statement, or any related agreements,
instruments, or other documents, upon any other
act or omission, transaction, agreement, event or
other occurrence taking place on or before the
Effective Date. . .

*Proposed Plan*, Article X, Sec. 10.5(C), pp. 125-26
(emphasis supplied).

If the Plan is confirmed, the plain language of this
section will terminate the Creditor's foreclosure suit and
its right to a deficiency against the non-debtor owner of
the Property. Indeed, it will prevent all holders of
claims and interests from taking legal action against the
Debtors' principals, officers, directors and other
insiders.

19. This section literally requires creditors to
release claims they may hold against other creditors. It

even requires the Debtors and the post-confirmation entities to release any claims or defenses that they may have against the holders of disputed claims in this matter.

20. Regardless of the Debtor's reference to Bankruptcy Code Section 1123(b), the broad releases that the Proposed Plan will provide for the Debtors' subsidiaries and other third parties are not authorized by the Bankruptcy Code. The expansive releases of non-debtors contemplated in the Proposed Plan violates 11 <u>U.S.C.</u> Sec. 524(e) and the Third Circuit's holding in <u>In re Continental Airlines</u>, 203 F. 3d 203 (3rd Cir. 2000). As the Proposed Plan does not comply with applicable provisions of the Bankruptcy Code, it cannot be confirmed under 11 <u>U.S.C.</u> Sec. 1129(a)(1).

21. Another example of the Proposed Plan's improper extension of the Bankruptcy Code's protection to non-debtors appears at section 7.10. That section provides:

> 7.10 <u>Survival of the Debtors' Indemnification Obligations</u>. **Any obligations of the Debtors** pursuant to their corporate charters and bylaws or other organizational documents **to indemnify current and former officers and directors** of the Debtors with respect to all present and future actions, suits and proceedings against the Debtors or such directors and/or officers, **based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan**. To the extent provided in this section, such obligations shall be deemed and treated as executory contracts assumed by the

> Debtors hereunder and shall continue as obligations of Reorganized Tarragon. Upon the Effective Date, except in the case of gross negligence, willful misconduct or fraud, **the commencement or prosecution by any person or entity, whether directly, indirectly or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liability subject to indemnification by the Debtors, Reorganized Tarragon or New Ansonia shall be enjoined.**

*Proposed Plan*, Art. VII, Sec. 7.10, pp. 113-14 (emphasis supplied).

This section creates a separate, informal class of unsecured claims – the claims for indemnification held by present and former insiders of the Debtors – and provides for unimpaired treatment of those claims. Neither the Disclosure Statement nor the Proposed Plan suggest how many parties hold indemnification claims, or estimate the extent to which the post-confirmation entities will be called upon to pay these claims from the estate's property – which might otherwise be available for payment of dividends to general unsecured creditors. But this section makes it clear that these insiders' unsecured claims will be fully reimbursed under the Proposed Plan, regardless of whether the general unsecured creditors realize any recovery in this case.

22. The Debtors' informal classification of its insiders and their claims violates the provisions of 11

<u>U.S.C.</u> Sec. 1123(a), which mandates that a plan designate all separate classes of claims and specify the impaired or unimpaired status of each class.

23. Further, the Debtors mischaracterize the indemnification claims of insiders as "executory contracts." The Debtors offer nothing to suggest that the continuation of prepetition agreements with present and former insiders is critical to the liquidation effort, and offer no evidence demonstrating that the assumption of any obligation to indemnify such an insider can benefit the estate.

24. The Creditor is most troubled by the injunction language included in the last sentence of section 7.10. The Debtors seek to enjoin "any person or entity" from suing an insider whom "the Debtors, Reorganized Tarragon, or New Ansonia" might be required to indemnify. If such an injunction were permissible, the Debtor's insiders wouldn't need a plan to continue any indemnification obligation, and the post-confirmation Debtors would never be required to honor an obligation to indemnify.

25. The broad release provisions of Sec. 10.5 and the gratuitous injunction language of Section 7.10 reveal the Debtors' objective to shield their principals and subsidiaries from liability to the creditors in this

matter.   The pursuit of such an objective clearly does not serve the legitimate purposes of the Bankruptcy Code. Indeed, the Bankruptcy Code prohibits the third party releases and injunctions contemplated in the Proposed Plan, which would permanently prohibit present <u>and future</u> claimants from pursuing claims against the Debtors' officers, directors, subsidiaries and affiliates, without creating a collateral source for payment of such claims.

26.   The rare and special circumstances under which a plan of reorganization may include an injunction favoring third parties are set forth at 11 <u>U.S.C.</u> Sec. 524(g).  That section prohibits entry of an injunction without "notice and a hearing."  Clearly, that standard of due process is not satisfied by the Proposed Plan, which buries the language providing the third party releases and injunctions in the boilerplate paragraphs of a 150 page document. Further, as a condition for entry of an injunction favoring third parties, Sec. 524(g) requires that the plan provide for the creation or a trust benefitting the claimants who are to be enjoined, so that they are not deprived of a remedy for their claims.  The Plan proposed by the Debtors provides no trust from which enjoined claimants might seek recovery.

27.   As Section 7.10 of the Proposed Plan violates

U.S.C. Section 1123(a) and 11 U.S.C. Section 524(e) and
(g), the Proposed Plan cannot satisfy 11 U.S.C. Section
1129(a)(1).  Accordingly, the Creditor respectfully submits
that confirmation of the Proposed Plan should be denied.

28.  As well as providing a *de facto* discharge of
debts owed by their insiders, affiliates and subsidiaries,
the Debtors also impermissibly seek a discharge of their
own obligations.  Section 7.7 of the Proposed Plan provides
for the "...complete satisfaction, discharge and release of
Claims and Equity Interests of any nature
whatsoever...against the Debtors and Debtors-in-Possession,
their Estates, or any of their assets or Properties."
*Proposed Plan*, Sec. 7.7, p. 111.  But as the Debtors
propose to liquidate all or substantially all of the
property of the estate under the Proposed Plan, 11 U.S.C.
Sec. 1141(d)(3) prohibits the discharge of the Debtor's
obligations.  Accordingly, the Proposed Plan again fails to
comply with the applicable provisions of the Bankruptcy
Code and merits denial of confirmation under 11 U.S.C.
Section 1129(a)(1).

**THE COURT CANNOT DETERMINE WHETHER THAT THE
PLAN SATISFIES THE "BEST INTERESTS" TEST**

29.  Neither the Disclosure Statement nor the Proposed
Plan provides any estimate of the recovery a general

unsecured creditor might realize under the Proposed Plan, or an estimate of the amount it might receive if the Debtors were liquidated under chapter 7. The Disclosure Statement includes documents entitled "Estimate of Creditor Recovery" (Exhibit E) and "Liquidation Analysis" (Exhibit F). However, these exhibits are difficult to comprehend and insufficient to support a determination that each claimant will receive under the Plan at least as much as it would receive in a Chapter 7 liquidation.

30. The exhibits do not describe all of the accounting assumptions employed for their preparation. They do not adequately describe how the treatment of intercompany claims under the plan would differ from their treatment in a Chapter 7 Liquidation. Also, the exhibits do not reveal what values the Debtors assigned to their interests in the non-debtor subsidiaries or the values of the real estate owned by those non-debtor subsidiaries. The Debtors provide no appraisals of any property.

31. As the Debtors cannot demonstrate that each creditor will receive at least as much under the Plan as it would receive in a chapter 7 liquidation, the Plan cannot satisfy 11 U.S.C. Sec. 1129(a)(7). The plan proponents have the burden of proof as to the plan's compliance with the provisions of Section 1129(a)(7). Lisanti v. Lubetkin (In

re Lisanti Foods, Inc.), 329 B.R. 491, 500 (D.N.J. 2005),
In re New Century TRS Holdings, Inc., 390 B.R. 140 (Bankr.
D. Del. 2008). Accordingly, the Creditor respectfully
requests that this Court deny confirmation of the Plan.

### THE PROPOSED PLAN DISCRIMINATES UNFAIRLY

32. Although the Proposed Plan contemplates
liquidation of substantially all of the Debtors' interests
in property (in addition to the real property held by non-
debtor affiliates), the Debtors do not propose a simple
liquidation requiring an orderly distribution to creditors.
Instead, their Proposed Plan contemplates a complex
structure of newly created entities. The Proposed Plan's
structure calls for the unequal and inequitable transfer of
estate property to several distinct post-confirmation
entities, and segregates the creditor body in a manner that
prevents the general unsecured, non-insider creditors from
fully enjoying the fruits of the Debtors' liquidation.
Thus the Proposed Plan does not comply with 11 U.S.C.
Section 1129(b)(1) and should not be confirmed.

33. The Proposed Plan requires the great majority of
creditors holding claims against Tarragon Corp., Tarragon
Development Corp, Tarragon South and Tarragon Development,
LLC to receive, on account of such claims, pro-rata
interests in a newly created entity identified as the

"Tarragon Creditor Entity." *Disclosure Statement,* Sec. V(A)(3), p. 71. The Proposed Plan places these creditors in classes 2B(ii), 3B(ii), 4B(ii) and 5B(ii). *Proposed Plan*, Article IV, Sec. 4.2 – 4.5, Pp. 35-45. The Debtors estimate that the amount of the filed claims in these classes exceeds $449 Million. (including general unsecured and contingent claims). *Disclosure Statement*, Article IV, Sec. (D)(3), Pp 37-38.

34. The Proposed Plan also requires the creation of a second new entity called Beachwold Residential, LLC, which will be owned and controlled by two insiders – Beachwold Partners, LP and Robert Rothenberg ("Rothenberg"). Upon information and belief, Beachwold Partners LP is a Texas limited partnership; its general partner is William S. Friedman ("Friedman") Tarragon's Chief Executive Officer and a major shareholder, and Friedman's wife and children are the limited partners. Rothenberg is the President and Chief Operating Officer of Tarragon. According to the Disclosure Statement, Beachwold and Rothenberg (collectively the "Beachwold Parties") hold claims against the Debtors in the approximate amount of $40 million dollars. Disclosure Statement, Section II (D)(1), P. 12.

35. The Proposed Plan separately classifies the unsecured claims of these insiders from the general

unsecured creditors of the four Debtors, and prescribes markedly different treatment for the insiders. The Proposed Plan provides for Beachwold Partners L.P. and Rothenberg to surrender $2 Million of their unsecured claims against the debtors in exchange for 100% of the interest in a new entity identified as "Beachwold Residential." *Disclosure Statement*, Article V, Sec. (A)(4), P. 71.  Further, on account of the other $38 Million of claims that these insiders assert against Tarragon Corp., the Proposed Plan provides that they will receive the 100% interest in another new entity identified as "Reorganized Tarragon." *Disclosure Statement,* Article V, Sec. (A) (5), P. 72.

36.  The Proposed Plan then provides for the creation of another new limited liability company known as New Ansonia.  The Plan requires The Tarragon Creditor Entity to acquire 50% of the equity in New Ansonia, and for Beachwold Residential to acquire the other 50%. *Disclosure Statement,* Article V, Sec. (A) (5), P. 72.  Thereafter, New Ansonia is to acquire the interests presently held by Tarragon Corp and Tarragon Development Corp. in five selected properties.[1]

---

[1]    Listed on Exhibit G to the Disclosure Statement are the five properties that the Debtors are required to transfer to New Ansonia under the Plan. They are Tarragon Development Corp.'s 89.44% equity interest in Ansonia Apartments, LP; Tarragon Development Corp's 100% interest in RI Panama City, LLC; Tarragon Corp.'s 100% interest in Tradition Tarragon, LLC; Tarragon Corp.'s 100% Interest in Manchester

Thus, through the Tarragon Creditor Entity, the general unsecured creditors who hold almost $450 Million of the claims against the Debtors will share a 50% interest in New Ansonia, while Beachwold and Rothenberg will share the other 50% - on account of only $2 Million of their claims against the Debtors. This disparate treatment of unsecured claims is manifestly unfair. The Proposed Plan does not comply with the provisions of 11 U.S.C. Sec. 1129(b)(2)(B).

37. The unfair treatment of general unsecured creditors is apparent not only when compared to the insider creditors, but also when compared to the unsecured claims of Freddie Mac, Fannie Mae, GECC and the insiders holding indemnification claims against the Debtors (discussed above). The Proposed Plan provides for the Debtors to assume, "reaffirm," or continue these obligations, thus assuring that they will receive 100% of their claims before the general unsecured claimants receive any dividend.

38. The Creditor respectfully submits that the enormous difference between the Proposed Plan's treatment of general unsecured claims and its treatment of the unsecured non-priority claims held by insiders and certain

---

Tolland, LLC; and Tarragon Development Corp's 100% interest in Vineyard at Eagle Harbor, LLC.

preferred   creditors   constitutes   "unfair   discrimination"
under   11   U.S.C.   Sec.   1129(b)(1).   Accordingly,   the
Creditors   respectfully   submit   that   this   Court   should   deny
confirmation of the Proposed Plan.

### THE PLAN VIOLATES THE ABSOLUTE PRIORITY RULE

39.   As   discussed   above,   the   Proposed   Plan   provides
for   the   distribution   of   100%   of   the   equity   in   Beachwold
Residential,   50%   of   the   equity   in   New   Ansonia,   and   100%   of
the   equity   in   Reorganized   Tarragon   to   the   insiders
Beachwold   and   Rothenberg.   The   proposed   distribution   of   any
equity   interest   in   the   post-confirmation   entities   to   the
holders   of   these   junior   claims   violates   the   absolute
priority rule.

40.   The   Plan   provides   that   the   senior   classes   of
general   unsecured   creditors   will   receive   interests   in   the
Tarragon   Creditor   Entity   only.   While   neither   the   Disclosure
Statement   nor   Plan   attempt   to   place   a   value   on   that   entity,
it   is   clear   that   the   value   is   much   less   than   the   $450
Million   in   claims   presently   held   by   the   general   unsecured
creditors.   The   Tarragon   Creditor   Entity   cannot   be   worth
more   than   it   can   expect   to   receive   upon   liquidation   of   the
property of New Ansonia and Reorganized Tarragon.

41.   As   the   Plan   does   not   provide   for   a   100%   dividend
to   general   unsecured   creditors,   and   as   it   provides   for   a

distribution of dividends and/or equity interests to junior classes of insider claims, the absolute Priority Rule of 11 U.S.C. Sec. 1129(b)(2)(B) prohibits confirmation. Accordingly, the Creditors respectfully request this Court to deny confirmation of the Plan.

WHEREFORE, the Creditor respectfully requests this Court to deny confirmation of the Proposed Plan in its entirety.

Stern, Lavinthal, Frankenberg
& Norgaard, LLC
Counsel to Block 106 Mtge., LLC


Dated: 6/11/10            _____/s/ Gary K. Norgaard_____
                         Gary K. Norgaard, Esq.


j:\worddoc\2008\08n503 loconte\pleadings\tarragon chapter 11\objection confirmation\2010-06-11 objection confirmation loconte - final.doc